1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

4    X-1 AUDIO, INCORPORATED,           )
                                        )
5                      PLAINTIFF,       )  CASE NO. 13CV2021-CAB
                                        )
6           VS.                         )
                                        )
7    OTTER PRODUCTS, LLC AND TREEFROG   )
     DEVELOPMENTS, INC., D/B/A LIFEPROOF,)
8                                       )
                       DEFENDANTS.      )
9                                       )

10

11

12

13                  TRANSCRIPT OF PROCEEDINGS
            CLAIMS CONSTRUCTION AND MARKMAN HEARING
14          BEFORE THE HONORABLE CATHY ANN BENCIVENGO
             THURSDAY, JULY 10, 2014, 9:30 A.M.
15                  SAN DIEGO, CALIFORNIA

16

17

18

19

20   PROCEEDINGS RECORDED BY STENOGRAPHY, TRANSCRIPT PRODUCED BY
     COMPUTER ASSISTED SOFTWARE
21
     _____
22
                   MAURALEE RAMIREZ, RPR, CSR NO. 11674
23                 FEDERAL OFFICIAL COURT REPORTER
                     333 WEST BROADWAY, SUITE 420
24                 SAN DIEGO, CALIFORNIA 92101
                     ORDERTRANSCRIPT@GMAIL.COM
25

```
1   FOR THE PLAINTIFF:

2        LAURA KENNEALLY
         KARA SZPONDOWSKI
3        NIRO SCAVONE HALLER & NIRO
         181 WEST MADISON STREET, SUITE 4600
4        CHICAGO, ILLINOIS 60602

5        ALLISON GODDARD
         PATTERSON LAW GROUP
6        402 W. BROADWAY, 29TH FLOOR
         SAN DIEGO, CALIFORNIA 92101
7
    FOR THE DEFENDANTS:
8        GARRET A. LEACH
         KIRKLAND & ELLIS LLP
9        300 NORTH LASALLE STREET
         CHICAGO, ILLINOIS 60654
10
         RACHAEL LAMKIN
11       JENNIFER BECKER
         BLUE OCEAN ENTERPRISES
12       401 W. MOUNTAIN AVENUE, SUITE 200
         FORT COLLINS, COLORADO 80521
13
         ANDREW D. SKALE
14       MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
         3580 CARMEL MOUNTAIN ROAD, SUITE 300
15       SAN DIEGO, CALIFORNIA 92130

16

17

18

19

20

21

22

23

24

25
```

1       SAN DIEGO, CALIFORNIA; THURSDAY, JULY 10, 2014; 9:30 A.M.

2            THE CLERK:  WE ARE ON THE RECORD THIS MORNING ON CASE

3       13CV2021-CAB-NLS, X-1 AUDIO INCORPORATED VERSUS OTTER PRODUCTS,

4       LLC, ET AL., ON CALENDAR FOR CLAIM CONSTRUCTION AS WELL AS

5       MARKMAN HEARING.

6            MS. GODDARD:  GOOD MORNING, YOUR HONOR.  ALLISON

7       GODDARD ON BEHALF OF THE PLAINTIFF.  WITH ME TODAY IS LAURA

8       KENNEALLY, AND ALSO KARA SZPONDOWSKI, WHO WILL BE HERE SHORTLY,

9       AND OUR CLIENTS WHO ARE HERE TO OBSERVE.

10           THE COURT:  THANK YOU.

11           MR. LEACH:  GOOD MORNING, YOUR HONOR.  GARRET LEACH

12      FROM KIRKLAND & ELLIS ON BEHALF OF THE DEFENDANTS, OTTER

13      PRODUCTS.  WITH ME, IS RACHAEL LAMKIN, WHO IS ASSOCIATE COUNSEL

14      WHO WILL ALSO BE ARGUING SOME OF THE POINTS WITH ME TODAY.  WE

15      ALSO HAVE JENNIFER BECKER FOR LIFE GROUP, OTTERBOX, AND ANDREW

16      SKALE FROM MINTZ, LEVIN, HERE IN SAN DIEGO.

17           THE COURT:  ALL RIGHT.  THANK YOU.  WE ARE HERE TODAY

18      TO DO AT LEAST AN INITIAL ROUND OF CLAIM CONSTRUCTION IN UNITED

19      STATES PATENT 7263032, A SYSTEM FOR HOUSING AN AUDIO SYSTEM IN

20      AN AQUATIC ENVIRONMENT.  I HAVE DISTRIBUTED TO COUNSEL JUST

21      PRIOR TO THE START OF THE HEARING SOME OF MY THOUGHTS ON SOME

22      TENTATIVES OF CONSTRUCTION BASED ON MY REVIEW OF THE PATENT AND

23      THE MATERIALS THAT THE PARTIES HAVE PROVIDED.  AND SO IN TERMS

24      OF ADDRESSING THE ARGUMENTS, I WOULD LIKE YOU TO CERTAINLY

25      CONSIDER THE COURT'S POSITION AS IT IS ARTICULATED AND WHETHER

1    OR NOT WE CAN WORK FROM THAT, PERHAPS IF IT NEEDS FURTHER

2    REFINEMENT OR IF YOU THINK I'M COMPLETELY OFF THE PAGE, THEN

3    WHY.

4              ONE OF THE THINGS THAT IS NEVER ADDRESSED AND

5    PRESUMABLY SHOULD BE KIND OF FRONT AND CENTER IN A CLAIM

6    CONSTRUCTION HEARING, AND I THINK WILL BE PARTICULARLY RELEVANT

7    IF WE COME BACK ON THE INDEFINITENESS ARGUMENT, IS WHO IS A

8    PERSON OF ORDINARY SKILL IN THE ART THAT THIS PATENT IS

9    DIRECTED AT IN TERMS OF THE COURT INTERPRETING THAT THAT PERSON

10   WOULD UNDERSTAND THESE TERMS WHERE THERE IS DISPUTE TO THE

11   MEANING.  AND NEITHER PARTY PRESENTED -- AND THEY NEVER DO, SO

12   I'M NOT FAULTING YOU -- A DESCRIPTION OF, IS IT A PRODUCT

13   ENGINEER, AN INDUSTRIAL ENGINEER, THE PERSON WHO WOULD BE

14   PRESENTED WITH THIS PROBLEM, I HAVE AN IPHONE AND THEY WANT TO

15   TAKE IT IN THE WATER, HOW DO I KNOW IF IT'S WATERPROOF.

16             MR. LEACH:  YOUR HONOR, MAY I?

17             THE COURT:  YES.

18             MR. LEACH:  WE ACTUALLY DISCUSSED THIS.

19             THE COURT:  GOOD.

20             MR. LEACH:  AND WE'RE GOING TO FILE A STIPULATION, BUT

21   THE PARTIES HAVE AGREED AS TO WHAT A PERSON OF ORDINARY SKILL

22   IN THE ART IS, AND I'M SURE THE COURT WOULD LIKE TO BE

23   INFORMED.  WHAT WE AGREE TO IS, A PERSON WITH A MECHANICAL

24   ENGINEERING DEGREE OR SOMEONE WITH EQUAL WORK EXPERIENCE, OR

25   SOMETHING ALONG THOSE LINES.

1          MS. KENNEALLY:  OR EQUAL TRAINING OR EXPERIENCE, YOUR

2     HONOR.

3          MR. LEACH:  AND YOU ARE CORRECT, WE WILL BE ADDRESSING

4     THAT IN THE INDEFINITENESS.

5          THE COURT:  BECAUSE IN CONJUNCTION WITH THAT, THERE IS

6     NOTHING THAT I SAW, AND IF I MISSED IT, YOU CAN LET ME KNOW

7     WHERE ANY OF THE TERMS THAT WE'RE GOING TO DISCUSS ANYONE

8     PRESENTED EVIDENCE THAT AT THE TIME THE PATENT WAS FILED A

9     PERSON OF SKILL IN THE ART HAD A SPECIFIC UNIQUE UNDERSTANDING

10    OF WHAT THAT WORD MEANT BEYOND THE ORDINARY MEANING OF THE

11    WORD, AND THESE ARE NOT PARTICULARLY HIGHLY TECHNICAL TERMS IN

12    THIS PATENT, OR THE WAY IT'S EITHER CIRCUMSCRIBED BY THE

13    DESCRIPTION OF THE PATENT WITH REGARD TO A PROBLEM IT'S SOLVING

14    AND THAT IT WOULD MEAN SOMETHING ELSE ENTIRELY DIFFERENT FROM

15    THAT.  SO I HAVEN'T SEEN THAT, BUT IF THERE IS EVIDENCE OF

16    THAT, I WOULD WANT TO SEE THAT.

17         I KNOW YOU HAD A PLAN ON HOW YOU WANTED TO PROCEED,

18    AND I'M NOT QUITE SURE HOW THAT PLUGS IN NOW WITH MY TENTATIVE,

19    SO PATENT HOLDER, HOW DO YOU WANT TO START?  IT'S YOUR PATENT.

20         MS. KENNEALLY:  YOUR HONOR, THE PARTIES HAD AGREED

21    THAT WE WOULD PROCEED ON A TERM-BY-TERM BASIS WITH THE PARTY

22    WHO INITIALLY PROPOSED THE TERM GOING FIRST AND THEN KIND OF

23    TAKING ARGUMENT FROM THERE, JUST GOING DOWN TERM BY TERM.

24         I THINK THAT STILL MAKES SENSE, GARRET, IF YOU'RE

25    COMFORTABLE WITH THAT.

1          MR. LEACH:  ABSOLUTELY.  WE HAVE THE FLOOR ON THE

2  FIRST TERM, YOUR HONOR.

3          THE COURT:  OKAY.  WE'RE STARTING WITH "RIGID."

4          MR. LEACH:  WE ARE.

5          THE COURT:  WHILE I UNDERSTAND THE DEFENDANT IS

6  PROPOSING THAT RIGID REQUIRE IT HAVE "A FLEXIBLE MEMBRANE OR

7  COVER," I'M NOT SURE IT'S USEFUL TO SOMEONE TO SAY WHAT IT

8  CAN'T BE OR WHAT IT COULD BE BUT RATHER WHAT THE CHARACTERISTIC

9  OF RIGID IN THE CONTEXT OF THIS PATENT IS SUPPOSED TO

10  ENCOMPASS.  AND RIGID, AS YOU KNOW I POINTED OUT IN MY

11  TENTATIVE, THE ORDINARY MEANING WOULD BE STIFF OR UNYIELDING,

12  NOT FLEXIBLE OR PLIANT, ALTHOUGH THE SPECIFICATION IN TALKING

13  ABOUT APPROPRIATE MATERIALS, TALKS ABOUT RUBBER OR PLASTIC

14  COMPOSITIONS THAT COULD HAVE SOME DEGREE OF FLEXIBILITY TO

15  THEM.

16          AND IT'S THE COURT'S BELIEF THAT THE PATENT ACTUALLY

17  DEFINES RIGID AS A VERY SPECIFIC CHARACTERISTIC TO SOLVE A VERY

18  SPECIFIC PROBLEM AND THAT IT WILL JUST RETAIN ITS SHAPE UNDER

19  AQUATIC PRESSURE AND NOT ALTER, DEFORM, OR COMPRESS.  AND IT

20  REALLY DOESN'T MATTER SO MUCH WHAT IT'S MADE OF AS LONG AS IT

21  WILL HAVE THAT CHARACTERISTIC WHEN IT'S EXPOSED TO AQUATIC

22  PRESSURE.

23          SO GO AHEAD.

24          MR. LEACH:  WITH THAT, YOUR HONOR, THANK YOU.  AND

25  THERE'S REALLY TWO ISSUES HERE.  I DON'T DISAGREE WITH THE

1    COURT'S CONSTRUCTION THAT THEY PROPOSED WOULD MAKE SENSE IN A

2    VACUUM, AND IF YOU LOOK AT THE SPECIFICATION, CERTAIN ASPECTS

3    OF IT, THERE ARE REALLY TWO ISSUES THAT I THINK WE NEED TO

4    ADDRESS WITH THIS CONSTRUCTION THE WAY IT IS NOW.

5            THE FIRST IS, IT FAILS TO EXPRESSLY RECOGNIZE THE

6    EXPRESS DISCLAIMER THAT THEY MADE AT THE PTO, AND WHILE THE

7    ARGUMENT I THINK THAT THEY'VE MADE, AND MAYBE THE COURT HAS

8    PICKED UP ON A LITTLE BIT, IS WELL, IF WE EXCLUDE FLEXIBLE

9    MEMBRANE, WHAT IS A FLEXIBLE MEMBRANE?  HOW DO WE KNOW WHAT

10   THAT IS?

11           THE PROBLEM WE HAVE, YOUR HONOR, THAT'S NOT THE WORD I

12   CHOSE.  THAT'S THE WORD THEY CHOSE AT THE PATENT OFFICE TO

13   OVERCOME THE PRIOR ART OBJECTION.  IT WAS VERY SPECIFIC.  THEY

14   DIDN'T SAY, A FLEXIBLE MEMBRANE DOES NOT RETAIN SHAPE AND IS

15   NOT ULTRA-COMPRESSED UNDER AQUATIC PRESSURE, IT SAID TO

16   OVERCOME THE PRIOR ART, AND I'M GOING TO GET INTO THIS IN MORE

17   DETAIL IN A SECOND, THE FULL REFERENCE THEY SAID, 4, WHICH WAS

18   A RIGID BOX, THE CLAIM SAYS "HAS A FLEXIBLE MEMBRANE OR

19   FLEXIBLE COVER."  THAT IS DIFFERENT THAN OUR "RIGID CONTAINER."

20           SO WHAT THE FEDERAL CIRCUIT HAS CLEARLY TOLD US WHEN

21   YOU HAVE DISAVOWED SOMETHING THAT CLEARLY IN THE PROSECUTION

22   HISTORY YOU ARE NOT ENTITLED TO THAT SCOPE.  NOW I THINK WHAT

23   WE'RE TRYING TO DO HERE IS ALMOST GET TO THE INFRINGEMENT

24   QUESTION AND SAY, HOW DO WE KNOW WHAT IS FLEXIBLE, AND IS THEIR

25   PRODUCT FLEXIBLE?  THAT IS NOT FOR CLAIM CONSTRUCTION THOUGH.

1           THE COURT:  THAT'S THE PROBLEM, THOUGH, THAT I HAVE

2     WITH YOUR DEFINITION.  YOUR CONSTRUCTION SAYS THAT RIGID IS NOT

3     A FLEXIBLE MEMBRANE.  DOES THAT HAVE A DEFINED MEANING TO A

4     MECHANICAL ENGINEER, OR IS THAT JUST A LABEL THAT YOU'RE GOING

5     TO PUT ON THE MATERIAL AND SAY, WELL, THIS MATERIAL IS A

6     FLEXIBLE MEMBRANE, AND, THEREFORE, IT DOESN'T COME WITHIN THE

7     SCOPE OF THE CLAIM?  I DON'T KNOW THAT THAT REALLY INFORMS

8     ANYBODY, BECAUSE THAT'S JUST LABELING.

9           MR. LEACH:  WELL, THEN THEY SHOULDN'T HAVE USED THAT

10    WORD AT THE PATENT OFFICE.  THAT'S THE PROBLEM.  THEY CAN'T

11    DISTINGUISH SOMETHING, GET A PATENT ALLOWED BASED ON THAT

12    LABEL, AND THEN COME TO THE COURT AND SAY, WELL, WE DON'T KNOW

13    WHAT THAT MEANS, YOU SHOULDN'T HOLD US TO THAT, LET'S COME UP

14    WITH SOME OTHER WORD AND TRY TO GET AROUND THAT.

15          IT'S, IN FACT, THE WORD THEY USED WITH THE PATENT

16    OFFICE, AND THE PATENT OFFICE READ AND UNDERSTOOD AND SAID,

17    YES, THAT'S NOT A FLEXIBLE MEMBRANE.  IF THAT'S NOT GOOD

18    ENOUGH, THEN MAYBE IT'S AN INDEFINITENESS ISSUE AFTER CLAIM

19    CONSTRUCTION.  BUT WHAT WE'RE DOING HERE, I THINK, IS ALMOST

20    INFLATING THE INFRINGEMENT INVALIDITY ANALYSIS AND CLAIM

21    CONSTRUCTION.

22          WHAT THE FEDERAL CIRCUIT TELLS US TO DO AT CLAIM

23    CONSTRUCTION IS LOOK AT THE INTRINSIC RECORD, LET'S NOT LOOK AT

24    THE PRODUCT.  AND I CAN SHOW YOU RIGHT NOW, YOUR HONOR.  I

25    DON'T THINK IT'S GOING TO TAKE AN EXPERT TO TELL ME WHETHER OR

1    NOT THIS IS FLEXIBLE.  IF YOU LOOK AT THIS, WE HAVE FLEXIBLE

2    MEMBRANES.

3         BUT THE PROBLEM WE HAVE IF WE GO WITH SOMETHING LIKE

4    THIS IS, THIS -- AND THIS IS THE SECOND POINT, WHICH MY

5    COLLEAGUE IS GOING TO ADDRESS, IS YOU GET TO COMPRESS UNDER

6    AQUATIC PRESSURE EVEN EXCEEDING ONE ATMOSPHERE.  THE USE OF THE

7    WORD ATMOSPHERIC PRESSURE IS ALL OVER THE PLACE IN THIS PATENT,

8    AND IT'S GOING TO BE PART OF THE INDEFINITENESS ARGUMENT THAT

9    WE'RE GOING TO BE MAKING HERE IN A FEW WEEKS WHEN WE TALK ABOUT

10   UNDERWATER PRESSURE, UNDERWATER PRESSURE, SUBMERSIBLE

11   CONDITIONS.  WHAT ARE ALL THESE THINGS?  BECAUSE THE PATENT IS

12   NOT CLEAR ON THAT.  AND I THINK WHAT THIS PROPOSED

13   CONSTRUCTION, WHILE I APPRECIATE THE COURT'S EFFORTS TO WORK

14   SOMETHING WITH THE PATENT IN MIND, I THINK IT JUST ADDS MORE

15   COMPLEXITY.

16        BUT WITH THAT, I THINK IT WOULD BE HELPFUL IF I COULD

17   ACTUALLY USE SOME OF THE QUOTES FROM THE PARTIES AND FROM THE

18   INTRINSIC RECORD.  THE FIRST THING, YOUR HONOR, I THINK IT'S

19   PRETTY CLEAR IN READING THEIR BRIEFS, THERE IS NO DISAGREEMENT

20   THAT THEY, IN FACT, DID DISCLAIM FLEXIBLE MEMBRANE.  THESE ARE

21   QUOTES FROM THEIR BRIEF, NOT MINE.  AND I DIDN'T EVEN HIGHLIGHT

22   IT.  THAT'S THEIR EMPHASIS.

23        THERE IS NO DISPUTE IN THIS CASE THAT RIGID CONTAINER

24   DOES NOT INCLUDE A FLEXIBLE MEMBRANE.  THEY ACKNOWLEDGED IT.

25   THEY HAD TO ACKNOWLEDGE IT BECAUSE THAT'S WHAT THEY TOLD THE

1    PATENT OFFICE.

2         THE NEXT QUOTE, "X-ONE REPEATEDLY AND CONSISTENTLY

3    DISTINGUISHED FLEXIBLE MEMBRANE FROM THE CLAIMED INVENTION FROM

4    THE PROSECUTION OF THE '032 PATENT."  THEY DIDN'T SAY X-1

5    REPEATEDLY AND CONSISTENTLY DISTINGUISHED SOMETHING THAT

6    RETAINED SHAPE AND DOES NOT ALTER OR COMPRESS UNDER AQUATIC

7    PRESSURE EVEN EXCEEDING ONE ATMOSPHERE.  THEY DISTINGUISHED

8    FLEXIBLE MEMBRANE.  NOW HAD THEY DONE SOMETHING MORE SPECIFIC

9    LIKE YOUR HONOR PROPOSES HERE, I THINK THAT WOULD BE

10   APPROPRIATE IN A WAY TO READ IN WHAT THEY, IN FACT, DISCLAIMED

11   AT THE PATENT OFFICE.  THAT'S NOT WHAT THEY DID.

12        AND FINALLY, "X-1 HAS ALWAYS AND CONTINUES TO CONTEND

13   THAT THE CLAIMED RIGID CONTAINER DOES NOT INCLUDE FLEXIBLE

14   MEMBRANE."

15        THE COURT:  LET'S JUST IN TERMS OF THAT LAST

16   RESPONSIVE CLAIM CONSTRUCTION STATEMENT BY THE PLAINTIFF, BY

17   X-1, ACCEPT THAT IF THAT IS A JUDICIAL ADMISSION OR SOMEHOW

18   STOPS THEM FROM GOING FORWARD AND ACCUSING A FLEXIBLE MEMBRANE,

19   WHAT'S A FLEXIBLE MEMBRANE?

20        MR. LEACH:  WELL, AGAIN, SOMEONE OF SKILL IN THE ART

21   THAT'S A PART OF THE INFRINGEMENT ANALYSIS.  I THINK IT'S GOING

22   TO BE PRETTY EASY TO SHOW WE HAVE FLEXIBLE MEMBRANE.  I DON'T

23   THINK WE NEED AN EXPERT.  I THINK YOUR HONOR CAN PICK THAT UP

24   AND SAY, THAT'S A FLEXIBLE MEMBRANE.  THERE ARE A NUMBER OF

25   OTHER ONES.  THIS IS JUST ONE.

1           THE COURT:  I DON'T KNOW WHAT A MEMBRANE IS.  THAT MAY

2     BE AN EXAMPLE OR NOT OF A FLEXIBLE MEMBRANE.  WHEN THEY

3     DISTINGUISHED FLEXIBLE MEMBRANE IS A MEMBRANE OF PLASTIC

4     COMPOSITION, OF RUBBER COMPOSITION, SILICON COMPOSITION.  I

5     DON'T KNOW WHAT IT IS.  A MEMBRANE, IF IT'S AN ANIMAL PRODUCT,

6     IT'S COMPLETELY DIFFERENT.  OBVIOUSLY THAT WOULDN'T APPLY HERE,

7     BUT WHAT I'M SAYING IS, IT HAS NO MEANING TO ME.  NOW CLEARLY I

8     ASSUME IT WOULD HAVE MEANING TO A MECHANICAL ENGINEER.  IS IT A

9     DEFINED COMPOSITION?  A DEFINED PRODUCT?

10          MR. LEACH:  IT DOESN'T HAVE TO BE MADE OF ANY

11    PARTICULAR MATERIAL.  NOW INTERESTINGLY, THE PARTIES HAVE BOTH

12    RECEIVED A NUMBER OF PATENTS IN THIS AREA, AND BOTH PARTIES

13    HAVE DEFINED WHAT THE WORD "FLEXIBLE MEMBRANE" MEANS.

14          THE COURT:  OKAY.  THAT'S HELPFUL.

15          MR. LEACH:  LET ME SHOW YOU.  BECAUSE I THINK THEY

16    BROUGHT THIS UP IN THEIR BRIEFS, AND SAID, WELL, YOU HAVE THIS

17    PATENT THAT'S A '976 PATENT, AND IN THAT PATENT -- AND IF IT

18    WOULD HELP -- YOUR HONOR, CAN I APPROACH?  I CAN GIVE YOU A

19    COPY.

20          THE COURT:  YES.  THE SCREEN IS NICE, BUT ...

21          MR. LEACH:  SO WHAT BOTH PARTIES HAVE SAID IN THE PAST

22    AS TO WHAT A FLEXIBLE MEMBRANE IS, THE FIRST QUOTE WE HAVE IS

23    FROM X-1'S PATENT.  ADMITTEDLY IT'S NOT IN THIS SAME PATENT

24    FIELD OR THE SAME PATENT FAMILY, BUT IT'S TO UNDERWATER

25    PROTECTIVE CASES.  AND WHAT THEY SAY IS, THE FLEXIBLE PARTS CAN

1    BE MADE FROM ANY MATERIAL -- WE AGREE WITH THAT -- FLEXIBLE

2    ENOUGH TO ALLOW THE USER TO INTERACT WITH THE DEVICE THROUGH

3    THE MATERIAL.  IF THAT'S WHAT THE COURT WANTS TO CONSTRUE THE

4    TERM, WE'RE FINE WITH THAT.

5          SIMILARLY WITH OTTERBOX'S PATENT, THE '976 PATENT,

6    WHICH THEY REFER TO IN THE BRIEFING, A FLEXIBLE MEMBRANE IS

7    EXPOSED OVER THE TOUCHSCREEN SO THAT TACTICAL INPUTS ON THE

8    FRONT SIDE OF THE FLEXIBLE MEMBRANE ARE COMMUNICATED TO THE

9    TOUCHSCREEN THROUGH THE FLEXIBLE MEMBRANE.  IT'S SOMETHING THAT

10   ALLOWS TO YOU INTERACT WITH YOUR PHONE JUST TOUCHING THROUGH

11   THE FLEXIBLE MEMBRANE.  THAT'S WHAT A FLEXIBLE MEMBRANE IS.

12         IT'S VERY CLEAR TO EVERYONE WHAT THAT MEANT.  THEY

13   DIDN'T HAVE TO EXPLAIN TO THE PATENT OFFICE WHAT THAT MEANT

14   BECAUSE THE EXAMINER HAS ALL KINDS OF PATENTS IN THIS FIELD.

15   THE EXAMINER UNDERSTOOD WHAT A FLEXIBLE MEMBRANE IS.  THE

16   EXAMINER IN THIS AREA WAS LIKELY A MECHANICAL ENGINEER, AND

17   THEY UNDERSTOOD WHAT A FLEXIBLE MEMBRANE IS.

18         SO FOR THEM TO COME IN HERE AND SAY, WELL, YOUR HONOR,

19   YOU SHOULD IGNORE OR DISAVOW THE FLEXIBLE MEMBRANE, YOU SHOULD

20   KIND OF READ SOMETHING MORE INTO IT, I BELIEVE WOULD BE A

21   VIOLATION OF THE FEDERAL CIRCUIT LAW THAT SAYS WE HAVE TO HOLD

22   THEM TO WHAT THEY TOLD THE PATENT OFFICE.

23         AND LET'S JUST LOOK CLEARLY, IF I CAN -- I'M ON THE

24   WRONG THING.  TOO MUCH TECHNOLOGY, YOUR HONOR.  I KNOW THIS IS

25   IN THE BRIEFING, BUT I THINK IT'S IMPORTANT THAT WE GO THROUGH

1    IT.

2          DURING THE PROSECUTION, PART OF THE PROSECUTION

3    HISTORY OF THE PATENT, THEIR CLAIMS WERE REJECTED BECAUSE OF

4    THE FULLER REFERENCE.  THE FULLER REFERENCE, WHICH IS SHOWN UP

5    HERE, AND THIS IS CLAIM 3 FROM THE FULLER REFERENCE "IT'S

6    COMPRISED OF A RIGID BOX."  THAT'S WHAT THE CLAIM SAYS.  THAT

7    THING THAT YOU SEE THERE WITH ALL THOSE FIVE SIDES IS A RIGID

8    BOX.  AND A FLEXIBLE MEMBRANE, THAT'S OVER THE TOP.  THE PATENT

9    OFFICE SAID, WE'RE NOT GOING TO GIVE YOU A PATENT BECAUSE

10   YOU'RE TOO MUCH LIKE FULLER.

11         ONE OF THE THINGS THEY DID WAS ADD "RIGID" BEFORE

12   "CONTAINER," AS YOU CAN SEE, AND THEN THEY WENT AND EXPLAINED

13   TO THE PATENT OFFICE, "APPLICANT SUBMITS THAT FULLER DISCLOSES

14   HAVING THE FLEXIBLE COVER."  PUT IT IN QUOTES.  NOWHERE DOES

15   FULLER DISCLOSE OR SUGGEST A RIGID CONTAINER AND RIGID LID.

16         THOSE THINGS I SUBMIT, YOUR HONOR, GO HAND IN HAND.

17   THERE'S OTHER WORDS IN THERE, BUT THAT'S THE DISTINCTION, THE

18   "RIGID" AND THE "FLEXIBLE" THEY WERE TRYING TO MAKE.  AND WHAT

19   HAPPENED?  WELL, THEY GOT THE PATENT ISSUED.  AND THEY GOT THE

20   CLAIMS ALLOWED.

21         AND SO NOW WHAT THE COURT'S JOB IS UNDER FEDERAL

22   CIRCUIT LAW IS TO HOLD THEM TO WHAT THEY TOLD THE PATENT

23   OFFICE.  YOU HAVE TO HOLD THEM TO WHAT THOSE CLAIMS ALLOW.

24   THINK A MECHANICAL ENGINEER IS GOING TO UNDERSTAND WHAT A

25   FLEXIBLE MEMBRANE IS.  MAYBE THEY HAVE AN EXPERT, MAYBE THEY

1    CAN FIND SOMEBODY THEY CAN CONVINCE THAT THAT IS NOT FLEXIBLE.

2    AND IF SO, THAT'S PART OF THE INFRINGEMENT ANALYSIS.  IT'S NOT

3    FOR CLAIM CONSTRUCTION.  WHAT THE COURT NEEDS TO DO ON CLAIM

4    CONSTRUCTION IS TAKE THE WORDS THEY CHOSE, THEY USED IN THEIR

5    DISCLAIMER, AND HOLD THEM TO THOSE WORDS.

6         THE COURT:  WELL, I DON'T WANT TO GET TOO FAR AWAY

7    FROM WHAT RIGID IS BY DEFINING WHAT IT'S NOT AND --

8         MR. LEACH:  AND COURTS SEE THAT ALL THE TIME, YOUR

9    HONOR.  THAT'S WHAT PROSECUTION DISAVOWAL IS.

10         THE COURT:  RIGHT.  NO, SO I UNDERSTAND THAT THEY

11    CAN'T LOOK BACK AND ENCOMPASS A FLEXIBLE MEMBRANE, AND I'M NOT

12    QUITE SURE OF THE LEVEL OF FLEXIBILITY AS OPPOSED TO MAYBE THE

13    MEMBRANE QUALITY THAT IT WOULD ALLOW IT BE TO INTERACTIVE WITH

14    THE DEVICE THROUGH THE MATERIAL, THE POINT BEING WHEN IT

15    DISCUSSES IN THE PRIOR ART IN THE SPECIFICATION THAT THAT SORT

16    OF MEMBRANE IS GOING TO BE INCLINED TO COMPRESS UNDER PRESSURE,

17    SO THAT'S WHY IT CAN'T BE PART OF THIS RIGID STRUCTURE BECAUSE

18    IT'S GOING TO HAVE THAT CHARACTERISTIC.

19         MR. LEACH:  AND IF THAT'S HOW THEY WANTED TO LIMIT IT,

20    THAT'S WHAT THEY SHOULD HAVE SAID TO THE PATENT OFFICE.  BUT

21    THAT'S NOT WHAT THEY SAID TO THE PATENT OFFICE.  THIS IS WHAT

22    WE HAVE.  THIS IS WHAT THE CLAIM ISSUED OVER, SO THIS IS WHAT

23    THEY'RE HELD TO.  TRYING TO READ IN A MORE LIMITING EXCLUSION

24    AT THIS POINT IS UNFAIR TO THE PUBLIC BECAUSE THE PUBLIC READS

25    THIS DISCLOSURE, READS WHAT THEY SAID, AND IS ENTITLED TO RELY

1   ON THAT.  THAT'S WHAT THE LAW TELLS US.

2         THE COURT:  BUT YOU'RE JUST PICKING OUT ONE PART.

3   IT'S A FLEXIBLE COVER THAT ALLOWS A USER TO MANIPULATE THE

4   CONTROL KNOBS OF THE DEVICE.  SO IT'S NOT REALLY THE POINT

5   NECESSARILY THAT IT'S FLEXIBLE, ITS THE POINT THAT YOU CAN

6   MANIPULATE THE KNOBS THROUGH IT BECAUSE IT'S THIN ENOUGH.  I

7   DON'T KNOW.

8         MR. LEACH:  YOUR HONOR, AND, AGAIN, I SHOWED YOU THE

9   DEFINITIONS, I'LL PUT THEM UP AGAIN, FROM THE PATENTS.  I THINK

10  THAT'S THE SAME ARGUMENT.  SO IF I DEFINE, I'M NOT ADDING

11  ENOUGH TO THIS, I THINK WE'RE FINE WITH IT.  IT HAS TO BE

12  FLEXIBLE.  IT CANNOT BE A FLEXIBLE COVER WHICH ALLOWS THE USER

13  TO MANIPULATE THE CONTROLS.

14        THE COURT:  WELL, THE PROBLEM WITH JUST SAYING IT'S

15  FLEXIBLE FLIES RIGHT IN THE FACE OF MATERIALS THAT THE PATENT

16  DISCLOSES THAT ARE FLEXIBLE.  IT SAYS YOU CAN MAKE IT OUT OF

17  RUBBER, YOU CAN MAKE IT OUT OF PLASTIC --

18        MR. LEACH:  ANY MATERIAL --

19        THE COURT:  -- AND THEY CAN BE FLEXIBLE.

20        MR. LEACH:  ANY MATERIAL CAN BE FLEXIBLE, ANY MATERIAL

21  CAN BE RIGID.  I CAN GIVE YOU ALUMINUM FOIL, I CAN GIVE YOU AN

22  ALUMINUM BASEBALL BAT, I THINK YOU'D AGREE ONE IS RIGID, ONE IS

23  FLEXIBLE.

24        THE COURT:  RIGHT.  DEPENDING ON ITS THICKNESS.

25        MR. LEACH:  YES.  THE ISSUE COMES DOWN TO EVEN IN THE

1  MATERIAL USED IN THE THICKNESS AND COMPOSITION, IS THAT, IN

2  FACT, FLEXIBLE.  THAT'S NOT SOMETHING FOR YOU AND I TO DECIDE.

3  THAT'S SOMETHING FOR A PERSON OF SKILL IN THE ART TO DECIDE

4  BASED ON THE THICKNESS, MAKEUP, ALL THOSE ISSUES.

5          SO I'M NOT TRYING TO TIE IT TO A SPECIFIC MATERIAL.

6  I'M NOT SAYING RUBBER IS OUT OR PLASTIC IS OUT OR ANYTHING IS

7  OUT, BUT IT CANNOT BE A FLEXIBLE COVER.  THAT'S WHAT THEY TOLD

8  THE PATENT OFFICE.  IF YOU THINK YOU NEED TO ADD THE "ALLOWS

9  THE USER TO MANIPULATE THE CONTROLS," THEN I DON'T THINK I

10  WOULD ARGUE WITH THAT.

11          THE COURT:  THE REASON I THINK YOU NEED TO GO THERE IS

12  THAT THEN EXCLUDES A CERTAIN LEVEL OF THINNESS.  BECAUSE IF YOU

13  HAVE A FLEXIBLE COVER THAT CAN BE BENT, I MEAN, THEN WE'RE

14  GOING TO GET INTO WHAT IS FLEXIBLE, WHAT DEGREE CONSTITUTES

15  FLEXIBILITY.  BUT WHETHER IT CAN BE BENT OR NOT, IF I CAN'T

16  MANIPULATE THE CONTROLS THROUGH IT, IT'S TOO THICK FOR THAT,

17  THEN CLEARLY, IT IS GOING TO FALL WITHIN THE FULLER DISCLOSURE

18  AND BE OUTSIDE OF THAT AS OPPOSED TO IF IT'S THIN ENOUGH, I CAN

19  WORK THROUGH IT, THEN IT'S MORE OF A MEMBRANE QUALITY THAT

20  SAYS, THIS IS JUST A COVER THAT PROTECTS FROM WHO KNOWS WHAT,

21  SCRATCHING OR ANYTHING ELSE, BUT I CAN WORK THROUGH IT.  IT'S

22  MORE OF A LIMITATION ON THE THICKNESS AS OPPOSED TO THE

23  FLEXIBILITY.

24          MR. LEACH:  I THINK IT'S A COMBINATION OF THE

25  THICKNESS, THE MATERIAL MAKEUP, AND EVERYTHING.  BUT I THINK

1    YOU'RE RIGHT, YOUR HONOR, IF THE CONSTRUCTION WAS ... AND

2    THAT'S WHAT THEY SAID, WE'RE TRYING TO MAKE IT SOMEWHAT SIMPLE.

3    BUT IF YOU WANT A LITTLE LONGER CONSTRUCTION, THAT IT'S A

4    CONTAINER THAT DOES NOT UTILIZE A FLEXIBLE MEMBRANE WHICH

5    ALLOWS THE USER TO MANIPULATE THE KNOBS OR CONTROLS, I THINK

6    THAT'S ACCEPTABLE, AND I THINK THAT'S FAIR WITH THE BARGAIN

7    THEY MADE WITH THE PATENT OFFICE.

8            THE COURT:  ALL RIGHT.

9            MR. LEACH:  DO YOU WANT TO ADDRESS THE ONE ATMOSPHERE?

10   WE HAVE SOME CONFUSION OVER WHAT ONE ATMOSPHERE IS AND

11   EXCEEDING ONE ATMOSPHERE.

12           THE COURT:  I HAVE A LOT OF CONFUSION AS TO WHAT THE

13   END ZONE OF THAT WOULD BE BECAUSE THAT'S WHAT IT SAYS IN THE

14   PATENT.

15           MR. LEACH:  AND WE DO TOO, YOUR HONOR.

16           THE COURT:  THE PROBLEM YOU'RE SOLVING IS THIS

17   MATERIAL ISN'T GOING TO DEFORM AT ATMOSPHERES EXCEEDING ONE

18   ATMOSPHERE.  AND IF SOMEONE OF SKILL IN THE ART KNOWS WHAT AN

19   ATMOSPHERE IS, I DON'T, BUT ...

20           MR. LEACH:  THERE'S DIFFERENT LEVELS, DEPENDING ON HOW

21   YOU READ IT.

22           THE COURT:  BUT THE CONCEPT FROM WHAT I GOT FROM THAT

23   IS THIS ISN'T JUST, I SPILLED COFFEE ON IT AND IT WON'T GO IN,

24   OR EVEN, I WAS SWIMMING IN THE POOL ON THE SURFACE.  BUT THE

25   PATENT IS ADDRESSING TAKING THIS DEVICE --

1          MR. LEACH:  DEEP DOWN.

2          THE COURT:  IT HAS TO BE CABLE OF DOING THAT EVEN IF

3  YOU'RE NOT USING IT IN THAT CAPACITY, BUT IT HAS TO BE CAPABLE

4  OF DOING SOME SORT OF DEEPER WHERE THERE'S ACTUAL PRESSURE --

5          MR. LEACH:  RIGHT.

6          THE COURT:  -- THAT'S GOING TO RESULT IN --

7          MR. LEACH:  EXCEEDING THE LEVEL IN A SWIMMING POOL FOR

8  INSTANCE.

9          THE COURT:  I DON'T KNOW.

10          MR. LEACH:  THAT'S THE PROBLEM.

11          THE COURT:  RIGHT.  SO TO SOME EXTENT, MY PROPOSED

12  CONSTRUCTION MAY INVOLVE MORE CONSTRUCTION.

13          MR. LEACH:  WELL.

14          THE COURT:  BUT I WAS TRYING TO LOOK AT THE

15  CHARACTERISTIC OF RIGID AS OPPOSED TO SAYING, WELL, IT'S THIS

16  MATERIAL BUT IT'S NOT THAT MATERIAL BECAUSE THEN WE'RE JUST A

17  LABELING MATERIALS.  BUT I THINK AS YOU POINTED OUT, BASED ON

18  THESE ADMISSIONS IN THE PATENT OFFICE AND IN THEIR BRIEFS TO

19  THE COURT, THEY'VE ACKNOWLEDGED THAT IF THE MATERIAL, CALL IT A

20  FLEXIBLE MEMBRANE, JUST CALL IT A MATERIAL, WOULD ALLOW THE

21  USER TO MANIPULATE THE CONTROL BUTTONS THROUGH IT, IT WOULD

22  CONSTITUTE A FLEXIBLE MEMBRANE AND WOULD BE EXCLUDED.

23          MR. LEACH:  I THINK I HAVE NOTHING FURTHER, YOUR

24  HONOR.

25          THE COURT:  OKAY.

1          MR. LEACH:  ON THAT POINT.

2      (ATTORNEY DISCUSSION OFF THE RECORD.)

3          MR. LEACH:  MY CLIENT IS TELLING ME, SO I HAVE TO

4   LISTEN TO THAT, SHE MAY HAVE SOMETHING.

5          THE COURT:  SURE.  NO, GO AHEAD, IF WE'RE STAYING IN

6   THE SAME REALM OF CONSTRUCTION.

7          MS. LAMKIN:  GOOD MORNING, YOUR HONOR.  JUST BY WAY OF

8   CLARIFICATION, AND MAYBE THIS WOULD REQUIRE SOME ADDITIONAL

9   BRIEFING, BUT WE WOULD LIKE TO KNOW WHETHER IT'S ONE ATMOSPHERE

10  ABSOLUTE OR ONE ATMOSPHERE GAUGE BECAUSE --

11         THE COURT:  I HAVE NO IDEA.  I JUST COPIED WHAT IT

12  SAID IN THE PATENT.

13         MS. LAMKIN:  YOU'LL NOTICE, YOUR HONOR, IN DI 30-2,

14  WE'VE SELECTED IN THE PATENT IN THE PROSECUTION, 30-2.  YOU

15  DON'T HAVE TO LOOK AT IT NOW, BUT SOMETIMES THE PATENTEE USES

16  ATMOSPHERE AND SOMETIMES THE PATENTEE USES ATMOSPHERE ABSOLUTE.

17  THE PRIOR ART USES ATMOSPHERE TO MEAN ATMOSPHERE GAUGE, AND SO

18  THIS COURT IS CONFUSED ABOUT THE END POINT, BUT THE CONFUSION

19  WITH THOSE IS, WHERE IS THE STARTING POINT, RIGHT?  PRESSURE

20  ABSOLUTE IS SURFACE LEVEL.  WE THINK THAT THAT CAN'T POSSIBLY

21  MEAN.  PRESSURE GAUGE STARTS AT 14 FEET.  IT MIGHT MEAN THAT.

22  BUT AGAIN, MAYBE WE NEED ADDITIONAL BRIEFING HERE, BUT WE THINK

23  WE CAN'T STOP AT ONE ATMOSPHERE.

24         THE COURT:  WELL, NO, ACTUALLY IT HAS TO BE ABLE TO

25  EXCEED, BASED ON THE DESCRIPTION OF THE PATENT, EVEN ONE

1    ATMOSPHERE.  AND I DON'T KNOW IF IT HAS TO EXCEED IT BY, YOU

2    KNOW, 1.1, OR I DON'T KNOW HOW YOU DO ATMOSPHERES BEYOND 1, 2,

3    AND I GUESS TO THE EXTENT A HUMAN BEING COULD SWIM BEFORE THEY

4    WOULD IMPLODE.  SO THERE HAS TO BE SOME RATIONAL END POINT, I

5    SUSPECT, WHERE YOU HAVE TO BE IN A DIVING MODE OR SOMETHING

6    INSTEAD OF JUST IN THE WATER.  BUT IT DOESN'T REALLY HAVE AN

7    END POINT.

8           THE PATENT ITSELF TALKS ABOUT EVEN EXCEEDING, AND SO

9    IT WAS MY UNDERSTANDING THAT THE RIGIDNESS OF THIS CONTAINER

10   HAS TO MAINTAIN ITS SHAPE EVEN IF YOU GO BEYOND ONE ATMOSPHERE.

11   I DON'T KNOW HOW MUCH MORE BEYOND THAT, BUT BEYOND IT.  BUT WE

12   DIGRESS BACK TO MY CONSTRUCTION.  LET'S WORK WITH YOUR

13   CONSTRUCTION AND LET ME HEAR WHAT THE PLAINTIFFS HAVE TO SAY.

14   THANK YOU.

15          MS. KENNEALLY:  GOOD MORNING, YOUR HONOR.

16          MS. GODDARD:  YOUR HONOR, MAY I APPROACH?  I HAVE A

17   HARD COPY.

18          THE COURT:  YES.  THANK YOU.

19          MS. KENNEALLY:  YOUR HONOR, WE HAD A CHANCE TO REVIEW

20   THE COURT'S TENTATIVE AND PROPOSED CONSTRUCTION AND APPRECIATE

21   THE EFFORT THAT THE COURT PUT FORWARD.  WE DON'T HAVE -- JUST

22   JUMPING RIGHT IN WITH "RIGID" AND "RIGID CONTAINER."  WE DON'T

23   HAVE A -- WE WOULD PROPOSE TWEAKING THE COURT'S CONSTRUCTION

24   SLIGHTLY, AND WE WOULD SAY SOMETHING LIKE, RETAINS SHAPE AND

25   DOES NOT ALTER OR COMPRESS UNDER AQUATIC PRESSURE ENCOUNTERED

1    WHILE SUBMERGED IN AN AQUATIC ENVIRONMENT.

2           THE COURT:  I'M SORRY, I DIDN'T GET THE LAST PART.

3           MS. KENNEALLY:  SO IT WOULD BE THE COURT'S

4    CONSTRUCTION, RETAINS SHAPE AND DOES NOT ALTER OR COMPRESS

5    UNDER AQUATIC PRESSURE, AND THEN WE WOULD ADD IN ENCOUNTERED

6    WHILE SUBMERGED INTO AN AQUATIC ENVIRONMENT.

7           SO I'M GOING TO ADDRESS THE TWO CONCERNS THAT

8    MR. LEACH RAISED, BUT I THINK OUR CONCERNS WITH THE DEFENDANTS'

9    PROPOSED CONSTRUCTION ARE ALIGNED WITH THE COURT'S CONCERNS

10   WITH THAT CONSTRUCTION.  NOW LOOKING AT OUR PROPOSAL "MADE FROM

11   ANY MATERIAL CAPABLE OF WITHSTANDING PRESSURE" AND I HAVE THIS

12   PARENTHETICAL IN THERE WHICH WASN'T WHAT WE HAD ORIGINALLY

13   PROPOSED, BUT I THINK THAT'S THAT CLARIFYING THE PRESSURES THAT

14   ARE ENCOUNTERED THERE.  BUT "ENCOUNTERED WHILE SUBMERGED IN AN

15   AQUATIC ENVIRONMENT, INCLUDED BUT NOT LIMITED TO METAL,

16   CERAMIC" --

17   (COURT REPORTER INTERRUPTION.)

18          MS. KENNEALLY:  SURE.  METAL, CERAMIC --

19          THE COURT:  I DON'T FIND IT USEFUL AT CLAIM

20   CONSTRUCTION TO PUT IN THINGS THAT IT COULD BE BUT AREN'T

21   LIMITED TO.  IF IT'S SOMETHING SPECIFICALLY EXCLUDED, THAT'S

22   ONE THING, BUT A LAUNDRY LIST OF IT COULD BE -- I THINK THAT

23   WOULD ONLY LEAD TO PROBLEMS OF PEOPLE GOING, WELL, LET'S SEE,

24   THIS ISN'T METAL, CERAMIC, GLASS, OR PLASTIC, SO IT CAN'T BE

25   THIS.

1          MS. KENNEALLY:  SURE.

2          THE COURT:  AND NOT RECOGNIZE THAT "INCLUDED BUT NOT

3    LIMITED TO" IS ONE OF THOSE WONDERFUL LEGAL SORT OF ...

4          MS. KENNEALLY:  AND THAT'S -- I MEAN, WE'RE

5    COMFORTABLE REMOVING THAT.  THE POINT IN INCLUDING THOSE WAS

6    THAT THOSE ARE RIGHT OUT OF THE SPECIFICATION, AND ALSO THE

7    REAL KEY IS THAT IT'S CAPABLE OF WITHSTANDING PRESSURE WHILE

8    SUBMERGED IN AN AQUATIC ENVIRONMENT.  AND THAT THOSE MATERIALS

9    IF THEY HAVE THAT QUALITY ARE -- WOULD BE -- YOU KNOW, WOULD BE

10   SOMETHING THAT THE CONTAINER COULD BE MADE OF.  SO IT WOULD

11   ASSIST IN SOME WAYS THE JURY IN HELPING.  BUT I UNDERSTAND THE

12   COURT'S CONCERN THERE, AND WE DON'T HAVE A PROBLEM REMOVING

13   THAT.

14         THE COURT:  THE PROBLEM THAT I ANTICIPATE THEY'RE

15   GOING TO HAVE WITH THAT AND THAT I HAVE WITH THAT IS, WHAT DOES

16   THAT MEAN, "ENCOUNTERED WHILE SUBMERGED IN AQUATIC

17   ENVIRONMENT"?  WELL, IF I PUT IT UNDER WATER IN THE KITCHEN

18   SINK, IS IT WITHSTANDING PRESSURE BECAUSE IT'S UNDERWATER?  I

19   THINK SUBMERGED MEANS UNDERWATER.  I'M NOT QUITE SURE THERE'S A

20   REAL ISSUE THERE.

21         BUT SUBMERGED IN AN AQUATIC ENVIRONMENT MEANS YOU'RE

22   PUTTING IT IN THE WATER SUBMERGED, COVERED BY WATER, BUT HOW

23   FAR DOWN?  AND I DON'T THINK THIS PATENT HAS ADDRESSED AT ALL

24   AND, IN FACT, IT DISTINGUISHES QUITE A BIT OF ART THAT TALKS

25   ABOUT PROTECTIVE CASES THAT MAKE SOMETHING WATERPROOF AT

1    SURFACE LEVEL, AND IT'S NOT TO SAY YOU CAN'T USE IT THERE, BUT

2    IT'S GOT TO DO SOMETHING MORE THAN THAT.

3            AND SO I DON'T THINK THAT LIMITATION AS PART OF THE

4    CLAIM CONSTRUCTION IS HELPFUL BECAUSE I THINK IT'S OVER

5    INCLUSIVE TO SAY, IF YOU SIMPLY CAN PUT THIS -- PUT A PRODUCT

6    ON AN IPHONE AND DROP IT IN THE SINK, IT MEETS THE SCOPE OF THE

7    PATENT IF THE IPHONE DOESN'T GET WET.

8            MS. KENNEALLY:  WELL, YOUR HONOR, I WOULD DISPUTE

9    THAT.  I DO BELIEVE THAT THIS PATENT COVERS MERE SURFACE

10   ACTIVITIES, AND THERE ARE CERTAIN CALL-OUTS FROM THE

11   SPECIFICATION WHICH I CAN POINT THE COURT TO WHERE IT'S NOT

12   ONLY DEEP LEVEL USE, BUT IT'S CERTAINLY, THE PATENT THROUGH THE

13   HISTORY OF THESE PATENTS AND THE CHAIN OF THESE PATENTS HAVE

14   EVOLVED TO INCLUDE MERE SURFACE ACTIVITIES.

15           THE COURT:  I THINK YOU'RE MISSING MY POINT BECAUSE

16   I'M NOT SAYING THAT IF YOU BUY THIS CASE AND YOU ONLY USE IT TO

17   SWIM LAPS IN THE POOL, IT WOULDN'T BE INFRINGING.  THE

18   STRUCTURE OF THE HOUSING, THE RIGID STRUCTURE OF THE HOUSING IS

19   SPECIFICALLY INTENDED TO BE MORE THAN JUST USED FOR INCIDENTAL

20   ACTIVITIES WHERE THINGS MIGHT GET WEIGHT.  SURE, YOU CAN USE IT

21   FOR THAT.

22           I CAN BUY A WATCH THAT IS WATER RESISTENT DOWN TO THE

23   FLOOR OF THE OCEAN AND NEVER GO IN THE OCEAN AND JUST TAKE IT

24   IN THE POOL, BUT IF THE PATENT THAT COVERS THE HOUSING FOR THAT

25   WATCH SPECIFICALLY SAYS IT'S MADE OF A MATERIAL THAT MUST BE

1    RESISTENT TO THAT LEVEL, THE FACT THAT IT CAN BE USED -- I CAN

2    ALSO MAKE A WATCH THAT IS WATER RESISTENT AT LESSOR LEVELS

3    DOESN'T MAKE IT COVERED BY THAT PATENT.  THIS PATENT WAS VERY

4    SPECIFICALLY INTENDED TO DEAL WITH A RIGID STRUCTURE THAT WAS

5    GOING TO GO BEYOND JUST SURFACE USE.

6           MS. KENNEALLY:  AND I DON'T KNOW THAT THAT IS

7    NECESSARILY TRUE WITH THIS PARTICULAR PATENT.  I THINK IN THE

8    EARLY PATENT, THE '769 PATENT, WHICH WAS THE FIRST PATENT, THAT

9    WAS CERTAINLY TRUE.  I DON'T THINK -- WE'RE NOT RUNNING FROM

10   THE FACT THAT WE HAVE CERTAINLY DESCRIBED "RIGID CONTAINER" IN

11   VERY SPECIFIC TERMS, AND WE HAVE DONE THAT.  I THINK WHAT GIVES

12   GUIDANCE TO THIS CONSTRUCTION IS HOW WE HAVE DISTINGUISHED THE

13   PRIOR ART, AND THAT IS SOMETHING THAT I WOULD LIKE TO GET IN TO

14   WHICH IS SOMETHING MR. LEACH HAD ALSO RAISED.

15          THE COURT:  GO AHEAD.

16          MS. KENNEALLY:  BUT THIS JUST POINTS TO -- YOU KNOW,

17   THIS COLUMN 7 OF THE PATENT CLEARLY DESCRIBES, YOU KNOW, THE

18   RIGID CONTAINER, BUT WHAT I WOULD LIKE TO MOVE QUICKLY HERE TO

19   IS THE DISCUSSION OF, YOU KNOW, THAT THERE'S SOMEHOW X-1 OR THE

20   APPLICANT IS TRYING TO RUN FROM DISCLOSURES THAT WERE MADE TO

21   THE PATENT OFFICE IS JUST NOT THE CASE HERE.  X-1 DOES NOT SEEK

22   TO CONSTRUE "RIGID CONTAINER" IN A MANNER THAT INCLUDES A

23   FLEXIBLE MEMBRANE.

24          NOW AND WHAT WE SAID IN OUR BRIEF IS AT LEAST AS X-1

25   UNDERSTANDS THAT TERM.  SO WE MADE VARIOUS DISTINCTIONS, AND WE

1    CERTAINLY DID THAT IN THE SPECIFICATION OF THE '032 PATENT, AND

2    WE DID THAT BEFORE THE PATENT OFFICE.  AND A COUPLE OF THINGS

3    THAT WE SAID WAS, WE DISTINGUISHED FULLER, SILVERMAN, AND OLSEN

4    BY SAYING, YOU KNOW, "A FLEXIBLE MEMBRANE WILL COMPRESS AROUND

5    THE DEVICE CAUSING ALL BUTTONS TO BE PRESSED."  SO THAT GIVES

6    SOME IDEA OF YOU KNOW THE RIGIDITY THAT IS REQUIRED BY THE

7    '032.

8            AND WE ALSO DISTINGUISHED GOLDFARB.  "THE STRUCTURAL

9    DESIGN DESCRIBES A FLEXIBLE MEMBRANE THAT CANNOT WITHSTAND

10   PHOTOSTATIC PRESSURE."

11           WE ALSO DESCRIBED -- OR WE ALSO DISTINGUISHED THE GELL

12   PATENT WHICH IS "IT'S HIGHLY SUSCEPTIBLE TO FAILURE BECAUSE OF

13   THE POTENTIAL FOR PERFORATION OF THE FLEXIBLE MEMBRANE."

14           THOSE ARE RIGHT IN THE BODY OF THE SPECIFICATION.

15   THERE IS NO SECRET HERE THAT WE HAD DISTINGUISHED "FLEXIBLE

16   MEMBRANE."  NOW AS WE UNDERSTAND WHAT FLEXIBLE MEMBRANE IS, THE

17   PRIOR ART WAS SOMETHING DIFFERENT THAN THE RIGIDITY THAT'S

18   REQUIRED BY THE '032.

19           SO DEFENDANTS' PROPOSED CONSTRUCTION REFERS TO

20   FLEXIBLE MEMBRANE AS WAS DISTINGUISHED BY THE PRIOR ART, AND

21   THEY SAY, IT'S, IN FACT, X-1 WHO PROPOSED THESE TERMS AND

22   INITIATED THESE TERMS EVEN INTO THE DISCUSSION HERE, BUT WE

23   DIDN'T JUST REFER TO -- AS YOUR HONOR POINTED OUT EARLIER WITH

24   RESPECT TO WHAT MR. LEACH WAS SAYING, WE DIDN'T JUST SAY

25   "FLEXIBLE MEMBRANE."  THAT WASN'T THE ONLY DISTINGUISHING

1    QUALIFICATION.  WE SAID, AND I'LL TELL YOU WHAT WE HAD SAID,

2    CERTAIN THINGS AS FAR AS IT'S FLEXIBLE, YOU KNOW, IT ALLOWS THE

3    USER TO MANIPULATE THE CONTROLS, IT'S EASILY DEFORMABLE.

4         WHAT I WOULD LIKE TO DO IS LOOK AT HOW -- WHAT

5    "FLEXIBLE MEMBRANE" MEANS IN THE PRIOR ART THAT WAS

6    DISTINGUISHED, FOR EXAMPLE, IN THE FULLER REFERENCE.  SO BEFORE

7    WE GET INTO WHAT THIS SAYS HERE, OUR BELIEF IS THAT ADOPTING A

8    CONSTRUCTION THAT JUST MERELY SAYS DOESN'T INCLUDE A FLEXIBLE

9    MEMBRANE ONLY KICKS THE CAN DOWN THE ROAD WITH RESPECT TO

10   RESOLVING THIS DISPUTE.  YOU KNOW, IT'S CERTAINLY GOING TO

11   RAISE ADDITIONAL QUESTIONS ABOUT WHAT FLEXIBLE MEANS.

12        NOW IN FULLER, AS YOU SEE HERE, THE SPECIFICATION IN

13   FULLER SAYS "THE WATERPROOF ENCLOSURE FOR PORTABLE RADIOS

14   ACCORDING TO THE PRESENT INVENTION IS COMPRISED OF A WATERPROOF

15   HOUSING SIZED AND SHAPED TO CONTAIN A PORTABLE RADIO THEREIN,

16   WHEREIN A PORTION OF THE WATERPROOF ENCLOSURE ADJACENT TO THE

17   RADIO CONTROL KNOBS IS A FLEXIBLE, WATER-IMPERMEABLE MEMBRANE

18   THAT IS EASILY DEFORMABLE BY AN OPERATOR'S FINGER AND IS

19   ADAPTED TO ENGAGE AND ALLOW THE USER TO OPERATE THE CONTROL

20   KNOBS OF THE RADIO OR TAPE PLAYER FROM THE EXTERIOR OF THE

21   ENCLOSURE WITHOUT BREAKING THE WATERPROOF SEAL."

22        IN FULLER, YOU CAN SEE THIS IS THE DISCLOSURE, THIS IS

23   ONE OF THE DISCLOSURES.  THAT TOP PART, WHICH IS THE FLEXIBLE

24   MEMBRANE COVER, 30, YOU'RE SUPPOSED BE ABLE TO PUT YOUR FINGER

25   IN THERE AND MANIPULATE THE BUTTONS.  SO IT'S A SPECIFIC

1   FLEXIBLE MEMBRANE THAT WAS DISTINGUISHED BY THE APPLICANT IN

2   FRONT OF THE PATENT OFFICE.

3          THE COURT:  WELL, GO BACK TO YOUR SLIDE BEFORE.  THE

4   PART YOU HIGHLIGHTED IS THE PART THAT THE DEFENSE ATTORNEY IS

5   SAYING IS EXCLUDED BY THE DEFINITION OF "RIGID" IN THIS PATENT.

6   IT CAN'T BE A MATERIAL THAT WOULD ALLOW THE USER TO OPERATE THE

7   CONTROL KNOBS FROM THE EXTERIOR OF THE ENCLOSURE.

8          MS. KENNEALLY:  AND I THINK IF THEY WERE SAYING HAVING

9   A FLEXIBLE MEMBRANE THAT'S EASILY DEFORMABLE BY AN OPERATOR'S

10  FINGER AND ADAPTED TO EXACTLY WHAT WAS SAID THERE, WHAT WAS

11  DESCRIBED IN FULLER, I MEAN, THAT'S SOMETHING THAT WE

12  DISTINGUISHED.  LIKE I SAID, WE DON'T CONSIDER THAT PART OF A

13  RIGID CONTAINER.  SO I THINK THE COURT'S PROPOSED

14  CONSTRUCTION--

15         THE COURT:  FORGET MY PROPOSED CONSTRUCTION.  LET'S GO

16  WITH THE ONE THAT THEY'RE OFFERING SAYING THAT "RIGID" -- IF WE

17  STICK WITH "RIGID" AS DEFINED IN THE PATENT AT COLUMN 7 WHERE

18  IT TALKS ABOUT A RIGID CONTAINER CAPABLE OF WITHSTANDING

19  PRESSURE.

20         MS. KENNEALLY:  UM-HMM.

21         THE COURT:  AND NOT ALLOWING A USER TO OPERATE THE

22  CONTROL KNOBS FROM THE EXTERIOR OF THE ENCLOSURE, THAT THE

23  MATERIAL TO BE RIGID, IT HAS MET THOSE CHARACTERISTICS, THEN

24  ARE WE IN AGREEMENT?

25         MS. KENNEALLY:  I THINK IT WOULD BE NOT EASILY

1    DEFORMABLE BY THE OPERATOR'S FINGER.

2          THE COURT:  OKAY.  THAT'S THERE, THAT'S FINE.  IT'S

3    NOT DEFORMABLE, IT DOESN'T ALLOW THE OPERATOR TO OPERATE THE

4    CONTROL KNOBS.  THAT'S ONE EXAMPLE.  GO ON TO YOUR OTHER

5    EXAMPLES WITH WHAT A FLEXIBLE MEMBRANE WAS UNDERSTOOD TO MEAN

6    WHEN IT WAS DISTINGUISHED BY THE PATENTEE AS NOT COVERED BY

7    THIS PATENT.

8          MS. KENNEALLY:  AND I WOULD SAY FULLER IS THE BEST

9    EXAMPLE.  THAT PROVIDES THE MOST GUIDANCE AND HAS THE MOST

10   SIGNIFICANT IMPACT, I THINK, ON THIS TERM.  ONE OF THE OTHER

11   THINGS THAT THEY HAD TRIED TO INCLUDE, AND I DON'T KNOW IF YOUR

12   HONOR WANTS TO HEAR ARGUMENT ON IT, IS WHETHER "COVER" SHOULD

13   BE INCORPORATED INTO THIS CONSTRUCTION.  THAT IS ALSO SOMETHING

14   THAT IS USED IN THE FULLER PATENT.  IT'S "FLEXIBLE MEMBRANE"

15   AND "FLEXIBLE COVER" ARE USED ALMOST INTERCHANGEABLY.

16         THE COURT:  YOU HAVE "CONTAINER" AS A TERM IN THE

17   PATENT HERE THAT'S BEFORE THE COURT AND THE CONTAINER HAS TO BE

18   FLEXIBLE AND WATERPROOF.  SO FROM MY POINT OF VIEW, THAT MEANS

19   THE COVER IS NOT SEPARATE FROM THE CONTAINER BECAUSE OTHERWISE,

20   TO SAY -- A CONTAINER IS A CONTAINER, OKAY.  IF I BUY GROCERIES

21   AND I PUT THEM IN A PAPER BAG, THE PAPER BAG IS A CONTAINER OF

22   THOSE GROCERIES.  IT IS HOLDING.  IT IS CONTAINING.  IT'S A

23   TAUTOLOGY, A CONTAINER CONTAINS, BUT IT IS CONTAINING THE

24   GROCERIES.

25         IT IS ALSO NOT COVERED ON THE TOP.  THAT WOULD NOT

1    SATISFY THE PLAIN LANGUAGE OF THIS CLAIM WHICH WOULD REQUIRE

2    THAT SAID CONTAINER IS WATERPROOF.  IT HAS TO BE COMPLETELY

3    CLOSED, WHICH MEANS IT HAS TO HAVE ALL SIDES, AND IT DOESN'T

4    HAVE TO BE A PARTICULAR GEOMETRIC SHAPE.  I MEAN, YOU SAID

5    SQUARE, THE BOX, WHATEVER.  I THINK THAT'S WAY TOO LIMITING.

6         YOU HAVE THE ONLY EXAMPLE IN THE PATENT OF CIRCULAR

7    ONE FOR CD'S, WHICH HAVE BECOME SORT OF AN ANACHRONISM, BUT

8    THAT'S WHEN THE PATENT WAS WRITTEN.  BUT THERE IS NO LIMITATION

9    IN THE PATENT AS TO THE SHAPE OF THE CONTAINER.  IF TOMORROW,

10   PEOPLE CAME OUT WITH AN EGG-SHAPED I-SOMETHING AND YOU WANTED

11   TO PUT IT IN A CONTAINER AND IT WAS A HATCH THAT OPENS,

12   UNSCREWED IN THE MIDDLE AND ONLY HAS TWO PARTS, IT STILL COULD

13   BE A CONTAINER UNDER THE TERMS OF THIS PATENT, BUT IT HAS TO

14   HAVE ALL THE PARTS.

15        I DON'T THINK THE LID IS A SEPARATE ASPECT.  THE LID

16   COULD HAVE DESIGN ISSUES THAT ARE SPECIFIC, BUT IT'S NOT --

17   THERE IS A CONTAINER AND A LID.  IT'S A CONTAINER WITH A LID.

18   THE LID IS PART OF IT.

19        MS. KENNEALLY:  AND THE LID IS SOMETHING DIFFERENT,

20   YOUR HONOR, THAN WHAT I UNDERSTAND DEFENDANTS ARE REFERRING TO

21   BY TRYING TO INCORPORATE "COVER" INTO THIS PARTICULAR

22   CONSTRUCTION.  SO I THINK LID IS SOMETHING WE'LL ADDRESS ON

23   "WATERPROOF."

24        THE COURT:  I DON'T THINK WE NEED TO GO TO "COVER."

25        MS. KENNEALLY:  OKAY.  I AGREE WITH YOU, YOUR HONOR.

1    I DON'T THINK THERE WAS ANY BASIS TO INCORPORATE THAT, BUT IT

2    WAS PART OF THEIR PROPOSED CONSTRUCTION, SO I WAS JUST SEEING

3    IF YOU HAD ANY QUESTIONS ON THAT.

4         SO I THINK YOU'RE RIGHT, THE KEY HERE IS WHETHER THIS

5    CONTAINER IS GOING TO BE CAPABLE OF WITHSTANDING PRESSURE IN AN

6    AQUATIC PRESSURE ENVIRONMENT AND WHETHER WE CAN ALSO INCLUDE,

7    YOU KNOW, NOT A -- YOU KNOW, THIS IS HAVING NO FLEXIBLE

8    MEMBRANE THAT IS EASILY DEFORMABLE BY THE OPERATOR'S FINGER, I

9    THINK THAT'S SOMETHING THAT -- THAT, YOU KNOW, WOULD BE -- WE

10   WOULD BE COMFORTABLE WITH.  BUT THE PROPOSED CONSTRUCTION BASED

11   ON WHAT THE COURT HAS OFFERED WOULD TO BE ADD AFTER AQUATIC

12   PRESSURES "ENCOUNTERED WHILE SUBMERGED IN AN AQUATIC

13   ENVIRONMENT," AND LEAVE IT AT THAT.

14        THE COURT:  ALL RIGHT.  THEY'VE TAKEN THE DEFINITION

15   NOW FROM THE FULLER PATENT, BUT I THINK THAT MAY BE NARROWER

16   THEN WHAT THEY DISAVOWED.

17        MR. LEACH:  YEAH.  LET'S LOOK AT WHAT THEY DID IN THE

18   ACTUAL FILE HISTORY AND PATENT OFFICE, BECAUSE I THINK THAT'S

19   REALLY WHAT'S IMPORTANT HERE.  AND I DON'T THINK WE'RE TOO FAR

20   OFF HERE, BUT WHAT I THINK -- JUST FOR CLARIFICATION, WHAT I'M

21   HEARING THE COURT SAY IS, WE MAY RETAIN AT LEAST PART OF THE

22   DEFINITION THAT THEY HAD PROPOSED, THAT IT HAS TO BE ABLE TO

23   WITHSTAND UNDERWATER PRESSURE OR AQUATIC PRESSURE, WHICH AGAIN,

24   I DON'T KNOW WHAT THAT MEANS, SO THAT WILL JUST BE A BATTLE, I

25   GUESS, WE'LL DEAL WITH ON INFRINGEMENT.

1          BUT MORE IMPORTANTLY, AND MY POINT, I THINK IT'S

2     IMPORTANT, AND I THINK THE COURT IS IN SOMEWHAT AGREEMENT, WE

3     HOLD THEM TO THEIR PROSECUTION DISCLAIMER.  AND IF WE'RE GOING

4     ON THAT I THINK WE SHOULD HOLD THEM TO WHAT THEY SAID IN THE

5     ACTUAL PROSECUTION, WHICH IS -- WHICH IS -- I'M LOSING IT.

6     "DOES NOT HAVE A FLEXIBLE COVER."  IF YOU WANT TO SAY MEMBRANE,

7     COVER, I DON'T CARE.  I THINK THEY SAY COVER HERE.  I THINK

8     THEY SAY MEMBRANE THROUGHOUT THE PATENT.  I DON'T THINK THERE

9     IS A DISTINCTION TO ONE SKILLED IN THE ART.  WE CAN GO WITH

10    EITHER OR BOTH, WHICH IS WHAT WE'VE SUGGESTED.

11          AND THEN IF THE COURT WANTS TO ALLOW, IS ALLOW THE

12    USER TO MANIPULATE THE CONTROLS.  AND I WOULD SAY CONTROLS.

13    CONTROL KNOBS, IT'S NOT A SPECIFIC EMBODIMENT.  I DON'T THINK

14    WE WANT TO TIE IT TO KNOBS.  THERE ARE DIFFERENT TYPES OF

15    CONTROLS.  SO CONTROLS, I THINK WE'RE FINE WITH THAT, YOUR

16    HONOR.  I THINK IT'S THE PROPER CONSTRUCTION OF THIS TERM.

17          THE COURT:  RIGID IS DESCRIBING THE MATERIAL, CORRECT?

18          MR. LEACH:  RIGID.

19          THE COURT:  DESCRIBES THE MATERIAL THAT MAKES UP THE

20    HOUSING.

21          MR. LEACH:  CORRECT.

22          THE COURT:  IT'S A CHARACTERISTIC OF THAT MATERIAL.

23          MR. LEACH:  CORRECT.

24          THE COURT:  THE PATENT SAYS IT'S CAPABLE OF

25    WITHSTANDING PRESSURE.  WE'LL SET ASIDE FOR A LITTLE BIT WHAT

1   PRESSURE MEANS.

2            MR. LEACH:  RIGHT.

3            THE COURT:  AND ACCORDING TO YOU, BASED ON DISCLAIMERS

4   IN THE FILE HISTORY TO GET BEYOND PRIOR ART, IT ALSO CANNOT BE

5   A MATERIAL THAT ALLOWS THE USER TO MANIPULATE THE CONTROLS.

6            MR. LEACH:  I THINK WE JUST HAVE A LITTLE DISCONNECT,

7   YOUR HONOR.  IT'S NOT "RIGID" BY ITSELF THAT THEY DISCLAIM, IT

8   WAS "RIGID CONTAINER."  SO THAT'S WHERE WE SAY THAT IT'S A

9   CONTAINER THAT DOES NOT ALLOW.

10            THE COURT:  YOU GUYS HAVE LUMPED RIGID CONTAINER IN TO

11   ONE WORD.  IT'S A CONTAINER AND IT HAS TO BE RIGID, AND SO ARE

12   WE TALKING --

13            MR. LEACH:  THAT'S HOW --

14            THE COURT:  -- THE MATERIAL OF THE CONTAINER IS WHAT

15   HAS TO WITHSTAND THE PRESSURE.

16            MR. LEACH:  THAT'S TRUE.  BUT THE CONTAINER IS MADE OF

17   A LOT OF MATERIALS, SO THERE ARE GOING TO BE MATERIALS --

18            THE WITNESS:  RIGHT.  BUT THE WORD "RIGID" APPEARS

19   THROUGHOUT THE PATENT, JUST NOT SPECIFIC TO "CONTAINER."

20            MR. LEACH:  CORRECT.

21            THE COURT:  I DON'T THINK IT HAS A DIFFERENT

22   DEFINITION WHEN IT APPLIES TO DIFFERENT THINGS.

23            MR. LEACH:  THE DIFFICULTY HERE, YOUR HONOR, IS THE

24   DISCLAIMER THEY MADE WAS TO THE WORD "RIGID CONTAINER."  THEY

25   DIDN'T SAY FULLER WAS DIFFERENT BECAUSE IT'S FLEXIBLE AND OUR

1    THING IS RIGID.  THEY SAID FULLER HAS A FLEXIBLE COVER.

2    REMEMBER, FULLER IS THAT RIGID BOX.

3          SO FULLER IS RIGID, BUT IT'S GOT THIS FLEXIBLE COVER

4    OVER IT.  SO THEY'RE SAYING THAT'S NOT OUR RIGID CONTAINER

5    BECAUSE OUR RIGID CONTAINER DOESN'T HAVE THAT FLEXIBLE MEMBRANE

6    AT THE TOP.  REALLY THE ARGUMENT THEY MADE, AND WERE SUCCESSFUL

7    AT THE PATENT OFFICE, RIGID CAN'T BE FLEXIBLE.  I THINK THAT IS

8    WHERE YOUR HONOR IS SEEING THIS.

9          WHAT THEY SAID AT THE PATENT OFFICE WAS, OUR RIGID

10   CONTAINER WHICH HAS ALL SIX SIDES HARPED IS DIFFERENT THAN

11   FULLER BECAUSE FULLER HAS ONE OF THE SIX SIDES THAT IS A

12   FLEXIBLE COVER.  SO YOU CAN'T NOW IN THE SCOPE OF THEIR PATENT

13   COME BACK AND SAY SOMETHING THAT'S RIGID ON FIVE OF THE SIX

14   SIDES OR EVEN THE ENTIRE THING EXCEPT FOR ONE SPOT WHERE YOU

15   CAN INTERACT WITH IT IS NOW A RIGID CONTAINER AS THE WAY THEY

16   DESCRIBE IT, BECAUSE THAT'S THE DISTINCTION THEY MADE.

17         THE COURT:  I FEEL LIKE WE'RE TALKING PAST EACH OTHER.

18         MR. LEACH:  MAYBE WE ARE.

19         THE COURT:  THE CONTAINER HAS TO BE RIGID.  I THINK

20   THE ENTIRE CONTAINER HAS TO BE RIGID.

21         MR. LEACH:  THEN WE'RE NOT TALKING PAST EACH OTHER.

22         THE COURT:  I DON'T SEE WHERE THAT, THERE IS ANY OTHER

23   WAY YOU CAN READ IT.  IT'S A RIGID CONTAINER.  IT'S NOT

24   PARTIALLY RIGID.  IT'S A RIGID CONTAINER, AND CONTAINED WITHIN

25   THE DEFINITION OF THE CONSTRUCTION OF RIGID IS THAT IT CAN'T

1   USE A MATERIAL THAT WOULD ALLOW THE USER TO MANIPULATE THE

2   CONTROLS THROUGH THE MATERIAL.

3          MR. LEACH:  COMPLETELY IN AGREEMENT, YOUR HONOR.

4   MAYBE WE ARE TALKING PAST EACH OTHER.  I THINK THEIR ARGUMENT

5   IS, WELL, PART OF THE CONTAINER IS RIGID, SO, THEREFORE, IT'S A

6   RIGID CONTAINER.  BUT IF WHAT YOUR HONOR JUST SAID --

7          THE COURT:  IF THEY WANT TO ARGUE THAT, I WANT TO HEAR

8   IT BECAUSE I DON'T THINK THERE IS ANY SUPPORT FOR THAT IN THE

9   SPECIFICATION THAT IT'S PARTIALLY RIGID.

10         MR. LEACH:  I HAVE NOTHING FURTHER.

11         THE COURT:  SO IF WE TAKE IT AS A RIGID CONTAINER

12   INSTEAD OF JUST THE WORD RIGID, THEN WE'VE GOT A STRUCTURE THAT

13   IS CAPABLE OF WITHSTANDING PRESSURE AND DOESN'T INCLUDE A

14   MATERIAL THAT WOULD ALLOW THE USER TO MANIPULATE THE CONTROLS

15   THROUGH THE MATERIAL OF THE CONTAINER.

16         MS. KENNEALLY:  YOUR HONOR, THE ONLY CONCERN WE HAVE

17   THERE IS THAT WHAT WE DISTINGUISHED IN FULLER WAS SOMETHING

18   THAT WAS DEFORMABLE, A MEMBRANE THAT WAS DEFORMABLE, SO I THINK

19   THAT HAS TO BE INCORPORATED INTO THE CONSTRUCTION.

20         THE COURT:  THAT'S NOT THE POSITION YOU TOOK IN YOUR

21   BRIEF.

22         MS. KENNEALLY:  WELL, WE DISCLOSED, WE SAID --

23         THE COURT:  IN YOUR BRIEF -- IN YOUR RESPONSE BRIEF,

24   YOU JUST SAID, YEAH, WE ARE NOT CLAIMING THESE MEMBRANES.

25         MS. KENNEALLY:  YOUR HONOR, BUT WE SAID "AS WE

1   UNDERSTAND HOW THAT TERM IS USED IN FULLER."  SO THAT WAS THE

2   LANGUAGE WE USED.  AND HOW WE UNDERSTAND THAT TERM IS THE

3   PORTION FROM OF THE SPECIFICATION THAT WE PULLED UP FOR YOUR

4   HONOR FROM FULLER, WHICH IS SLIDE 10.

5          SO OTHER THAN THAT, WE DON'T HAVE A PROBLEM WITH IT.

6   WE JUST BELIEVE YOU SHOULD INCORPORATE "DEFORMABLE" INTO THE

7   CONSTRUCTION IF YOU'RE BASING IT ON FULLER.

8          MR. LEACH:  MY POINT IS THAT THIS IS WHAT THEY TOLD

9   THE PATENT OFFICE.  THEY DIDN'T SAY ANYTHING ABOUT DEFORMABLE.

10   THEY ARE GOING BACK TO THE REFERENCE TRYING TO READ OTHER STUFF

11   IN.  THIS IS WHAT THEY SAID.  THIS IS WHAT THEY SHOULD BE HELD

12   WITH.

13          THE COURT:  ALL RIGHT.  I BISECTED THAT RIGID

14   CONTAINER.  I LOOKED AT IT AS TWO SEPARATE WORDS THAT YOU THEN

15   MERGED TOGETHER INTO THE SENTENCE, BUT IF A RIGID CONTAINER AS

16   DISCLOSED IN THE CLAIMS IS -- DOES THE WORD "FLEXIBLE" HAVE TO

17   BE IN THIS?  IF A RIGID CONTAINER IS A STRUCTURE CAPABLE OF

18   WITHSTANDING PRESSURE AND DOESN'T INCLUDE A MATERIAL THAT

19   ALLOWS A USER TO MANIPULATE THE CONTROLS THROUGH THE MATERIAL,

20   DOES IT HAVE TO BE A FLEXIBLE MATERIAL?

21          MR. LEACH:  I THINK THAT'S PROBABLY MORE APPROPRIATE

22   WITH THE ACTUAL LANGUAGE THAT THEY USED AND THE DISPARAGEMENT

23   THEY MADE AND EVERYTHING ELSE, BUT I DON'T THINK IT'S GOING TO

24   MAKE A BIG DIFFERENCE AS FAR AS THE LATER ARGUMENTS IN THIS

25   CASE.

1          THE COURT:  IT WOULDN'T EXCLUDE THE USE OF A FLEXIBLE

2     MATERIAL AS LONG AS YOU COULD MANIPULATE THROUGH IT.

3          MR. LEACH:  AS LONG AS YOU COULDN'T --

4          THE COURT:  AND, AGAIN, IT GETS BACK TO THE QUESTION I

5     WAS RAISING THAT IT'S NOT SO MUCH THE FLEXIBILITY ASPECT AS THE

6     THICKNESS.  IF THAT THING YOU WERE SQUISHING, THE FLEXIBLE

7     MEMBRANE, WAS THREE TIMES THICKER, IT MIGHT NOT BE QUITE AS

8     FLEXIBLE, BUT IT ALSO MIGHT NOT LET YOU HAVE THAT ABILITY TO

9     INTERACT.

10          MR. LEACH:  YES.  I THINK FLEXIBLE WITH THE CAVEAT AND

11     THE EXPLANATION THAT IT HAS TO ALLOW TO INTERACT.

12          THE COURT:  WELL, YOU GAVE ME, AND I THINK IT WAS FROM

13     THEIR BRIEF, THAT IT DOESN'T ALLOW INTERACTION WITH THE DEVICE

14     THROUGH THE MATERIAL, WAS THAT --

15          MR. LEACH:  THAT WAS FROM --

16          THE COURT:  -- WAS THAT FROM A STATEMENT THAT THEY

17     MADE IN RESPONSE?

18          MR. LEACH:  WAS THAT THE SLIDE I GAVE YOU, THE ONE

19     PAGE FROM THE OTHER PATENTS THAT YOU'RE TALKING ABOUT?

20          THE COURT:  YES.  I'M SORRY.  THAT'S FROM THE OTHER

21     PATENT.

22          MR. LEACH:  I DO HAVE COPIES OF ALL OUR SLIDES, YOUR

23     HONOR.

24          THE COURT:  IT'S HELPFUL FOR MY COURT REPORTER.

25          MS. KENNEALLY:  AND, YOUR HONOR, I'LL JUST POINT OUT

1   THAT FLEXIBLE WITH RESPECT TO THIS SLIDE THAT GARRET JUST

2   REFERENCED, I MEAN, THAT TERM WAS NEVER CONSTRUED WITH RESPECT

3   TO EITHER OF THOSE PATENTS.  I THINK IF WE'RE FOCUSING ON

4   FULLER, WHICH IS THE ONLY PIECE OF PRIOR ART THAT WAS DISCUSSED

5   HERE BEFORE THE PATENT OFFICE, THAT'S TALKING ABOUT

6   MANIPULATING CONTROL KNOBS, AND SO I THINK THAT'S A SLIGHTLY

7   DIFFERENT ISSUE.  BUT THE DISCLOSURE IN FULLER IS VERY CLEAR

8   THAT IT'S DEFORMABLE, AND SO WE WOULD SUBMIT THAT THAT SHOULD

9   BE INCORPORATED INTO THE PROPOSED CONSTRUCTION.

10       MR. LEACH:  YOUR HONOR, I'M NOT GOING TO RESPOND

11   UNLESS YOU ASK ME TO.

12       THE COURT:  JUST GIVE ME A SECOND, BECAUSE I JUST

13   WANTED TO ... HERE'S THE PROBLEM I HAVE WITH THE POSITION THAT

14   THE PLAINTIFFS ARE TAKING THAT REQUIRES THAT IT HAS TO BE

15   DEFORMABLE, IS IN YOUR REPLY BRIEF, YOU VERY EXPLICITLY SAID

16   THERE IS NO DISPUTE IN THIS CASE THAT A RIGID CONTAINER DOES

17   NOT INCLUDE A FLEXIBLE MEMBRANE AND THAT YOU HAVE ALWAYS

18   CONTINUED TO TAKE THE POSITION THAT IT DOESN'T INCLUDE A

19   FLEXIBLE MEMBRANE, BUT WE NEVER REALLY GOT TO A DEFINITION.

20       WELL, YOUR DEFINITION IS THEN A PARTIAL.  YOU THEN

21   TALK ABOUT FULLER AS TO WHAT A FLEXIBLE MEMBRANE MIGHT MEAN AND

22   CITE THAT IT'S A FLEXIBLE WATER-PERMEABLE MEMBRANE THAT IS

23   EASILY DEFORMABLE BY AN OPERATOR'S FINGER, BUT YOU LEAVE OUT

24   AND ALLOW THE USER TO OPERATE CONTROL KNOBS.

25       IS IT YOUR POSITION THAT AT THE TIME THIS PATENT WAS

1    FILED, THE STATE OF THE ART WAS THAT A FLEXIBLE MEMBRANE WOULD

2    HAVE BEEN UNDERSTOOD TO MEAN SOMETHING THAT WOULD HAVE BEEN

3    EASILY DEFORMABLE AS OPPOSED TO SOMETHING THAT YOU COULD JUST

4    INTERACT THROUGH?

5            MS. KENNEALLY:  I THINK THAT'S CORRECT, YOUR HONOR.  I

6    MEAN, AND WE SPECIFICALLY REFERRED TO THIS WASN'T THE PRIOR ART

7    GENERALLY.  I MEAN, IT WAS THE SPECIFIC REFERENCE TO FULLER AND

8    THE MEMBRANE THAT IS DISCLOSED IN FULLER, WHICH IS BOTH

9    DEFORMABLE, AND I FORGET THE SPECIFIC LANGUAGE, BUT BOTH

10   DEFORMABLE BY THE OPERATOR'S FINGER AND ADAPTED TO ENGAGE AND

11   ALLOW THE USER TO OPERATE THE CONTROL KNOBS OF THE RADIO OR

12   TAPE PLAYER.

13           SO THIS IS NOT -- I MEAN, IF YOU CAN ENVISION A TAPE

14   PLAYER AT THE TIME WHERE YOU HAVE TO PUSH THE BUTTON IN, THIS

15   IS NOT JUST A TOUCH OF THE TOUCHSCREEN.  THIS IS NOT A FLAT

16   SURFACE.  THIS IS BEING ABLE TO REACH YOUR FINGER IN AND

17   ACTUALLY ENGAGE A TAPE RECORDER THAT HAS A PUSH BUTTON.  SO

18   THAT'S A DIFFERENT -- I MEAN, THAT'S A DIFFERENT FLEXIBILITY.

19   THAT'S WHERE THE DEFORMABLE COMES IN AND THAT'S WHERE IF YOU'RE

20   ALLOWING THE OPERATOR TO OPERATE CONTROL KNOBS, AND THE EXAMPLE

21   IS THE RADIO OR TAPE PLAYER, THE ABILITY TO CREATE, TO OPERATE

22   THOSE BUTTONS REQUIRES DEFORMABILITY IN THE MEMBRANE.

23           THE COURT:  YES, GO AHEAD.

24           MR. LEACH:  I HATE TO KEEP COMING BACK.

25           THE COURT:  NO, I'M TRYING TO GET TO --

1           MR. LEACH:  IT'S JUST NOW WE'RE TRYING TO FIGURE OUT

2    WHAT EASILY DEFORMABLE IS, SO I HAVE TO GET AN EXPERT, I GUESS,

3    TO DETERMINE WHAT THAT MEANS IN SOME PATENT, WHICH IF THEY

4    WANTED THAT TO BE THE DISTINCTION, THEY COULD HAVE SAID THAT.

5    THAT'S WHAT THEY COULD HAVE TOLD THE PATENT OFFICE.

6           THE COURT:  ISN'T THAT WHAT THEY TOLD THE PATENT

7    OFFICE?

8           MR. LEACH:  THAT ISN'T WHAT THEY TOLD THE PATENT

9    OFFICE.

10          THE COURT:  THEY LOOKED AT FULLER AND FULLER HAD A

11   COVER THAT WOULD ALLOW YOU TO -- BASICALLY WAS SUFFICIENT

12   ENOUGH OR FLEXIBLE ENOUGH OR THIN ENOUGH THAT YOU COULD OPERATE

13   THROUGH IT SO YOU WOULDN'T HAVE TO BREAK THE SEAL TO PUSH THE

14   BUTTONS.  AND SO THIS IS FROM THE PROSECUTION HISTORY OF THE

15   '722.  AND I KNOW I HAVE THAT.

16          MR. LEACH:  YOU SHOULD HAVE THAT AS AN EXHIBIT, YOUR

17   HONOR.

18          THE COURT:  YES.

19          MR. LEACH:  SO, YOUR HONOR, I THINK I CAN

20   SHORT-CIRCUIT THIS AND MAKE IT PRETTY EASY.

21          THE COURT:  YES, GO AHEAD.

22          MR. LEACH:  SO IN THE PATENT OFFICE WHEN THEY SAY

23   FULLER HAS A FLEXIBLE COVER, THEY POINT TO FULLER AT COLUMN 3,

24   LINES 34 THROUGH 36.  IF I SHOW YOU LINES COLUMN 3, LINES 34

25   THROUGH 36 OF THE FULLER PATENT.

1            THE COURT:  I HAVE IT.

2            MR. LEACH:  OKAY.  LET ME JUST READ WHAT IT SAYS.  I

3   CAN LET THE COURT READ FOR HERSELF, BUT IT DOESN'T SAY ANYTHING

4   ABOUT EASILY DEFORMABLE IN THERE.  SO WHEN THEY'RE -- AGAIN,

5   WHEN WE'RE LOOKING AT IF YOU'RE GOING TO TRY TO EXTRAPOLATE

6   SOMETHING FROM FULLER, I THINK THE BETTER PRACTICE IS TO USE

7   WHAT THEY SAID FULLER MEANT.  BUT THEN TO TRY TO USE ANOTHER

8   SECTION OF FULLER WHICH THEY DIDN'T EVEN CITE THROUGH EASILY

9   DEFORMABLE DOESN'T SEEM TO ME TO MAKE SENSE.

10            THE COURT:  THIS IS, I THINK, ONE OF THOSE ISSUES

11   WHERE TECHNOLOGY, DESPITE THE FACT THAT THESE AREN'T THAT OLD,

12   BUT FULLER IS OLD, WILL ADVANCE PRETTY QUICKLY.

13            MR. LEACH:  YES.

14            THE COURT:  AND IN FULLER WHEN THEY TALK ABOUT THE

15   FLEXIBILITY REQUIRED TO MANIPULATE CONTROL KNOBS, IT'S A VERY

16   MECHANICAL PUSH-BUTTON KIND OF THING, AND THIS PATENT WOULD

17   EXCLUDE MATERIAL THAT HAS THAT LEVEL OF FLEXIBILITY WHERE YOU

18   CAN PUSH A BUTTON.  OF COURSE IN TODAY'S TECHNOLOGY, THAT SORT

19   OF MECHANICAL PUSHING A BUTTON THING HAS BECOME ALMOST PASSE

20   AND YOU'RE NOW JUST TOUCHING STUFF WITHOUT REALLY EVEN HAVING

21   TO, MAYBE NOT PUT ANY PRESSURE ON, IT'S JUST HEAT OR WHATEVER.

22            AND SO THE MATERIAL THAT WOULD ALLOW YOU TO INTERACT

23   THROUGH IT MAY NOT HAVE ANY FLEXIBILITY.  IT DOESN'T REALLY

24   CORRESPOND, AND I THINK WE'RE KIND OF GETTING BEYOND IT IN THE

25   INFRINGEMENT ANALYSIS.  BUT IN TERMS OF SAYING A DEFINITION

1   THAT WOULDN'T ALLOW THE USER TO INTERACT WITH THE DEVICE IS

2   BROADER, I THINK, THAN THAT WHAT THEY DISCLAIMED IN FULLER,

3   WHICH IS, YOU CAN'T MANIPULATE THE DEVICE THROUGH THE MATERIAL.

4         IT HAS TO HAVE FLEXIBILITY REQUIRED TO MANIPULATE,

5   EVEN IN THE SECTION OF THE PATENT THAT YOU POINTED ME TO.  SO

6   IF YOU CAN MANIPULATE -- NOW WE'RE DOWN TO WHAT DOES MANIPULATE

7   MEAN.  I MEAN, TURN SOMETHING ON AND OFF BACK IN 1983 WAS

8   PROBABLY A MECHANICAL ACT OF PUSHING A BUTTON AS OPPOSED TO NOW

9   YOU GET IN YOUR CAR AND SAY, START.

10         SO I UNDERSTAND THE DISCLAIMER THAT YOU WANT TO HAVE,

11   AND I THINK IT'S APPROPRIATE IN DEFINING RIGID TO SAY THAT

12   RIGID, WHILE IT HAS TO HAVE THIS ATTRIBUTE OF WITHSTANDING

13   PRESSURE.

14         MR. LEACH:  ON ALL SIX SIDES.

15         THE COURT:  IT CAN'T INCLUDE A MATERIAL THAT ALLOWS

16   THE USER TO MANIPULATE THE DEVICE.  WHAT DOES MANIPULATE MEAN?

17   DOES IT ACTUALLY REQUIRE THAT YOU CAN BE ABLE TO PHYSICALLY,

18   AND AS THEY SAY, IT IS DEFORMABLE, SO CAN YOU PUSH IT.  AND IF

19   THAT'S THE LIMITATION, THAT'S FINE, BUT I'M NOT SURE THAT GETS

20   US WHERE YOU WANT TO BE.

21         MR. LEACH:  WELL, I THINK --

22         THE COURT:  NOT THAT MATTERS TO ME, BUT ...

23         MR. LEACH:  I UNDERSTAND, YOUR HONOR.  I THINK THE

24   FIRST PLACE WE ARE IS, THEY DISCLAIMED FLEXIBLE COVERS OR

25   FLEXIBLE MEMBRANE.  THAT'S WHAT THEY TOLD THE PATENT OFFICE.

1   WE'RE NOW GETTING INTO AN AREA THAT I DIDN'T CREATE.  AGAIN

2   THEY CREATED THIS BY USING THESE TERMS.

3        WE'RE NOW TRYING TO DIG BACK INTO PRIOR ART TO FIGURE

4   OUT WHAT THEY MEANT WHEN THEY TOLD THE OFFICE, AND SUCCESSFULLY

5   TOLD THE PATENT OFFICE, THAT WE'RE DIFFERENT THAN RIGID

6   CONTAINER, OR RIGID CONTAINER IS DIFFERENT THAN SOMETHING WITH

7   A FLEXIBLE COVER.  TO ME, THAT SHOULD BE THE END OF IT, I

8   SHOULD BE ABLE TO ARGUE AND GET SOMEBODY UP HERE TO SAY, WE

9   DON'T HAVE A FLEXIBLE COVER CASE.

10        WHAT I'M HEARING THE COURT SAY IS, WELL, THAT DOESN'T

11   GIVE US QUITE ENOUGH DIRECTION, AND I PREFER WHICH ALLOWS A

12   USER MANIPULATE CONTROLS, WHICH IS WHAT THEY SAID, SO I CAN'T

13   CONTEST THAT.  BUT THEN TO TRY TO, AGAIN, TAKE ANOTHER STEP AND

14   TRY TO REDEFINE MANIPULATE, WE GO DOWN THIS RABBIT HOLE.

15        THE COURT:  MY PROBLEM IS THAT IT'S THE RABBIT HOLE

16   THAT WE'RE GOING TO GET INTO AND DEFINE THINGS AND LATER BE

17   TOLD WE HAVE TO COME BACK AND DEFINE THINGS.  BUT AT THE TIME

18   THE PATENT WAS FILED, THIS CONVERSATION WAS HAD ABOUT THE '722,

19   AND THE STATE OF THE PRIOR ART WAS THEY WERE TALKING ABOUT

20   MANIPULATING ACTUAL MECHANICAL PUSHING AND THE FLEXIBILITY OF

21   THE MATERIAL TO ACTUALLY BE ABLE TO PRESS THROUGH THAT MATERIAL

22   SO THAT COULD YOU CONTROL THE KNOBS OR CONTROL THE DEVICE.

23   LET'S BE A LITTLE BROADER.

24        MR. LEACH:  RIGHT.

25        THE COURT:  AND I DON'T HAVE A PROBLEM WITH SAYING

1    THAT THAT'S WHAT THEY DISCLAIMED.  THEY DISCLAIMED A FLEXIBLE

2    MATERIAL THAT WOULD ALLOW THE USER TO MANIPULATE THE CONTROLS

3    THROUGH THE MATERIAL.

4           MR. LEACH:  OKAY.  I THINK WE'RE FINE THERE.  AND THEN

5    ALSO DISCLAIMED, THE FLEXIBLE MATERIAL THAT WOULD NOT ALLOW YOU

6    TO GO TO CERTAIN DEPTHS WITHOUT ANY FAILURE WITHOUT DEPRESSING

7    THE DEVICE.  BECAUSE YOU CAN STILL HAVE A FLEXIBLE MATERIAL.

8    AS YOU POINT OUT, IT COULD BE A CAPACITY THING.  SO YOU'RE NOT

9    ACTUALLY PUSHING INTO A PHYSICAL BUTTON, BUT THAT MATERIAL MAY

10   BE THIN ENOUGH IF YOU GO DOWN BELOW 10 FEET.

11          ALL OF A SUDDEN YOU DON'T HAVE --

12          THE COURT:  YES, I DON'T THINK YOU CAN WALK AWAY FROM

13   THAT ASPECT OF IT.

14          MR. LEACH:  SO IF WE HAVE BOTH THOSE, I THINK WE'RE

15   FINE, YOUR HONOR.  THE ONLY CONCERN I HAVE WITH THE SECOND PART

16   OF THAT IS, WHAT IS OUR DISTANCE.  IT'S AGAIN THIS KIND OF

17   AMBIGUOUS AQUATIC PRESSURE.  IS IT 10 FEET?  IS IT 20 FEET?  IS

18   IT 30 FEET?  IS IT 400 FEET?  I WILL SUGGEST THAT I BELIEVE

19   THEY'RE TRYING TO ARGUE THAT IT CAN BE AS SHALLOW AS A SWIMMING

20   POOL.

21          THE COURT:  WE'RE GOING TO TALK ABOUT PRESSURES

22   ANOTHER TIME, RIGHT?

23          MR. LEACH:  WE ARE.

24          THE COURT:  I DON'T KNOW THAT WE NEED TO TALK ABOUT

25   THEM TODAY.  IF WE LOOK AT COLUMN 7 WHERE THIS RIGIDNESS IS

1    DISCUSSED, IT HAS TO BE CAPABLE OF WITHSTANDING PRESSURE WHILE

2    SUBMERGED IN AN AQUATIC ENVIRONMENT.  OKAY.  THAT'S WHAT IT

3    SAYS.  AND IT CAN'T INCLUDE A FLEXIBLE MATERIAL THAT WOULD

4    ALLOW THE USER TO MANIPULATE THE CONTROLS THROUGH THE MATERIAL

5    OUTSIDE OF THE CONTAINER.

6          MS. KENNEALLY:  YOUR HONOR, JUST ONE THING THAT I

7    THINK MAY FURTHER THE DISCUSSION ON MANIPULATE.

8          THE COURT:  YES.

9          MS. KENNEALLY:  IN THE SAME FULLER REFERENCE, IT'S

10   COLUMN 3, IT'S LINE 42 TO 45, BUT IT SAYS IN THERE "THE

11   RESILIENCY AND FLEXIBILITY OF THE TOP COVER 30, AS ENHANCED BY

12   THE STRUCTURE OF THE RECESSED POCKETS 46, 48, THEREIN ALLOW A

13   PERSON TO EASILY MANIPULATE AND TURN THE CONTROL KNOBS 84, 86

14   OF THE RADIO AS SHOWN IN FIGURE 4."  SO MANIPULATE AND TURN AND

15   DEFORMABLE, I THINK THOSE ARE CHARACTERISTICS OF THE

16   FLEXIBILITY REQUIRED BY FULLER, WHICH IS WHAT WE HAD

17   DISTINGUISHED BEFORE THE PATENT OFFICE.

18         THE COURT:  WELL, IF WE GO ON AND READ THAT, IT TALKS

19   ABOUT THE PERSON'S FINGER DEPRESSES THE INTERIOR SURFACE OF THE

20   POCKET INTO CONTACT WITH THE CONTROL KNOB AND THEN MOVE

21   LATERALLY TO THE POSITION SHOWN BROKEN LINES.  SO WHEN IT SAYS

22   TURN, IT'S LIKE ON OR OFF.  IT'S NOT LIKE, I'M TURNING

23   SOMETHING, LIKE I'M TWISTING A LID OFF SOMETHING.

24         MS. KENNEALLY:  RIGHT.  AND IF YOU LOOK AT FIGURE 4,

25   YOU CAN SEE THE INDENT, FIGURE 4 OF FULLER, AND COMPARE THAT

1    WITH FIGURE 1.  YOU CAN SEE THAT THE DEFORMABILITY THERE.

2         THE COURT:  I SUPPOSE I'M PUTTING THAT OFF FOR ANOTHER

3    DAY, BUT I THINK THAT THE DISCLAIMER HERE IS THAT THE COVER

4    CAN'T BE -- THE STRUCTURE CANNOT CONTAIN A MATERIAL WITHIN THE

5    STRUCTURE OF THIS CONTAINER THAT WOULD ALLOW A USER TO

6    MANIPULATE THE KNOBS THROUGH THE MATERIAL.  NOW MANIPULATE IN

7    1983 MEANT ONE THING, AND I'M NOT SURE WHETHER MANIPULATE NOW

8    MEANS THE SAME THING AND, THEREFORE, IF YOU CAN SIMPLY JUST

9    SWIPE THROUGH SOMETHING, YES, YOU'RE MANIPULATING, BUT YOU'RE

10   NOT REALLY MANIPULATING AS TO WHAT THEY WERE TALKING ABOUT.

11        MR. LEACH:  WELL, THERE'S LAW ON THAT, YOUR HONOR, AND

12   WHEN WE GET TO THE INFRINGEMENT CASE, WE'LL TALK ABOUT MODERN

13   ADVANCES, HOW THEY SHOULD BE READ, AND I THINK THAT'S PART OF

14   THE INFRINGEMENT ANALYSIS.

15        THE COURT:  BUT THE TWO PARTS OF THIS IS IF YOUR COVER

16   UNDER PRESSURE WOULD START TO DEFORM, THEN IT ISN'T GOING TO

17   MEET RIGID EITHER.

18        MR. LEACH:  RIGHT.  IF WE CAN FIGURE OUT WHAT PRESSURE

19   IS.

20        THE COURT:  NOW WE HAVE TO FIGURE OUT WHAT PRESSURE

21   IS.

22        MR. LEACH:  YEAH.  HAVE WE HAD ENOUGH ON THAT ONE,

23   YOUR HONOR?

24        THE COURT:  I DON'T KNOW?  DID WE?  DO YOU HAVE

25   ANYTHING ELSE YOU WANT TO ADD?

1          MS. KENNEALLY:  I THINK THAT'S EVERYTHING, BUT SOME OF

2     THESE OTHER ISSUES MAY OVERLAP ON THAT, BUT I THINK FOR NOW,

3     THAT'S GOOD.

4          THE COURT:  ALL RIGHT.  WITH REGARD TO "CONTAINER," IS

5     THERE ANY DISAGREEMENT BY THE PARTIES THAT IT HAS TO COMPLETELY

6     ENCLOSE THE DEVICE?

7          MR. LEACH:  THAT'S FINE WITH THE DEFENDANTS, YOUR

8     HONOR.

9          MS. KENNEALLY:  YOUR HONOR, OUR POSITION IS THAT, YOU

10    KNOW, A STRUCTURE THAT ENCLOSES THE ELECTRONIC DEVICE IS ALL

11    THAT'S REQUIRED BY THE PATENT.  I DON'T THINK THERE IS EXPRESS

12    SUPPORT IN THE PATENT FOR "COMPLETELY."  I THINK THERE'S A

13    NUMBER OF DIFFERENT, YOU KNOW, EXAMPLES OF CONTAINERS THAT CAN

14    ENCLOSE AN AUDIO DEVICE.  AND I MEAN, I THINK IMPORT IS

15    COMPLETELY UNSUPPORTED.

16         THE COURT:  HOW CAN IT BE WATERPROOF IF IT DOESN'T

17    COMPLETELY -- IF IT JUST SAYS IT ENCLOSES IT, THEN THAT WOULD

18    INCLUDE SOMETHING THAT'S OPEN AT SOME END.  AND THE VERY

19    LANGUAGE OF THIS CLAIM -- YOU JUST CAN'T PARSE OUT WORDS.  IT

20    HAS TO BE A CONTAINER, SAID CONTAINER IS WATERPROOF.  AND IT

21    CAN'T BE WATERPROOF IF IT'S OPEN SOMEWHERE.

22         MS. KENNEALLY:  AND I THINK OUR POSITION IS THAT THE

23    SEAL IS WHAT CREATES THE WATERPROOF NATURE.

24         THE COURT:  THERE'S NOTHING IN THIS CLAIM THAT SAYS IT

25    HAS TO HAVE A SEAL.

1          MS. KENNEALLY:  THE CLAIM LANGUAGE -- THE FACT THAT

2     WATERPROOF INCORPORATES A SEAL IS INCLUDED IN EVERY QUOTE IN

3     THE PATENT.

4          THE COURT:  NO, IT'S NOT.

5          MS. KENNEALLY:  IT'S REPEATEDLY INCLUDED THROUGHOUT.

6     THE DESCRIPTION OF WATERPROOF IS ALWAYS REFERENCED USING A

7     SEAL.

8          THE COURT:  LET'S JUMP TO "WATERPROOF," BECAUSE I

9     THINK YOU'RE WRONG.  I THINK THAT IF YOU LOOK AT COLUMN 7,

10    STARTING AT LINE 48, IT TALKS ABOUT THE INVENTION EMBODYING A

11    RIGID CONTAINER WITH A REMOVABLE LID FOR EASY REMOVAL OR

12    SERVICE OF THE DEVICE CONTAINED WITHIN.  IN A PREFERRED

13    EMBODIMENT, AT LEAST ONE WATERPROOF SEAL IS POSITIONED BETWEEN

14    THE LID AND THE CONTAINER TO PREVENT ENTRY OF WATER INTO THE

15    CLOSED CONTAINER.

16         THERE ARE OTHER EXAMPLES IN THE PATENT THAT WOULD

17    PRESUMABLY NOT INCLUDE A SEAL, WOULD ALLOW WATER TO COME IN AND

18    BE ABSORBED BY MATERIAL SO THAT IT WOULD STILL PREVENT EXPOSURE

19    OF THE ELECTRONIC DEVICE TO WATER.  IF EVERY ONE OF THEM HAS TO

20    HAVE A SEAL, THEN WHAT'S THAT FIRST EMBODIMENT YOU'RE

21    DISCUSSING?  WHY ARE YOU EVEN ADDING A SEAL?

22         MS. KENNEALLY:  I'M JUST LOOKING BACK.

23         THE COURT:  COLUMN 7, LINE 48, THE LAST COLUMN, FIRST

24    SENTENCE THAT I STARTED AT WHERE IT INTRODUCES THE CONCEPT OF

25    THE SEAL IN A PREFERRED EMBODIMENT.  BUT IT TALKS ABOUT AN

1    EMBODIMENT BEFORE THAT THAT JUST AS HAS A RIGID CONTAINER WITH

2    A REMOVABLE LID THAT CONTAINS THE DEVICE, WHICH WOULD BE IN

3    ACCORDANCE WITH THE FIGURE 7A AND B THAT HAVE THESE LITTLE

4    HILLS AND VALLEYS AND THINGS AND DON'T HAVE ANY REFERENCE TO

5    SEALS.

6            MS. KENNEALLY:  THE TERM "CONTAINER WATERPROOF."

7            THE COURT:  I DON'T KNOW WHAT THE HELL THAT IS.  THAT

8    IS THE MOST TORTURED CONSTRUCTION OF A SENTENCE I'VE EVER SEEN.

9    THE PATENT SAYS IT'S A RIGID CONTAINER ADAPTED TO RECEIVE AN

10   ELECTRONIC AUDIO DEVICE, SAID CONTAINER WATERPROOF.  NOT

11   CONTAINER WATERPROOF.  I DON'T KNOW WHAT THE HELL A CONTAINER

12   WATERPROOF IS.  THE CONTAINER IS WATERPROOF, AND WATERPROOF

13   DOESN'T NECESSARILY, ACCORDING TO THIS PATENT, REQUIRE THERE BE

14   A SEAL.

15           MS. KENNEALLY:  YOUR HONOR, THE WATERPROOF -- IT

16   BECOMES WATERPROOF WITH THE LID AND THE SEAL BETWEEN THE

17   CONTAINER AND THE LID.  AND THAT'S REPEATEDLY REFERRED TO

18   THROUGHOUT THE PATENT, THAT IT'S THE CONTAINER ITSELF WITH THE

19   LID THAT CREATES THE WATERPROOF NATURE OF IT.

20           NOW WHETHER IT'S REMOVABLE OR IT'S AN ATTACHED LID, I

21   THINK THOSE ARE THINGS THAT ARE DISPUTED.  THE CONTAINER

22   BECOMES WATERPROOF -- I MEAN, HOW COULD YOU SAY THE CONTAINER

23   IS WATERPROOF AT ALL TIMES IF YOU HAVE TO OPEN THE CONTAINER TO

24   PUT THE DEVICE INTO THE CONTAINER?  WHEN YOU OPEN THE DEVICE,

25   THEN YOU HAVE AN OPENING ON THAT CONTAINER.  I MEAN, THAT'S THE

1    CONTAINER THAT IS REFERRED TO.

2          SO OUR UNDERSTANDING AS THIS TERM IS USED THROUGHOUT

3    AND HOW WATERPROOF IS DESCRIBED THROUGHOUT, YOU KNOW, IN THE

4    BACKGROUND OF THE INVENTION, IN THE SUMMARY OF THE INVENTION,

5    REPEATEDLY THROUGHOUT THE SPECIFICATION, AND THOSE ARE THINGS

6    THAT WE PLANNED TO POINT OUT TO YOU.

7          IF YOU WANT TO HEAR "WATERPROOF" RIGHT NOW, THEN, YOU

8    KNOW, I'M HAPPY TO POINT THAT OUT NOW.  BUT OUR POSITION IS

9    THAT THE LID WITH THE CONTAINER CREATES THE SEAL.  THAT IS WHAT

10   CREATES THE WATERPROOF NATURE OF THE CONTAINER.

11         THE COURT:  THE CONTAINER WHICH IS THE STRUCTURE THAT

12   IS HOLDING THE ELECTRONIC AUDIO DEVICE IS ADAPTED TO RECEIVE

13   IT, WHICH MEANS IT HAS TO OPEN SOMEWHERE SO THAT IT CAN RECEIVE

14   IT.

15         MS. KENNEALLY:  UM-HMM.

16         THE COURT:  AND IT'S WATERPROOF.  AND IF WATERPROOF

17   REQUIRES THE SEAL, THEN WHAT HAPPENS WITH THE EMBODIMENTS THAT

18   DON'T HAVE SEALS THAT TALK ABOUT THE HOUSING HAVING A SURFACE

19   THAT HAS A WATER ABSORBING LINING OR HAS SPONGES OR FOAMS OR

20   POWDERS OR OTHER THINGS TO ABSORB WATER SO IF IT GETS INSIDE

21   THE CONTAINER, IT IS STILL PROTECTING THE ELECTRONIC DEVICE

22   BEING EXPOSED TO WATER, WHICH I THINK IS WHAT WE'RE TALKING

23   ABOUT.  WATERPROOF MEANS THE ELECTRONIC DEVICE IS NOT GOING TO

24   BE EXPOSED TO WATER WHETHER THE WATER GETS INSIDE THE CONTAINER

25   OR NOT.

1          NOW THE PREFERRED EMBODIMENT WOULD BE TO USE A SEAL,

2    SO NO WATER EVER GETS INSIDE.  I THINK THAT MAKES SENSE.  BUT

3    IT'S NOT THE ONLY EMBODIMENT DESCRIBED IN THE PATENT.  I DON'T

4    THINK THIS CLAIM, BECAUSE IT MAKES NO REFERENCE TO SEALS, IS

5    LIMITED TO JUST CONTAINERS THAT HAVE SEALS.

6          MS. KENNEALLY:  YOUR HONOR, THE ADDITIONAL COMPONENTS

7    THAT YOU REFER TO ARE COMPONENTS THAT -- ARE COMPONENTS TO

8    REDUCE DAMAGE TO THE DEVICE IF A LEAK OCCURS.  THEY'RE NOT

9    DESCRIBED IN A WAY THAT CREATES THE WATERPROOF NATURE OF THE

10   CONTAINER.  THEY'RE ADDITIONAL COMPONENTS.  THEY'RE NOT MEANT

11   TO REPLACE THE SEAL.  THEY'RE SOMETHING IN ADDITION TO THE

12   SEAL.  AND THAT'S AT COLUMN 3, LINE 57.

13         YOUR HONOR, I'LL POINT YOU, IN FACT, TO COLUMN 8

14   FIRST, COLUMN 8, LINE 64.

15         THE COURT:  COLUMN 8?

16         MS. KENNEALLY:  COLUMN 8, CORRECT, YOUR HONOR.  I

17   APOLOGIZE.

18         THE COURT:  OKAY.

19         MS. KENNEALLY:  COLUMN 8, LINE 64.  SOME EMBODIMENTS

20   OF THE DEVICE OF THE PRESENT INVENTION COMPRISE OF ONE OR MORE

21   COMPONENTS THAT PREVENT WATER FROM BREACHING AND DAMAGING THE

22   AUDIO DEVICE.  SUCH COMPONENTS MAY ACT AS --

23         THE COURT:  YOU CAN'T READ THAT FAST IF YOU WANT TO

24   HAVE A RECORD OF WHAT YOU'RE SAYING.

25         MS. KENNEALLY:  OKAY.  I'LL SLOW DOWN.  "SOME

1    COMPONENTS MAY ACT TO PREVENT LEAKAGE OCCURRING OR TO REDUCE"--

2    NOW I'M MOVING ON TO COLUMN 9, LINE 1 -- "DAMAGE OF WATER

3    SHOULD A LEAK OCCUR.  SUCH COMPONENTS MAY INCLUDE EXTERNAL

4    SHOCK ABSORBING STRUCTURES, PRESSURE RELEASE VALVES, SEALS,

5    INTERNAL WALLS CREATING WATERPROOF COMPARTMENTS OR CHAMBERS,

6    AND WATER-ABSORBING MATERIALS WITHIN THE CONTAINER."

7         AND THEN GOING BACK TO COLUMN 3, WHICH IS WHERE I

8    POINTED YOU TO FIRST, I WAS KIND OF JUMPING AROUND A BIT, UNDER

9    THE SUMMARY OF THE INVENTION, WHERE IT TALKS ABOUT IN DIFFERENT

10   PREFERRED EMBODIMENTS, YOU KNOW, ONE REQUIRES A REMOVABLE LID

11   FOR EASY REMOVAL OR SERVICE OF THE DEVICE CONTAINED WITHIN.

12   AND ANOTHER PREFERRED EMBODIMENT, A WATERPROOF SEAL IS

13   POSITIONED BETWEEN THE LID AND THE CONTAINER TO PREVENT ENTRY

14   OF WATER.

15        AND IT GOES ON TO SAY RIGHT ON COLUMN 3, LINE 57, "THE

16   INVENTION FURTHER COMPRISES COMPONENTS WHICH PREVENT WATER FROM

17   REACHING AND DAMAGING THE DEVICE," INCLUDING SOME OF THOSE

18   OTHER COMPONENTS THAT YOUR HONOR WAS REFERRING TO.  OUR

19   POSITION AND OUR UNDERSTANDING OF THE PATENT IS THOSE ARE ONLY

20   ADDITIONAL COMPONENTS THAT REDUCE DAMAGE ONCE A LEAK OCCURS,

21   BUT THEY AREN'T WHAT'S CREATING THE WATERPROOF NATURE OF THE

22   CONTAINER.

23        THE COURT:  I STILL NEED FOR YOU TO EXPLAIN TO ME WHAT

24   THE FIRST SENTENCE OF COLUMN 7 AT LINE 48 MEANS THEN.

25        MS. KENNEALLY:  WELL, THE INVENTION -- I'M READING

1    WHERE YOU POINTED ME TO, YOUR HONOR.  THE INVENTION FURTHER

2    EMBODIES "PROVIDING A RIGID CONTAINER WITHIN A REMOVABLE LID

3    FOR EASY REMOVAL OR SERVICE OF THE DEVICE CONTAINED WITHIN."  I

4    THINK THAT'S A DESCRIPTION OF THE CONTAINER.  AND IT SAYS "IN A

5    PREFERRED EMBODIMENT, AT LEAST ONE SEAL IS POSITIONED BETWEEN

6    THE LID AND THE CONTAINER TO PREVENT ENTRY OF WATER INTO THE

7    CLOSED CONTAINER."

8         THE COURT:  RIGHT.  SO IN EVERY EMBODIMENT, YOU HAVE

9    TO HAVE A SEAL, EVEN THOUGH IT SAYS "IN A PREFERRED

10   EMBODIMENT"?  I'M NOT IMPORTING A LIMITATION IN YOUR OPINION

11   INTO CLAIM 1 BY REQUIRING THAT THE CONTAINER IN CLAIM 1 HAVE A

12   SEAL TO ENABLE IT TO BE WATERPROOF.

13        MS. KENNEALLY:  THE PREFERRED EMBODIMENT THERE

14   DISCUSSES WHERE THE SEAL IS POSITIONED BETWEEN THE LID AND THE

15   CONTAINER.  THAT'S THE PREFERRED EMBODIMENT.  IT DOESN'T REJECT

16   THE IDEA THAT THE SEAL COULD BE PLACED IN OTHER POSITIONS.  SO

17   I DON'T THINK THAT EXCLUDES THAT THE SEAL IS WHAT IS CREATING

18   THE WATERPROOF NATURE.  I THINK THAT SENTENCE THAT YOU POINTED

19   US TO DESCRIBES THE CONTAINER, AND THEN IT TALKS ABOUT THE

20   WATERPROOF NATURE OF IT AND WHERE THE SEAL CAN BE POSITIONED.

21        THE COURT:  WHERE ELSE -- IF YOU DON'T HAVE A SEAL

22   BETWEEN THE LID AND THE TOP, YOU HAVE IT SOMEWHERE ELSE, WHAT

23   GOOD IS IT DOING THEN IF YOUR POSITION IS YOU NEED A SEAL TO

24   MAKE IT WATERPROOF?

25        MS. KENNEALLY:  I THINK IN ONE OF THE ACCUSED

1   PRODUCTS, THERE ARE TWO SEALS.

2          THE COURT:  I DON'T CARE ABOUT THE ACCUSED PRODUCTS.

3   I'M TALKING ABOUT THE PATENT.

4          MS. KENNEALLY:  JUST AN EXAMPLE OF WHERE THE OTHER

5   SEAL COULD BE IS WHY I BROUGHT THAT UP.  ONE SEAL COULD BE

6   BETWEEN, YOU KNOW, THE FACE OF THE DEVICE AND THE RIM OF THE

7   LID.

8          THE COURT:  WELL, THE LID HERE HAS TO BE -- THE SEAL

9   HAS TO BE BETWEEN THE LID AND THE CONTAINER.  AND SO I'M NOT

10  QUITE -- IF YOU'RE DEFINING WATERPROOF, THAT WATERPROOF

11  REQUIRES THAT TO PREVENT EXPOSURE TO WATER, IT HAS TO HAVE A

12  SEAL, AT LEAST ONE WATERPROOF SEAL, THEN I'M STILL A LITTLE

13  CONFUSED THAT NONE OF THESE STRUCTURES COULD EVER MEET THIS.

14  IF SOMEBODY MADE A WHOLE THING OUT OF RUBBER SO THAT WHEN YOU

15  ENCLOSED IT, IT JUST DIDN'T LEAK, IT WOULD HAVE NO SEAL, IT

16  WOULDN'T FALL WITHIN THE SCOPE OF THIS PATENT BECAUSE THAT'S

17  NOT WATERPROOF?

18         MS. KENNEALLY:  SAY THAT AGAIN, YOUR HONOR.

19         THE COURT:  IF SOMEONE COULD MAKE A STRUCTURE THAT HAD

20  NO SEAL, ONCE IT WAS CLOSED, IT DOESN'T LEAK BECAUSE OF THE

21  MATERIALS THEY USED, THEN IT WOULDN'T FALL WITHIN THE SCOPE OF

22  CLAIM 1 BECAUSE YOU SAY CLAIM 1, THE WORD "WATERPROOF" REQUIRES

23  THAT THE DEVICE HAVE A SEAL.

24         MS. KENNEALLY:  I DON'T THINK IT WOULD BECAUSE THERE

25  WOULD BE NO WAY TO GET THE DEVICE INTO THE CONTAINER THAT YOU

1    DESCRIBED.

2         THE COURT:  SURE.  YOU COULD OPEN IT AND YOU COULD

3    CLOSE IT, AND WHEN IT CLOSES, IT DOESN'T LEEK.

4         MS. KENNEALLY:  IN THAT HYPOTHETICAL IN OUR PROPOSED

5    CONSTRUCTION, THAT WOULDN'T INFRINGE.

6         THE COURT:  I KNOW YOU OBVIOUSLY DISAGREE THAT A SEAL

7    IS PART OF THE DEFINITION OF WATERPROOF.

8         MR. LEACH:  DO YOU WANT A BRIEF ...?

9         THE COURT:  YES, GO AHEAD.

10        MR. LEACH:  I'LL TRY TO BE MOVE FAIRLY QUICKLY ON

11   THIS, YOUR HONOR.  SO FIRST OF ALL, I THINK WE ARE IN AGREEMENT

12   WITH THE COURT'S CONSTRUCTION FOR WATERPROOF.  WE WEREN'T SURE

13   IT REALLY NEEDED A CONSTRUCTION.  I THINK PEOPLE UNDERSTAND

14   WHAT WATERPROOF IS.  BUT TO PREVENT -- I THINK, AS THE COURT

15   SAYS IN ITS EXPLANATION, MAYBE IT'S BETTER TO PREVENT THE

16   ELECTRONIC DEVICE FROM EXPOSURE TO WATER, JUST SO THAT IT'S

17   CLEAR, OR PLAIN AND ORDINARY MEANING.

18        OUR FIRST POINT IS THEY DO USE THE WORD "WATERPROOF"

19   AND "SEAL" SEVERAL PLACES IN THE PATENT.  I DON'T THINK THAT

20   SUPPORTS THEIR POSITION.  I THINK IT SUPPORTS THE POSITION THAT

21   WATERPROOF IS AN ADJECTIVE DESCRIBING THE NOUN SEAL, JUST LIKE

22   IT ALSO DESCRIBES OTHER NOUNS, SUCH AS A WATERPROOF CABLE, OR A

23   WATERPROOF HOUSING OR A WATERPROOF ENCLOSURE.  WATERPROOF WHEN

24   YOU LOOK AT THE WAY IT'S USED THROUGHOUT THIS PATENT, IT'S USED

25   AS AN ADJECTIVE.  THINGS CAN BE WATERPROOF, INCLUDING A SEAL.

1          I THINK THE BIGGEST THING WHERE THIS ARGUMENT KIND OF

2     FALLS FLAT FOR THEM, AND THERE IS CASE LAW THAT SAYS WHEN YOU

3     CONSTRUE A TERM, EVEN A NONASSERTED CLAIM, IT BECOMES

4     NONSENSICAL BY THE CONSTRUCTION, THE PRESUMPTION THAT IS NOT

5     THE PRECISE CONSTRUCTION.  CLAIM 16 SPECIFICALLY CLAIMS THE

6     PREFERRED EMBODIMENT "WHEREIN A SEAL BETWEEN SAID CONTAINER AND

7     SAID LID IS CONFIGURED TO BE WATERPROOF."

8          NOW LET'S FOLLOW THEIR CONSTRUCTION.  NOW YOU HAVE

9     "WHEREIN A SEAL BETWEEN SAID CONTAINER AND SAID LID IS

10    CONFIGURED TO BE HAVING AT LAST ONE SEAL TO PREVENT ENTRY OF

11    WATER."  NOW YOU HAVE A SEAL CONFIGURED TO HAVE A SEAL.  SO

12    AGAIN, CASE LAWS SAYS YOU SHOULD NOT CONSTRUE TERMS TO MAKE

13    EVEN UNASSERTED CLAIMS NONSENSICAL.

14         FINALLY, I UNDERSTAND THIS IS INTRINSIC EVIDENCE BUT

15    STILL THOUGHT IT WAS TELLING WHEN I HAD THE OPPORTUNITY TO

16    DEPOSE ONE OF THE INVENTORS IN THIS CASE OF THE '032 PATENT,

17    AND I HAD THE BENEFIT OF HAVING THEIR CONSTRUCTION AT THE TIME,

18    AND I ASKED:

19         "DO YOU RECALL, AT THE TIME THAT YOU WERE WORKING AT

20    X-1 AUDIO, HAVING ANY SPECIAL MEANING FOR THE TERM

21    'WATERPROOF'?"

22         "NO, I CAN'T REMEMBER SPECIFICALLY."

23         "WHEN YOU WERE WORKING AT X-1 AUDIO, DID YOU INTEND

24    FOR THE TERM "WATERPROOF" TO MEAN HAVING AT LEAST ONE SEAL TO

25    PREVENT THE ENTRY OF WATER?"

1          "NO, THAT WOULD BE TOO LIMITING.  I THINK IT COULD

2    MEAN DIFFERENT THINGS."

3          AND I THINK THAT'S PRETTY OBVIOUS, YOUR HONOR, I MEAN,

4    IN MY HUMBLE OPINION.  SO UNLESS THERE ARE ANY QUESTIONS, I

5    HAVE NOTHING FURTHER ON THIS TERM.

6          THE COURT:  NO, THANK YOU.

7          MS. KENNEALLY:  YOUR HONOR, I JUST HAVE A COUPLE OF

8    THINGS.

9          THE COURT:  SURE.  GO AHEAD.

10         MS. KENNEALLY:  YOUR HONOR, ONE OF THE THINGS THAT

11   MR. LEACH HAS SAID IS THAT, YOU KNOW, THEY'RE FINE WITH THE

12   COURT'S PROPOSED CONSTRUCTION OF "TO PREVENT THE EXPOSURE TO

13   WATER," AND ALSO THAT IT COULD ALSO BE THE PLAIN AND ORDINARY

14   MEANING.  NOW THIS -- A LARGE PART OF THIS DISPUTE CAME UP

15   BECAUSE THE POSITION THAT THE DEFENDANTS ARE TAKING IS THAT,

16   YOU KNOW, THEIR PRODUCTS AREN'T WATERPROOF DESPITE EXPRESS

17   ADVERTISING AND MARKETING TO THE CONTRARY.

18         SO THIS CAME UP EARLY ON IN THIS CASE.  OUR BELIEF WAS

19   THAT THEY MUST THINK THAT "WATERPROOF" HAS A SPECIAL MEANING IN

20   THE '032 PATENT BECAUSE THEY'RE TAKING THE POSITION THAT EVEN

21   THOUGH THEY'RE CLAIMING THAT THE ACCUSED PRODUCTS ARE ALL

22   WATERPROOF, SOMEHOW THEY AREN'T WATERPROOF IN THE CONTEXT OF

23   THE '032 PATENT.  WELL, WHEN GIVEN THE OPPORTUNITY TO COME

24   FORWARD WITH WHAT THEIR PROPOSED CONSTRUCTION FOR THAT TERM

25   WAS, THEY CAME BACK AND SAID, IT'S THE PLAIN AND ORDINARY

1    MEANING.

2            WE WENT AND PROPOSED CONSTRUCTION BASED ON HOW WE

3    UNDERSTOOD WHAT THE TERM MEANS IN THE CONTEXT OF THE PATENT.  I

4    ARTICULATED SOME OF THIS, BUT THE BACKGROUND OF THE INVENTION

5    DESCRIBES -- THE DISCLOSURE PROVIDES, AND THIS IS AT COLUMN 1,

6    LINES 35 TO 39.  THE DISCLOSURE PROVIDES A SYSTEM THAT

7    FUNCTIONS WHILE BEING SUBMERGED DUE TO THE MAINTENANCE OF A

8    WATERPROOF SEAL AGAINST AQUATIC PRESSURES.

9            THE SUMMARY OF THE INVENTION DESCRIBES, YOU KNOW, IN

10   ANOTHER PREFERRED EMBODIMENT A WATERPROOF SEAL IS POSITIONED

11   BETWEEN THE LID AND THE CONTAINER TO PREVENT ENTRY OF WATER

12   INTO THE CLOSED CONTAINER.

13           AND THE SPECIFICATION OF THE PATENT, YOU KNOW, FURTHER

14   PROVIDES IN THE PREFERRED EMBODIMENT AT LEAST ONE SEAL IS

15   POSITIONED BETWEEN THE LID AND THE CONTAINER TO PREVENT ENTRY

16   OF WATER INTO THE CLOSED CONTAINER AND THAT ONE OF SKILL IN THE

17   ART IS AWARE OF MULTIPLE WAYS OF PROVIDING A WATERPROOF SEAL

18   BETWEEN A LID AND A CONTAINER."  YOU KNOW, AND IT GOES ON TO

19   SAY "WITHOUT INTENT TO LIMIT THE SCOPE OF THE INVENTION

20   DISCLOSED HEREIN, SUCH SEALS MAY CONSIST OF ONE OR MORE OF THE

21   FOLLOWING, AN O-RING, RUBBER LINING, OR SILICONE BASED GEL.

22           THE SPECIFICATION FURTHER PROVIDES THAT THE INVENTION

23   EMBODIES THE USE OF COMPONENTS TO SECURE THE LID TO THE

24   CONTAINER AND TO CLOSE THE SEAL BETWEEN THE LID AND THE

25   CONTAINER.  AND IT DESCRIBES HOW SUCH SEALS ARE CREATED WITH

1   THE USE OF O-RINGS TO BE COMPRESSED ON THE PERIMETER OF THE TOP

2   OF THE CONTAINER BOX.

3           THE PATENT ALSO POINTS TO OTHER USES OF WATERPROOF

4   THAT ARE CONSISTENT WITH THE USE OF A SEAL THAT AREN'T

5   DESCRIBING THE WATERPROOF CONTAINER.  FOR EXAMPLE, COLUMN 11,

6   LINE 40.  I'M SORRY, IT'S COLUMN 13, LINE 40.  IT TALKS ABOUT A

7   HYDROSTATIC SEAL.  AND THIS IS TALKING ABOUT, YOU KNOW, A

8   WATERPROOF JUNCTURE.  IT SAYS THAT "THE PHOTOSTATIC SEAL IS

9   ESTABLISHED AND PROVIDES FOR A PRESSURE RESISTENT AND

10  WATERPROOF JUNCTURE BETWEEN THE MALE AND FEMALE ADAPTERS."  AND

11  THAT'S COLUMN 13, LINE 43 TO -- OR I GUESS, THAT'S 48 TO 51.

12          AND IT GOES ON TO TALK ABOUT SPEAKERS.  AND COLUMN 16,

13  YOU KNOW, THE HOUSING -- THE SPEAKER HOUSING IT'S DISCUSSING.

14  THIS IS COLUMN 16, AND IT SAYS "THE HOUSING MAY ALSO INCLUDE

15  O-RINGS TO ENSURE THAT THE HOUSING REMAINS WATERPROOF."  AND

16  O-RINGS WERE A SPECIFIC EXAMPLE OF THE TYPE OF SEALS THAT COULD

17  BE USED.

18          AND LASTLY, IT TALKS ABOUT VARIOUS CABLES THAT ALSO

19  INCORPORATE A SEAL.

20          THE COURT:  LET'S TALK ABOUT FIGURE 8.  AND IT'S IN

21  THE PATENT AT COLUMN 11, LINES -- WELL, THE SPECIFIC PART I'M

22  CONCERNED ABOUT STARTS AT LINE 36.  FIGURE 8 IS YOUR

23  ROUND-SHAPED HOUSING AND THE ROUND CONTAINER MAY HAVE A

24  THREADED SURFACE TO ENGAGE A THREADED SURFACE ON THE LID.  SO

25  BASICALLY IT LOOKS LIKE A JAR.

1       THERE IS NO DISCUSSION IN THE EMBODIMENT OF FIGURE 8,

2   WHICH IS A WATERPROOF CONTAINER, ABOUT SEALS.  YOU'RE GOING TO

3   SCREW THE COVER ON, AND THAT'S GOING TO CREATE THE WATERPROOF

4   NATURE OF THE EMBODIMENT.  KIND OF REVERSE OF A JAR THAT KEEPS

5   WATER IN, THIS IS GOING TO KEEP WATER OUT.

6       MS. KENNEALLY:  IT SAYS IN COLUMN 11 "IN SOME

7   EMBODIMENTS THE COMPONENTS ARE WATERPROOF AND ARE CAPABLE OF

8   WITHSTANDING PRESSURE ENCOUNTERED WHILE SCUBA DIVING BASED ON

9   THE PATENT'S OTHER USE.

10       THE COURT:  NO, I MEANT WITH FIGURES 8A THROUGH C, AN

11   EMBODIMENT OF THE HOUSING IS SHOWN HAVING A ROUND SHAPE AS

12   OPPOSED TO A RECTANGULAR SHAPE OF THE HOUSING SHOWN IN FIGURE

13   1, WHICH THROWS OUT, BY THE WAY, YOUR CONSTRUCTION OF THE

14   STRUCTURE, BUT WHATEVER.  "IN SOME EMBODIMENTS, THE ROUND

15   CONTAINER, 800, MAY HAVE A THREADED SURFACE, 804, TO ENGAGE A

16   THREADED SURFACE, 805, ON THE LID, 802.  THIS EMBODIMENT ALLOWS

17   FOR THE STORAGE OF AN AUDIO DEVICE, 806, INSIDE THE CONTAINER,

18   800, AND THE LID, 802, WITHOUT THE NEED FOR EXTERNAL LATCHES

19   AND BUCKLES."  NOTHING IN THERE ABOUT SEALS.

20       MS. KENNEALLY:  THE NEXT PARAGRAPH RECEIVES TO -- IT

21   DOESN'T EXPRESSLY REFER TO WATERPROOF, BUT BASED ON THE PATENTS

22   OTHER USE AND DESCRIPTION OF WATERPROOF, WE THINK THAT IT

23   INCORPORATES A SEAL.

24       THE COURT:  THE NEXT PARAGRAPH HAS NOTHING TO DO WITH

25   FIGURE 8.  IT'S GOING ON TO TALK ABOUT SOME EMBODIMENTS.  I'M

1    TALKING ABOUT 8.  AND I DON'T SEE ANYWHERE IN 8, WHICH IS

2    DISCLOSED IN THIS PATENT AND AS IT'S DESCRIBED, THAT A PERSON

3    OF SKILL IN THE ART WOULD UNDERSTAND THAT TO BE WATERPROOF, THE

4    DEVICE, THE STRUCTURE, THE HOUSING, THE CONTAINER HAS TO HAVE A

5    SEAL.  IT COULD HAVE A SCREW TOP, A THREADED SURFACE WHICH

6    WOULD EFFECTIVELY KEEP WATER OUT.  AND THEN IN CASE IT LEAKED,

7    YOU MIGHT HAVE THOSE OTHER COMPONENTS INSIDE JUST TO MAKE SURE

8    IN CASE OF LEAKAGE, THE DEVICE WOULD HAVE ADDITIONAL

9    PROTECTION.

10          I THINK YOUR PREFERRED EMBODIMENT, WHICH WOULD BE THE

11   MOST PRACTICAL WAY PEOPLE WOULD APPLY IT, WOULD BE TO HAVE A

12   SEAL.  I DON'T CONTEST THAT, BUT IT'S AN UNNECESSARY LIMITATION

13   FOR ME TO IMPORT INTO THE CLAIM TO SAY THAT "WATERPROOF"

14   REQUIRES THAT THERE BE A SEAL BETWEEN THE OPENING AND THE

15   CONTAINER.  THERE ARE OTHER WAYS OF DOING IT THAT ARE DISCLOSED

16   IN THE PATENT THAT DON'T INCORPORATE THE USE OF A SEAL.

17          SO THE COURT IS NOT GOING TO IMPORT THAT LIMITATION,

18   UNLESS YOU CAN SHOW ME SOMEWHERE IN THE PATENT, WHEN WE RECESS,

19   WHICH WE'RE GOING TO DO RIGHT NOW, THAT 8 ALSO DISCLOSES THAT

20   THERE HAS TO BE A SEAL, BECAUSE IT DOESN'T SAY THAT.  IT SAYS

21   IT'S A THREADED SURFACE.  AND I THINK THAT IT IS AN OVERREAD OF

22   "WATERPROOF" TO BE ANYTHING MORE THEN PREVENTING EXPOSURE OF

23   WATER TO THE ELECTRONIC DEVICE.

24          MS. KENNEALLY:  THE DESCRIPTION OF 8 HERE, YOUR HONOR,

25   IS DESCRIBING THE SHAPE AND IS NOT NECESSARILY, YOU KNOW,

1    EXPRESSLY REFERRING TO THE WATERPROOF NATURE OF THE CONTAINER

2    AS USED IN THE CLAIMS.  I THINK YOUR HONOR CORRECTLY POINTS

3    THAT OUT.  OUR UNDERSTANDING IS THAT "WATERPROOF" AS USED

4    THROUGHOUT THE PATENT CONTINUALLY AND REPEATEDLY REFERS TO THE

5    USE OF A SEAL.

6          SO THIS DESCRIPTION, WHICH IS IDENTIFYING AN

7    ALTERNATIVE SHAPE THAT CAN BE USED AND SOME OTHER

8    CHARACTERISTICS OF THE CONTAINER ISN'T FOCUSED ON THE

9    WATERPROOF NATURE OF THAT.  BUT YOU'RE CORRECT, RIGHT HERE, IT

10   DOESN'T USE THE WORD "WATERPROOF" IN THIS PARTICULAR PARAGRAPH.

11         THE COURT:  WHY DON'T WE TAKE A COUPLE MINUTES.  WHILE

12   WE'RE DOING THAT, I'M GOING TO TRY IT GIVE YOU A WRITTEN COPY

13   OF "RIGID CONTAINER" SO THAT WE CAN LEAVE ALL ON THE SAME PAGE.

14   I DON'T NECESSARILY WANT TO GO BACK AND REVISIT IT, BUT I WANT

15   TO COLLECT MY THOUGHTS ON THAT BEFORE WE MOVE ON MUCH FARTHER.

16         "WATERPROOF" WILL BE CONSTRUED AS TO PREVENT THE

17   EXPOSURE TO WATER OF THE ELECTRONIC DEVICE.

18         AND WHEN WE COME BACK, WE'LL TALK ABOUT "ADAPTED TO."

19   I AM PERSUADED BY THE DEFENDANTS' ARGUMENT THAT IN THE CONTEXT

20   OF THIS PATENT, THE NARROW CONSTRUCTION THAT IN THE DRAFTING OF

21   "ADAPTED TO" REQUIRES THAT IT BE AN INTENTIONAL ACT, AN

22   AFFIRMATIVE ACT, IT'S NOT JUST THAT COULD BE CAPABLE OF IT.

23   I'M NOT SURE YOU WERE EVER MAKING THAT ARGUMENT AND WHETHER THE

24   WHOLE THING WAS JUST A STRAW DOG, BUT TO THE EXTENT YOU HAVE A

25   DISAGREEMENT THAT "ADAPTED TO" MEANS CAPABLE OF AS OPPOSED TO

1    MADE OR DESIGNED TO, WE'LL PICK UP WITH THAT.  ALL RIGHT.

2    WE'LL TAKE 10 MINUTES.

3         (COURT IN RECESS AT 11:08 A.M.)

4         (CALL TO ORDER OF THE COURT AT 11:20 A.M.)

5         THE COURT:  OKAY.  WE'RE BACK FROM THE BREAK, AND I

6    HAVE HANDED TO COUNSEL WHAT THE COURT'S NOTES REFLECT WERE THE

7    CONSTRUCTIONS THAT I SETTLED ON FOR "RIGID CONTAINER" AND

8    "WATERPROOF" AND ANTICIPATING "ADAPTED TO" WILL BE AS WE

9    DISCUSSED.  BUT OTHER THAN THE FACT THAT YOU MAY DISAGREE WITH

10   THE CONSTRUCTION, DOES ANYONE HAVE ANY ISSUES THAT THAT DOESN'T

11   REFLECT WHAT I SAID?

12        MR. LEACH:  NOT FROM THE DEFENDANTS, YOUR HONOR.

13        THE COURT:  OKAY.  THANK YOU.

14        MS. KENNEALLY:  NO, YOUR HONOR.

15        THE COURT:  AND IF YOU HAVE AN OBJECTION NOW, PLEASE

16   ON THE RECORD NOW, YOU FORMALLY RESERVE YOUR OBJECTION TO THE

17   CLAIM CONSTRUCTION, SO YOU DON'T WAIVE LIKE YOU ACCEPTED IT,

18   DOES ANYONE HAVE ANY OBJECTION TO THOSE CLAIMS CONSTRUCTIONS

19   FOR THE FIRST TWO?

20        MR. LEACH:  NO OBJECTION FROM DEFENDANTS, YOUR HONOR.

21        THE COURT:  ANY OBJECTION?  I THINK THE PLAINTIFF IS

22   GOING TO OBJECT TO "WATERPROOF."

23        MS. KENNEALLY:  CORRECT, YOUR HONOR, FOR MANY OF THE

24   REASONS THAT WERE DISCUSSED EARLIER.

25        THE COURT:  YOUR OBJECTION IS NOTED AND RESERVED ON

1    THE COURT'S CONSTRUCTION OF "WATERPROOF."

2              MS. KENNEALLY:  THANK YOU.

3              THE COURT:  ALL RIGHT.  WITH "ADAPTED TO," ARE WE GOOD

4    ON "ADAPTED TO"?

5              MS. SZPONDOWSKI:  YOUR HONOR, I JUST WANT TO SAY A

6    COUPLE OF THINGS.  WE DO THINK THE CONSTRUCTION YOUR HONOR

7    PROPOSED IS BETTER THAN JUST SIMPLY "DESIGNED TO," BUT I WANT

8    TO POINT OUT "ADAPTED TO" IS USED IN THE CLAIMS IN A FEW

9    DIFFERENT WAYS.  IT'S NOT JUST USED WITH RESPECT TO ONE

10   LIMITATION AND THE "DESIGN TO."  SO THE ISSUE IS, HOW BROAD IS

11   "ADAPTED TO"?  SO WE HAVE A RANGE, WE HAVE "DESIGNED TO," I

12   THINK WE HAVE "ADAPTED TO," AND "CAPABLE OF "IS PROBABLY REALLY

13   THE MOST BROADEST TYPE OF LANGUAGE.

14              AND THE WORDS "DESIGNED TO" ARE USED IN THE PATENT

15   WITH RESPECT TO THE RIGID CONTAINER ADAPTED TO RECEIVE THE

16   ELECTRONIC AUDIO DEVICE.  IT'S NOT USED WITH RESPECT TO SOME OF

17   THE OTHER LIMITATIONS.  AND I JUST WANT -- SO WITH RESPECT TO

18   THE CONTROL DEVICES, THOSE ARE DESCRIBED AS SUITABLE FOR

19   MANIPULATING THE DEVICE, AND THE SUITABLE FOR LANGUAGE IS

20   CONSISTENT WITH THE DICTIONARY DEFINITION OF "ADAPTED TO," AND

21   THEN THE MORE BROADER EVEN LANGUAGE "CAPABLE OF" IS USED ALSO

22   WITH RESPECT TO SOME OF THESE LIMITATIONS.  BUT THEN THE

23   PATENTEE USED THE TERMINOLOGY ADAPTED TO IN THE ACTUAL CLAIM

24   LANGUAGE.  WHAT IS KIND OF INTERESTING IS IN THE CLAIMS, THE

25   PATENTEE USED "CONFIGURED TO," "ADAPTED TO," AND "CAPABLE OF"

1  WHICH WOULD INDICATE THAT THEY BELIEVE THAT THOSE HAVE

2  DIFFERENT MEANINGS.  AND AS I MENTIONED BEFORE, "DESIGNED TO"

3  IS USED ONLY IN THE SPECIFICATION WITH RESPECT TO THE CONTAINER

4  UNIT FIT OF THE ELECTRONIC DEVICE.

5       SO WE WOULD SUBMIT THAT "DESIGNED TO" IS TOO NARROW

6  WITH RESPECT TO AT LEAST ALL OF THE LIMITATIONS THAT DON'T DEAL

7  WITH THE CONTAINER UNIT.  WE DON'T THINK IT'S AS BROAD AS

8  "CAPABLE OF" BECAUSE THAT WASN'T THE LANGUAGE THAT THE PATENTEE

9  CHOSE TO USE FOR THOSE TERMS.  CLEARLY THE PATENTEE KNEW HOW

10  USE "CAPABLE OF," BUT WE THINK IT'S SOMEWHERE IN BETWEEN

11  "DESIGNED TO" AND "CAPABLE OF" WHICH IS "ADAPTED TO."

12       THE COURT:  "ADAPTED TO" THE WAY I UNDERSTAND IT FROM

13  FEDERAL CIRCUIT CASE LAW HERE IS IT'S A TERM OF ART IN DRAFTING

14  AND SO IT DOESN'T HAVE LIKE A SEPARATE MEANING.  IT CAN BE

15  DRAFTED TO MEAN A BROADER "CAPABLE OF," A PAPER CLIP CAN BE

16  CAPABLE OF BEING USED TO OPEN A DOOR IF YOU PROPERLY SQUISH IT.

17  OR IT'S A DELIBERATE ACTION THAT IS MEANT TO ACHIEVE A GOAL.

18       AND IT APPEARS TO THE COURT CONSISTENT THROUGHOUT THIS

19  PATENT THE USE, THE CHOICE TO USE THE DRAFTED LANGUAGE "ADAPTED

20  TO" WAS MEANT TO INCLUDE INTENTIONAL ACTS, NOT THINGS THAT ARE

21  JUST BY HAPPENSTANCE SOMETHING THAT IT CAN DO, BUT IT WILL DO.

22  IT'S MEANT TO DO IT.  IT'S AN AFFIRMATIVE ACTION.

23       AND THE COURT USES A VARIETY OF LANGUAGE, NOT JUST

24  "DESIGNED," THEY TALK ABOUT "CONFIGURED," "MADE TO," "MEANT

25  TO," AND "DESIGNED TO."  NOW IT'S POSSIBLE THAT IF WE LIMIT IT

1    TO "DESIGNED TO," THAT MIGHT SUGGEST TO THE JURY, IF NOT TO A

2    PERSON OF ORDINARY SKILL IN THE ART, THAT THAT REQUIRES SOME

3    SPECIAL LEVEL OF ENGINEERING AS OPPOSED TO IT WAS MADE TO DO

4    THAT.  AND I'M COMFORTABLE WITH IT.

5         THE ONLY THING I WANT TO ACCOMPLISH HERE IS I'M NOT

6    GOING TO HEAR ARGUMENT LATER THAT WELL, THIS WASN'T MADE TO DO

7    THAT, BUT IT CAN.  BECAUSE I DON'T THINK THAT IT CAN IS THE

8    APPROPRIATE ANALYSIS FOR "ADAPTED TO" IN THE CONTEXT OF THIS

9    PATENT, UNLESS IT WAS SPECIFICALLY WRITTEN THAT ONE OF THESE

10   CLAIMS HAS THAT BROADER MEANING.  AND WHAT I THINK I'M HEARING

11   THE PLAINTIFFS SAY IS THAT NO, IT'S THE NARROWER DRAFTING

12   CONSTRUCTION.  IT'S AN INTENTIONAL AFFIRMATIVE "MEANT TO."  YOU

13   JUST DON'T LIKE THE WORD "DESIGNED" FOR SOME REASON, AND SO USE

14   "MADE TO," "CONFIGURED TO," "DESIGNED TO," THEY SEEM TO BE

15   SOMEWHAT INTERCHANGEABLE IN THE FEDERAL CIRCUIT'S POINT OF

16   VIEW, BUT WHAT IT IS, IS IT'S NOT SIMPLY CAPABLE OF

17   ACCOMPLISHING IT, BUT THAT IT'S MEANT TO DO THE DESIGNATED

18   FUNCTION.

19        MS. SZPONDOWSKI:  I THINK WE PREFER THE "MADE TO"

20   LANGUAGE TO "DESIGNED TO" BECAUSE "DESIGNED TO" THAT FEELS VERY

21   NARROW TO ME.  DO I THEN HAVE TO HAVE DESIGN DOCUMENTS AND WHAT

22   DO I -- YOU KNOW, AS SOMEONE IN THE JURY, WHAT ARE THEY GOING

23   TO THINKING  "DESIGNED TO" MEANS.  BUT I THINK "MADE TO" ...

24        THE COURT:  WE CAN SKIP THE SYNONYMS AND SAY "ADAPTED

25   TO" WAS MEANT TO DO THE DESIGNATED FUNCTION.

1          MS. LAMKIN:  YOUR HONOR, WE THINK THEY INVOKED A

2   SPECIFIC TERM OF ART THAT HAS A SPECIFIC MEANING, AND

3   THROUGHOUT THE PATENT "ADAPTED TO" MEANS "DESIGNED TO," AND WE

4   WOULD LIKE TO HOLD THE PATENTEE TO THE WORDS THEY CHOSE,

5   "DESIGNED TO."  AND I CAN GO THROUGH THOSE EXAMPLES, IF THE

6   COURT WOULD FIND IT HELPFUL, FROM THEIR ORIGINAL CONSTRUCTION.

7   WE AGREE WITH THE COURT'S CONSTRUCTION HERE AND THINK "DESIGNED

8   TO" IS NECESSARY.

9          THE COURT:  I DON'T SEE THE FEDERAL CIRCUIT IN *ASPEX*

10  OR ANY OF THE OTHER CASES THAT I BRIEFLY LOOKED AT MAKING THIS

11  SPECIFIC DISTINCTION BETWEEN -- IT REALLY JUST LISTS THEM AS

12  SORT OF INTERCHANGEABLE SYNONYMS FOR SOMETHING THAT IS

13  INTENTIONALLY MADE, CONFIGURED, DESIGNED.  SO DO YOU WANT TO

14  USE DESIGNED BECAUSE YOU THINK IT'S SIGNALING SOMETHING MORE

15  SPECIFIC THAN MADE?  AND WHERE IS THE SUPPORT FOR THAT OTHER

16  THAN WHEN THEY REFERRED TO "ADAPTED TO," THEY ADOPTED THE

17  TERMINOLOGY THAT WOULD BE NARROWER IN CONSTRUCTION AND IT'S

18  JUST NOT CAPABLE OF.

19         MS. LAMKIN:  TWO POINTS, YOUR HONOR.  ONE, AGAIN THE

20  PATENT THROUGHOUT USES "DESIGNED TO," AND WE THINK THE PATENTEE

21  SHOULD BE HELD TO THEIR WORDS, BUT I DO THINK "MADE TO" WHICH

22  IS WHAT PLAINTIFF WANTED CREATES SOME FUZZY BOUNDARIES AROUND

23  THE EDGES.  WE DON'T THINK THERE SHOULD BE FUZZY BOUNDARIES.

24  DID HE OR DID HE NOT DESIGN ACCORDING TO THESE SPECIFIC

25  FUNCTIONS?

1          THE COURT:  I FEEL LIKE WE'RE STEPPING BEYOND A THAN

2    WE'RE GOING TO HAVE TO CONSTRUE "DESIGNED," AND I DON'T THINK

3    THE FEDERAL CIRCUIT HAS GONE THAT FAR IN SUGGESTING THAT

4    "DESIGNED" AND "CONFIGURED TO" OR "MADE TO," WHICH IS THE

5    ULTIMATE CONSTRUCTION THAT THEY USED IN THE *ASPEX* CASE ARE

6    DESIGNATED TO CONNOTATE AN ACTUAL DIFFERENT SORT OF

7    FUNCTIONALITIES, BUT WHAT IT MIGHT AVOID, WHAT I THINK THE

8    PROBLEM YOU'RE RAISING IS THAT IF THERE'S A GRAY AREA, THAT

9    IT'S CAPABLE OF SORT OF --

10          MS. LAMKIN:  CREEP.

11          THE COURT:  -- CREEP BACK IN WOULD BE TO SAY THAT

12   "ADAPTED TO" IS DESIGNED OR CONFIGURED TO ACCOMPLISH THE

13   SPECIFIC OBJECTIVE, NOT SIMPLY THAT THEY CAN BE MADE TO SERVE

14   THAT PURPOSE, AND USE THAT ENTIRE PORTION OF THE FEDERAL

15   CIRCUIT'S DISTINCTION SO THAT WE CAN'T GET IN TO MADE THAT

16   PURPOSE WHICH IS CAPABLE OF.

17          MS. LAMKIN:  THE VERY LANGUAGE.

18          THE COURT:  I'LL USE THE LANGUAGE FROM THE FEDERAL

19   CIRCUIT'S GUIDANCE.  THE DISTINCTION WHEN YOU USE THIS DRAFTING

20   TERM BETWEEN IT BEING BROADER AND NARROWER, I THINK THE

21   NARROWER APPLICATION IS APPROPRIATE HERE THROUGHOUT THE PATENT.

22   WE'RE NOT GOING TO BOUNCE BACK AND FORTH BETWEEN CLAIMS, AND

23   THE COURT WILL USE THAT ENTIRE SENTENCE THAT IS AT PAGE 1349 OF

24   THE *ASPEX* DECISION 672 F.3D, 1335.  SO IT'S DESIGNED OR

25   CONFIGURED TO ACCOMPLISH THE SPECIFIC OBJECTIVE, NOT SIMPLY

1   THAT IT CAN BE MADE TO SERVE THAT PURPOSE.

2          ALL RIGHT.  NOW -- SEE, AND I THOUGHT THESE ONES WERE

3   THE EASY ONES.  YOU'LL SHOW ME.  LET'S TALK ABOUT THE CONTROL

4   DEVICE ON THE EXTERIOR OF SAID RIGID CONTAINER.  IT SEEMS THE

5   PARTIES AGREE THAT "ON THE EXTERIOR" AT THE VERY LEAST MEANS ON

6   THE OUTSIDE.  GOOD.

7          BUT WE'RE GETTING INTO A DISCUSSION ABOUT WHAT "ON"

8   MEANS.  I DON'T THINK "ON" MEANS IN.  I MEAN, THAT'S JUST --

9   OH, MY GOD, THAT JUST CONFUSES THE HECK OUT OF ME, AND UNLESS

10  SOMEBODY CAN TELL ME THAT AN ENGINEER ALWAYS EQUATES "ON" AND

11  "IN" AND WOULD UNDERSTAND IT TO MEAN THE SAME THING, I THINK

12  THAT INTRODUCES ALL KINDS OF AMBIGUITY.

13         ON THE OUTSIDE, FROM A NONENGINEERING POINT OF VIEW,

14  YOU KNOW, YOU WOULD JUST SAY, WELL, IT'S ON THE OUTSIDE.  SO I

15  KIND OF POSE THE QUESTION, YOU KNOW, WELL, IF THE CONTROL

16  DEVICE WAS WIRELESS, IF IT WAS A REMOTE CONTROL, IT WOULD BE ON

17  THE OUTSIDE OF THE CONTAINER.  I DON'T KNOW THAT THE PATENT --

18  YOU KNOW, IF YOU'VE GOT YOUR WHATEVER DEVICE IN THE THING, YOU

19  KNOW, STRAPPED TO YOUR BODY AND IN YOUR HAND YOU'RE HOLDING A

20  LITTLE REMOTE THAT LETS YOU TURN IT ON AND OFF THAT WOULD BE A

21  CONTROL DEVICE ON THE EXTERIOR OF THE CONTAINER.  I DON'T THINK

22  THAT WAS ANTICIPATED BY THE PATENT.

23         I DON'T SEE ANY WIRELESS REMOTE DEVICES IN THERE.  BUT

24  I'M NOT SURE IT WOULD EXCLUDE THAT.  I DON'T KNOW IF I'M ASKING

25  FOR A PROBLEM THAT DOESN'T EXIST HERE.  IF EVERYONE AGREES "ON"

1  MEANS IN CONTACT WITH THE SUPPORTING SURFACE, THEN WE'LL JUST

2  GO WITH THAT.

3          MS. SZPONDOWSKI:  I JUST WANT TO SAY THAT WE CAME UP

4  WITH OUR -- WE DIDN'T BELIEVE THAT "ON" NEEDED TO BE CONSTRUED,

5  PERIOD, INITIALLY.  WE CAME UP WITH THE PROPOSAL "IN OR IN

6  CONTACT"WITH" FROM A DICTIONARY DEFINITION THAT THE DEFENDANTS

7  GAVE US.

8          THE COURT:  WELL, IT'S A STUPID ONE.  IT'S NOT THE ONE

9  THAT COMES UP WHEN I FIRST LOOK AT A DICTIONARY DEFINITION OF

10  "ON."  I DON'T KNOW WHERE IT CAME FROM, BUT ...

11          MS. SZPONDOWSKI:  MERRIAM-WEBSTER'S DICTIONARY.

12          THE COURT:  WELL, IT'S 1B, WHICH MEANS IT WASN'T THE

13  FIRST ONE.

14          MS. LAMKIN:  WE ATTACHED THIS DEFINITION.  WE NEVER

15  SOUGHT TO RELY ON IT IN OUR BRIEFING, SO THIS IS NOT

16  DEFENDANTS' CHOICE.

17          THE COURT:  AND I JUST DON'T THINK THAT IN ORDINARY

18  PARLANCE, UNLESS THERE IS SOMETHING IN THE PATENT THAT POINTS

19  ME IN THAT DIRECTION TO INTERCHANGE "IN" AND "ON" MAKES ANY

20  SENSE AT ALL.  "IN CONTACT WITH" SAYS THAT WHEN IT'S ON, IT'S

21  ON THE SURFACE OF THAT EXTERIOR.  IT'S TOUCHING IT, IT'S

22  SUPPORTED BY IT, AND THERE ARE CERTAINLY DICTIONARY DEFINITIONS

23  THAT SUPPORT THAT, AND I'M NOT SEEING ANYWHERE WHERE THE PATENT

24  SAYS OTHERWISE.  OTHER THAN THE HYPOTHETICAL I RAISED, WELL,

25  DOES IT ACTUALLY HAVE TO BE IN CONTACT WITH, DOES ANYONE WANT

1   TO ARGUE THAT NO, IT JUST HAS TO BE ON THE OUTSIDE.  SO WHAT DO

2   YOU WANT TO PROPOSE?

3           MS. LAMKIN:  YOUR HONOR -- FORGIVE ME.

4           MS. SZPONDOWSKI:  GO AHEAD.

5           MS. LAMKIN:  WE PROPOSED THE TERM, SO MAYBE IT HELPS

6   IF WE GO FIRST PER THE NORMAL ...

7           THE COURT:  SURE.

8           MS. LAMKIN:  SO, FIRST, FOR "ON," WE WOULD AGREE WITH

9   THE COURT THAT A CONSTRUCTION "IN CONTACT WITH THE SUPPORTED

10  SURFACE."

11          THE COURT:  ALL RIGHT.  SO WE CAN SORT OF COMPRESS THE

12  TO "IN CONTACT WITH" THE OUTSIDE SUPPORTING SURFACE.

13          MS. LAMKIN:  YES.  THE COURT ALSO ASKED A QUESTION,

14  AND I THINK WE CAN ADDRESS IT, IT MAY BE ACADEMIC, BUT EVEN ON

15  THAT CONSTRUCTION, YOUR HONOR, WE BELIEVE IT WOULD BE THE

16  EMBODIMENT OF HAVING A REMOTE CONTROL.  AS LONG AS THE ACTUAL

17  ACTIVATING DEVICE WAS ON THE EXTERIOR OF THE CONTAINER, YOU

18  COULD STILL HAVE THE REMOTE CONTROL IN YOUR HAND.  SO WE EVEN

19  THINK THAT FALLS WITHIN THIS COURT'S CONSTRUCTION.

20          THE COURT:  IF THE REMOTE CONTROL DEVICE SIGNALS

21  SOMETHING ON THE EXTERIOR.

22          MS. LAMKIN:  RIGHT.  SOME SORT OF --

23          THE COURT:  I DON'T WANT TO INVITE A PROBLEM THAT

24  DOESN'T EXIST.  I WAS READING AND THINKING WELL, IT'S ON THE

25  OUTSIDE.

1            MS. LAMKIN:  A JUDGE THAT I CLERKED FOR THAT I RESPECT

2     HIGHLY SAID, ALWAYS ANSWER THE JUDGE'S QUESTIONS FIRST.  SO I'M

3     JUST ADDRESSING YOUR QUESTION FIRST, YOUR HONOR.

4            THE COURT:  ALL RIGHT.  SO YOUR PROPOSAL IN CONTACT

5     WITH THE OUTSIDE SUPPORTING SURFACE.  I KNOW YOU HAD THIS

6     SEPARATE COMPONENT.  I THOUGHT SEPARATE FROM WHAT?

7            BUT IN THE CONTEXT OF THE CLAIM, I UNDERSTAND THAT

8     YOUR ISSUE IS THAT THE PREAMBLE IS A WATERPROOF HOUSING THAT

9     COMPRISES THE FOLLOWING COMPONENT PARTS, A CONTAINER AND A

10    CONTROL DEVICE ON THE EXTERIOR.  I'M NOT SURE, THOUGH, IN TERMS

11    OF WHAT STILL -- I MEAN, YES, IT'S A CONTROL DEVICE, SO IT HAS

12    TO BE A DEVICE, MAYBE THAT'S THE PROBLEM HERE AS OPPOSED TO

13    SEPARATE, BECAUSE SEPARATE THEN GETS ME BACK TO WELL, IS IT

14    SOMETHING THAT IS PHYSICALLY SEPARATE WHEN WE'VE JUST DECIDED

15    IT'S IN CONTACT WITH THE SURFACE.

16           MS. LAMKIN:  INTERESTING.  IN OTHER WORDS, THE COURT

17    IS SAYING IF IT'S THE CONTROL DEVICE ON THE EXTERIOR, IT'S

18    ALREADY MAKING CLEAR IT'S SEPARATE FROM THE HOUSING AND WE

19    DON'T NEED TO ADD THAT ADDITIONAL WORD.

20           THE COURT:  IT'S NOT THE HOUSING.

21           MS. LAMKIN:  I'M SORRY, THE CONTAINER.

22           THE COURT:  IT'S JUST THE FIRST STRUCTURAL ELEMENT OF

23    THE HOUSING.

24           MS. LAMKIN:  CORRECT.

25           THE COURT:  IT'S THE CONTROL DEVICE, SO THERE HAS TO

1    BE SOME DEVICE.  SO MAYBE THE WORD WE'RE CONSTRUING HERE IS

2    "DEVICE" AS OPPOSED TO IT HAS TO BE SOME SEPARATE UNIT.  IT HAS

3    TO EXIST AS SOME STRUCTURAL ELEMENT BECAUSE.  IT ALSO HAS TO

4    HAVE -- IT HAS TO BE IN AND OF ITSELF ADAPTED TO WITHSTAND

5    PRESSURES AND ALL THAT OTHER STUFF.

6         SO MY CONCERN, WAS INTRODUCING THE WORD "SEPARATE."

7    WHILE I UNDERSTAND WHY YOU WOULD SUGGESTING IT'S A STRUCTURALLY

8    IDENTIFIABLE SEPARATE HOUSING, SEPARATE IMPLIES, WHICH IS WHAT

9    GOT ME TO THE REMOTE CONTROL ISSUE, IT'S ON THE OUTSIDE AND

10   SEPARATE, SO IT'S PHYSICALLY, YOU KNOW, I'VE GOT THIS AND THIS,

11   AND NOW IT'S SEPARATE AS TO NOW IT'S IN CONTACT AND ON THE

12   OUTSIDE OF THE BOTTLE.

13        MS. LAMKIN:  THE REASON FOR IT WAS TO MAKE CLEAR,

14   ESPECIALLY UNDER *BECTON* AND *REGENTS*, THEY WERE NOT JUST

15   FUNCTIONALLY DISTINCT, RIGHT?  THEY COULD STILL BE PART OF THE

16   SAME THING BUT FUNCTIONALLY DISTINCT, BUT THEY WERE LITERALLY

17   DIFFERENT.  THIS PATENT TAUGHT PHYSICAL SEPARATENESS, AND WE

18   THINK THAT THAT'S IMPORTANT TO CLARIFY UNDER *BECTON* AND SAXTON

19   (PHONETIC) AND *O2MICRO*, MAKE IT NECESSARY TO CLARIFY WHAT WE'RE

20   TALKING ABOUT IS THE CONTROL DEVICE THAT IS PHYSICALLY

21   SEPARATE, IN FACT, SEPARATED FROM THE CONTAINER WITH THINGS

22   LIKE O-RINGS AND SCREWS.  SO WE THINK THAT'S AN IMPORTANT

23   CLARIFICATION TO MAKE UNDER *BECTON*, AND I'M HAPPY TO WALK

24   THROUGH WHY.

25        THE COURT:  YES.  AGAIN, BECAUSE I THINK WHAT WE'RE

1    CONSTRUING REALLY ISN'T ON THE EXTERIOR, IT'S DEVICE, IT'S THE

2    CONTROL DEVICE.  WHAT IS IT?  IS IT SIMPLY AN INDENTATION IN

3    THE CONTAINER?  WELL, NO, I DON'T THINK SO.  IT HAS TO BE A

4    DEVICE, AND THE DEVICE SUGGESTS, AND IT'S LISTED AS A SEPARATE

5    STRUCTURAL ELEMENT OF THE HOUSING, AND OTHERWISE, IT COULD JUST

6    BE A RIGID CONTAINER THAT'S ADAPTED TO CONTROL, AND THEN YOU

7    COULD HAVE SOMETHING THAT'S PART OF THE CONTAINER.  BUT GO

8    AHEAD AND LET'S SEE IF MAYBE I CAN GET THERE FROM THE

9    PRESENTATION.

10            MS. LAMKIN:  OKAY.  SO OBVIOUSLY THE COURT IS ALREADY

11   FAMILIAR WITH *BECTON*, WAY AHEAD OF US ON THE SEPARATE STRUCTURE

12   PARTS.  WHAT I THINK WHAT REALLY MATTERS HERE IS TO GET THE

13   CLAIM LANGUAGE.  SO BOTH SIDES AGREE AT THE VERY LEAST THE

14   CONTROL DEVICE IS IN CONTACT WITH THE CONTAINER, AND THAT'S

15   IMPORTANT UNDER *BECTON* AND *REGENTS* AND THEIR PROGENY.  ALSO

16   THIS IS CRITICAL, CLAIM 49 SAYS THAT THE CONTROL DEVICE EXTENDS

17   THROUGH THE CONTAINER.  SO THE CONTROL DEVICE IS IN CONNECTION

18   TO THE CONTAINER, IT'S CONNECTED TO THE CONTAINER, AND THE

19   CONTROL DEVICE EXTENDS THROUGH.  AND THIS EXACT CLAIM LANGUAGE

20   IS WHY *BECTON*, WHY THE FEDERAL CIRCUIT OF *BECTON* FOUND IT

21   NECESSARY TO DISTINGUISH SEPARATENESS BETWEEN THE TWO ELEMENTS

22   IN THAT CASE.

23            IN FACT, YOUR HONOR, IF YOU LOOK BACK AT CLAIM 49, IF

24   THEY'RE NOT PHYSICALLY SEPARATE, ACCORDING TO *BECTON* AND ALSO

25   ACCORDING TO *REGENTS*, IT RENDERS THIS CLAIM FACIALLY

1   NONSENSICAL BECAUSE HOW COULD SOMETHING EXTEND THROUGH ITSELF.

2   IT WOULD ACTUALLY RENDER ALL THE ASSERTED CLAIMS IN THE PATENT

3   FACIALLY NONSENSICAL TO BE CONNECTED TO ITSELF OR EXTEND

4   THROUGH ITSELF.  AND THE FEDERAL CIRCUIT IN *BECTON* AND *REGENTS*,

5   THAT'S WHY THEY EMPLOYED THE PHYSICAL SEPARATENESS LANGUAGE.

6          JUST QUICKLY, I DON'T WANT TO TAKE THE COURT'S TIME IF

7   THE COURT IS WITH ME, WHAT THE PATENT TEACHES ABOUT "ON THE

8   EXTERIOR," SO THIS IS FIGURE 19-B, THE BUTTONS ARE NOT PICTURED

9   HERE 1315, 1316, BUT THE BUTTON ON FIGURES 1317 IS THIS

10  HORIZONTAL SHAPE UNDER 1900, RUBBER BUTTON ON TOP OF THE

11  CONTROL, RIGHT?  IN BETWEEN THE RUBBER BUTTON AND THE PISTON,

12  THAT'S THE CONTROL DEVICE.  SO THIS PATENT TEACHES US OVER AND

13  OVER AGAIN WHAT "ON THE EXTERIOR" MEANS IS OUTSIDE AND

14  PHYSICALLY SEPARATE FROM.

15         AND JUST FINALLY, THERE'S A WHOLE BUNCH OF THESE

16  EXAMPLES, YOUR HONOR.  THIS IS REALLY WHAT IS IMPORTANT AND

17  THIS IS WHERE *REGENTS* REALLY PUT THEIR THUMB ON THIS.  THIS

18  PATENT TELLS YOU WHAT THE INVENTION IS, THIS PATENT TELLS US

19  WHAT THE CONTROL DEVICES ARE, AND THIS IS THE WHOLE UNIVERSE

20  WE'RE ALLOWED TO GIVE TO PATENTEE BECAUSE HE DEFINED WHAT THE

21  INVENTION WAS.

22         WE HAVE CONTROL DEVICES ON THE OUTSIDE, AND WE HAVE

23  CONTROL DEVICES ON THE INSIDE.  WE DON'T HAVE CONTROL DEVICES

24  THAT ARE INTEGRAL OR ONE IN THE SAME AS THE CONTAINER, AND

25  THAT'S WHY THE FEDERAL CIRCUIT IN *REGENTS* AND IN *BECTON* -- AND,

 1    IN FACT, IN *BECTON*, IT WAS REVERSIBLE ERROR TO NOT MAKE CLEAR

 2    THAT THEY WERE PHYSICALLY SEPARATE.  AND WE THINK THE SAME

 3    CONSTRUCTION IS WARRANTED HERE.  AND I CAN SKIP THE OTHER 40

 4    SLIDES, YOUR HONOR, IF YOU JUST HAVE QUESTION.

 5         THE COURT:  I DON'T DISAGREE WITH YOU THAT THE PLAIN

 6    LANGUAGE OF THE CLAIM AND THE SPECIFICATION.  I DON'T SEE

 7    ANYTHING TO THE CONTRARY THAT WOULD INDICATE THAT THE CONTROL

 8    DEVICE IS A SEPARATE COMPONENT OF THIS HOUSING.  I'M JUST NOT

 9    QUITE SURE WHAT I NEED TO DO TO EXPRESS UNDER CONSTRUCTION

10    WHERE THERE'S A PROBLEM.

11         MS. LAMKIN:  THE PROBLEM IS, IF PLAINTIFF COMES BACK,

12    AS THEY DID IN THEIR BRIEFING, AND SAYS, FINE, FINE, WE GET IT,

13    THEY'RE SEPARATE, BUT THEY'RE ONLY SEPARATE IN, YOU KNOW, THE

14    CONTAINER AND THE KNOBBIES ARE YOU CAN SEE THE DIFFERENCE AT IT

15    WHEN YOU LOOK AT THEM THAT THEY'RE DISTINCT IN THAT I CAN SEE

16    THAT'S THE CONTAINER AND THAT'S THE KNOBBIES, AND THAT DOESN'T

17    CLARIFY THE SCOPE OF THESE PATENTS AS THE PATENTEE TAUGHT IT,

18    WHICH IS WHAT WE NEED TO DO.

19         WHAT WE WANT TO DO IS PREVENT THAT SCRAPE COMING

20    LATER.  AND THE DISCLOSURES ARE VERY CLEAR HERE.  EVERY SINGLE

21    DISCLOSURE TEACHES AN O-RING OR A SCREW CONNECTING THE CONTROL

22    DEVICE, SO WE WANT TO PREVENT IS THE PATENTEE COMING BACK LATER

23    AND BACK AWAY FROM THE INVENTION THAT THIS DISCLOSURE TEACHES.

24    WE'RE NOT UNDER *PHILLIPS* ALLOWED TO GIVE THE PATENTEE MORE THAN

25    THE DISCLOSURE.  SO ADDING --

```
1            THE COURT:  IF THE CLAIM WAS INTERPRETED AS COMPONENTS

2   IN CONTACT WITH THE OUTSIDE OF THE SUPPORTING SURFACE, THEN I

3   THINK THE WORD "COMPONENT" DEFINITELY -- WELL, IT SHOULD

4   INCLUDE YOUR ISSUE, WHICH IS IT'S A PART, IT'S SEPARATE, IT'S

5   NOT.

6            MS. LAMKIN:  INTEGRAL.

7            THE COURT:  WELL, IT CAN BE INTEGRAL.

8            MS. LAMKIN:  NECESSARY.

9            THE COURT:  BUT IT IS NOT CONTAINED WITHIN THE

10  CONTAINER.  IT'S NOT IN THE CONTAINER.  IF THE CONTROL DEVICE

11  IS DESCRIBED HERE, THE DEVICE OF THE PRESENT INVENTION

12  COMPRISES COMPONENTS FOR MANUALLY CONTROLLING THE DEVICE WITHIN

13  THE CONTROLLED CONTAINER, THESE ARE COMPONENTS AND, THEREFORE,

14  THEY ARE PHYSICALLY DISTINCT FROM THE CONTAINER.  THAT'S YOUR

15  YOU'RE ARGUMENT, RIGHT?

16           MS. LAMKIN:  CORRECT.

17           THE COURT:  I DON'T THINK THERE IS ANYTHING THAT

18  TEACHES OTHERWISE IN THE PATENT.

19           MS. LAMKIN:  IN FACT, IT TEACHES AGAINST A

20  CONSTRUCTION THAT WOULD SAYS THEY WERE APART.

21           THE COURT:  I UNDERSTAND THE PROBLEM, AND I GUESS

22  MAYBE, I JUST NEED TO KNOW ARE THE PLAINTIFFS DISAGREEING WITH

23  THAT?  AND IF YOU ARE, WHAT'S THE BASIS AND HOW WOULD YOU WANT

24  THIS READ TO AVOID THIS, TO ADDRESS THIS ISSUE?

25           MS. SZPONDOWSKI:  SURE, YOUR HONOR.  I WANT TO TALK
```

1    ABOUT *BECTON* BECAUSE I DON'T THINK *BECTON* IS -- I DON'T THINK

2    *BECTON* ACCURATELY DESCRIBES WHAT IS REALLY HAPPENING HERE.  WE

3    DON'T DISPUTE THE CONTROL DEVICE IS DIFFERENT FROM THE

4    CONTAINER AND IS A DISTINCT CLAIM LIMITATION.  WHAT WE DISPUTE

5    IS, THE CONTROL DEVICE HAS TO BE A COMPLETELY SEPARATE PIECE

6    FROM THE CONTAINER.  SO IN *BECTON*, THE CLAIM LANGUAGE AT ISSUE

7    WAS THE SPRING MEANS WAS CONNECTED TO SAID HINGED ARM, AND THE

8    COURT CONSTRUED THE CLAIM THAT THE SPRING MEANS COULD BE THE

9    HINGED ARM.  AND IN FACT, IN THE INFRINGEMENT POSITION, THE

10   PATENTEE TOOK THE POSITION THAT THE HINGED ARM IN THE

11   DEFENDANTS' DEVICE WAS ALSO THE SPRING MEANS.  SO THE FEDERAL

12   CIRCUIT SAID, WELL, WAIT A MINUTE, ALL THROUGHOUT THE

13   SPECIFICATION, THE SPRING MEANS AND THE HINGED ARM ARE TALKED

14   ABOUT SEPARATELY, THEY'RE SEPARATE CLAIM LIMITATIONS; AND

15   FURTHER, THE HINGED ARM CAN'T BE CONNECTED TO ITSELF, SO IT'S

16   NONSENSICAL.

17          BUT THAT'S NOT WHAT IS HAPPENING HERE.  WE AREN'T

18   POINTING TO A CONTAINER AND SAYING IT'S THE CONTROL DEVICE.

19   WE'RE POINTING TO A SPECIFIC PART OF THE CONTAINER AND SAYING,

20   THIS IS THE CONTROL DEVICE PART OF THE CONTAINER.  BUT WE

21   AGREE -- I MIGHT HAVE WORDED THAT WRONG.

22          THE COURT:  WAIT.  THAT'S A MEANS-PLUS-FUNCTION CLAIM.

23   THAT'S LIKE INTRODUCING INSANITY INTO WHAT'S ALREADY CONFUSING.

24   LET'S JUST STICK WITH THIS PATENT AND WHAT IT SAYS.  AND IT HAS

25   A PREAMBLE THAT DOES LIMIT THE SCOPE OF THE CLAIM A HOUSING

1    THAT COMPRISES TWO THINGS, A RIGID CONTAINER AND AT LEAST ONE

2    CONTROL DEVICE.  SO THE CONTROL DEVICE HAS TO BE SOMETHING

3    OTHER THAN THE RIGID CONTAINER.  IT HAS TO BE THE THING THAT IS

4    THERE TO CONTROL THE ELECTRONIC AUDIO DEVICE, AND IT HAS TO BE

5    ON THE OUTSIDE CONNECTED WITH THE CONTAINER.

6          MS. SZPONDOWSKI:  I THINK WE AGREE WITH THAT.  I THINK

7    WHAT THE DEFENDANTS ARE TRYING TO SAY, THOUGH, IS THAT THE

8    CONTROL DEVICE HAS TO BE COMPLETELY SEPARATE.  AND WE DON'T

9    DISAGREE THAT THERE ARE EMBODIMENTS IN THE PATENT THAT SHOW IT

10   BEING COMPLETELY SEPARATE AND APART, LIKE A SEPARATE PIECE YOU

11   CAN PULL OUT, LIKE HERE IS THE CONTROL DEVICE AND HERE'S THE

12   CONTAINER.  BUT OUR POSITION IS THAT THE SPECIFICATION DOESN'T

13   REQUIRE IT.  IN CERTAIN EMBODIMENTS, IT DOES SHOW THAT, BUT IT

14   DOESN'T SHOW THAT IN ALL EMBODIMENTS.

15         THE COURT:  SHOW ME ONE WHERE IT ISN'T SEPARATE, JUST

16   SO I CAN SEE WHERE YOU'RE GOING.

17         MS. SZPONDOWSKI:  I'M GOING TO POINT YOU TO FIGURE

18   13B.  THE DESCRIPTION OF FIGURE 13B THAT'S IN THE

19   SPECIFICATION, SO THE BUTTONS IN FIGURE 13B ARE 1315, 1316,

20   1317, 1318.  THERE IS NOWHERE IN THE SPECIFICATION AS DESCRIBES

21   THOSE BUTTONS WITH RESPECT OF FIGURE 13B AS HAVING TO BE,

22   REQUIRED TO BE SEPARATE FROM THE CONTAINER.  WE'RE ENVISIONING

23   A SCENARIO WHERE THE CONTROL DEVICE COULD BE PART OF THE LULL

24   OF THE CONTAINER, IF YOU UNDERSTAND WHAT I'M SAYING.  SO LIKE A

25   LEGGO WHERE YOU HAVE A SQUARE BLOCK AND THEN YOU HAVE YOUR

1    LITTLE PIECES ON TOP.  THOSE ARE SEPARATE THINGS, BUT THEY'RE

2    ALL MOLDED AS ONE THING TOGETHER.

3              THE COURT:  OKAY.

4              MS. SZPONDOWSKI:  SO FIGURE 13B AND FIGURE 17, NEITHER

5    OF THOSE TALK ABOUT A REQUIREMENT THAT THE BUTTONS, WHICH

6    BUTTONS ARE DISCLOSED IN THIS PARTICULAR EMBODIMENT, HAVE TO

7    PHYSICALLY BE A SEPARATE PIECE FROM THE CONTAINER.

8              THE COURT:  WELL, THIS IS LIKE A MANUFACTURING ISSUE

9    AS OPPOSED TO WHAT'S DISCLOSED --

10             MS. LAMKIN:  CAN I EXPRESS THAT, YOUR HONOR?

11             THE COURT:  IT'S A DEVICE AND HAS TO BE ON THE OUTSIDE

12   WHETHER IT'S MOLDED ALL AS ONE PART OR IT'S A SEPARATE PART

13   THAT SCREWS IN, DOES THE PATENT LIMIT ONLY TO A PHYSICALLY

14   SEPARATE PIECE, NOT JUST BY PICTURES BUT BY LANGUAGE?

15             MS. LAMKIN:  YES, YES.

16             MS. SZPONDOWSKI:  WE DISAGREE WITH THAT.

17             THE COURT:  WELL, IT'S THEIR POSITION, BECAUSE I

18   UNDERSTAND YOUR POSITION BECAUSE -- BUT SHOW ME WHERE.

19             MS. SZPONDOWSKI:  I JUST WANT TO MAKE ONE FINAL POINT.

20             THE COURT:  SURE.

21             MS. SZPONDOWSKI:  THERE ARE A NUMBER OF DIFFERENT

22   CONTROL DEVICES IN THE PATENT KNOBS, LEVERS, CAMSHAFTS, PUSH

23   PINS, ET CETERA.  SO THERE ARE EMBODIMENTS DESCRIBING BUTTONS,

24   LEVERS, AND CONTROL KNOBS, WHICH ARE A FEW OF THOSE, WHICH IS

25   WHAT DEFENDANTS ARE POINTING TO.  SO EVEN IF SOME OF THOSE

1   EMBODIMENTS SHOW THAT THERE IS A COMPLETELY SEPARATE PIECE FOR

2   THE CONTROL DEVICE, THE CLAIM SHOULDN'T BE LIMITED FOR ALL THE

3   DIFFERENT CONTROL TYPES THERE COULD BE.

4        THE COURT:  THE BIGGER ISSUE I HAVE IS WHEN THE

5   CONTROL DEVICE IS DESCRIBED AS A COMPONENT, IT IMPLIES TO ME,

6   AND I DON'T KNOW WHETHER IT IMPLIES THIS TO A MECHANICAL

7   ENGINEER, THAT IT IS, THEREFORE, SOMETHING SEPARATE, SOMETHING

8   THAT I CAN GO BUY OFF THE SHELF.  THIS IS A COMPONENT, AND I

9   CAN SOMEHOW ATTACH IT OR MAKE IT PART OF THIS CONTAINER -- ON

10   THE OUTSIDE OF THIS CONTAINER.  I PUT IT ON THE OUTSIDE OF THIS

11   CONTAINER TO OPERATE WHAT IS GOING ON INSIDE.  AND SO IT'S

12   REALLY THAT WORD "COMPONENT" THAT MAKES ME MORE CONCERNED ABOUT

13   THE IDEA IF SOMETHING IS ALL MOLDED TOGETHER, THEN IT'S NOT A

14   COMPONENT.  THEN IT'S PART OF THE CONTAINER.

15        BUT EVEN IF THE SHAPE OF THE CONTAINER CREATES A

16   LITTLE SORT OF SUBHOUSING, YOU STILL HAVE TO PUT SOMETHING IN

17   THERE, RIGHT?  AND THAT'S THE COMPONENT.  THERE HAS TO BE SOME

18   PHYSICAL SEPARATE PIECE, WOULDN'T THERE?

19        MS. SZPONDOWSKI:  WELL, NOT NECESSARILY.  IT COULD ALL

20   BE MOLDED TOGETHER.  IT COULD ALL BE ONE MOLDED PIECE.

21        THE COURT:  SO HOW IS IT GOING TO OPERATE?  HOW IS IT

22   GOING TO CONTROL?  IS IT GOING TO TURN?  MOVE?  DEPRESS?

23        MS. SZPONDOWSKI:  IF IT'S PUSHING A BUTTON.  FOR

24   EXAMPLE, THE HOUSING MIGHT GO AROUND THE BUTTON AND THEN HAVE A

25   LITTLE PIECE, A LITTLE SHAFT INSIDE OF IT WHICH ENABLES THE

1    BUTTON.

2          THE COURT:  AND THAT'S THE COMPONENT PART, THAT'S THE

3    CONTROL.  THE HOUSING OF IT, WHAT IT'S SITTING IN, WHETHER IT'S

4    A RAISED SURFACE ON THE CONTAINER OR WHETHER IT'S FLAT AND

5    SOMEHOW THERE IS A HOLE MADE AND IT'S SCREWED IN, IT'S STILL

6    WHATEVER THE CONTROL DEVICE IS, THAT BUTTON, THAT SHAFT, THAT

7    PUSHPIN THAT IS ACTIVATING OR CONTROLLING THE DEVICE.  AND

8    THAT'S A SEPARATE COMPONENT.  THAT CAN'T BE PART OF THE

9    CONTAINER.

10         MS. SZPONDOWSKI:  I DON'T THINK THAT THE PATENT SAYS

11   THAT IT CAN'T BE PART OF THE CONTAINER.  I THINK SOME OF THE

12   EMBODIMENTS SHOW IT BEING SEPARATE FROM THE CONTAINER.

13         THE COURT:  THEN YOU'RE GOING TO RUN A LITTLE BIT

14   AFOUL OF "RIGID STRUCTURE" BECAUSE IF THE CONTAINER SURFACE CAN

15   BE DEPRESSED WITHOUT THERE BEING SOME OTHER PART, YOU'RE JUST

16   GOING IT PUSH DOWN ON THE SURFACE TO OPERATE WHAT'S GOING ON

17   INSIDE BY PHYSICAL PRESSURE AS OPPOSED TO SOME MECHANICAL PART,

18   THEN YOU'VE DISCLAIMED THAT BECAUSE YOU SAID THE MATERIAL CAN'T

19   BE ACTIVATED BY DEPRESSION.

20         MS. SZPONDOWSKI:  WELL, BASED ON HOW WE UNDERSTOOD

21   FULLER, WHICH WAS A DEFORMABLE MEMORY.  I THINK WE WENT THROUGH

22   ALL OF THAT.  I THINK OUR READING OF FULLER IS DIFFERENT.  WE

23   WENT THROUGH THAT THIS MORNING.

24         THE COURT:  YOU DISAVOWED IN FULLER THAT IT WOULDN'T

25   ALLOW THE USER TO MANIPULATE CONTROLS THROUGH THE MATERIAL.  SO

1    IF WHAT YOU'RE TRYING TO ENCOMPASS BY A DEFINITION HERE THAT

2    DOESN'T MAKE THE CONTROL DEVICE A SEPARATE COMPONENT BUT RATHER

3    IT'S A PORTION OF THE CONTAINER THAT IS THIN ENOUGH, THAT THE

4    USER CAN JUST APPLY PRESSURE TO IT AND ACTIVATE OR DEACTIVATE

5    THE UNIT, THEN I THINK YOU'RE RUNNING RIGHT SMACK INTO WHAT YOU

6    DISAVOWED IN FULLER WHICH IS, NO, THE MATERIAL HAS TO BE

7    THICKER THAN THAT.  YOU CAN'T MANIPULATE IT THROUGH THE

8    CONTAINER.  YOU CAN PUT THESE COMPONENT PARTS THAT WILL GO

9    THROUGH THE CONTAINER AND DO THE ACTIVATION, BUT IT CAN'T JUST

10   BE A SURFACE THAT I CAN PUT MY THUMB DOWN ON HARD ENOUGH AND

11   IT'S GOING TO MAKE THE THING TURN ON OR OFF.

12        MS. SZPONDOWSKI:  I DON'T THINK IT CAN BE A SURFACE

13   EITHER.  A SURFACE ISN'T A CONTROL DEVICE AS DISCLOSED IN THE

14   PATENTS.

15        THE COURT:  WELL, YOU JUST SAID THOSE ARE JUST

16   EXAMPLES.  A CONTROL DEVICE IS A DEVICE THAT CONTROLS.  I KNOW

17   THAT'S A TAUTOLOGY, BUT IF THE METHOD OF CONTROLLING, THE

18   DEVICE OF CONTROLLING, TURNING THE THIN -- AS AN EXAMPLE OF

19   CONTROL, TURNING IT ON OR OFF, IS THAT THE SURFACE OF THE

20   CONTAINER IN AREAS IS THIN ENOUGH THAT YOU CAN DEFORM IT BY

21   PRESSING ON IT AND THEREBY TURN ON OR TURN OFF THE AUDIO

22   DEVICE, I THINK WE HAVE GONE RIGHT BACK TO RIGID CONTAINER AND

23   WHAT THE PATENTEE HAS DISCLAIMED TO SAY, NO, THAT SORT OF

24   MEMBRANE COVER SURFACE MATERIAL, TOO THIN, NOT COVERED BY THIS

25   PATENT IF IT CAN BE MANIPULATED TO CONTROL THE MATERIAL.

1        MS. SZPONDOWSKI:  I DON'T THINK THE MATERIAL

2   NECESSARILY HAS TO BE THIN THOUGH IN ORDER TO PUSH ON IT.  I

3   MEAN, WE DID JUST GO THROUGH ALL OF THIS.

4        THE COURT:  IF CAN YOU MANIPULATE THE INTERNAL

5   STRUCTURE THROUGH THE MATERIAL OF THE CONTAINER, YOU HAVE

6   DISCLAIMED IT.  YOU HAVE SAID IN RESPONSE TO FULLER, THAT IS

7   NOT WHAT IS COVERED BY THIS PATENT.

8        MS. SZPONDOWSKI:  WITH RESPECT TO THE MEMBRANE AS IT

9   WAS DESCRIBED IN FULLER.

10        THE COURT:  WHICH SAID THAT IF YOU CAN MANIPULATE IT

11   THROUGH, THEN YOU'VE DISCLAIMED IT.  AND SO I FEEL LIKE WE'RE

12   BOOTSTRAPPING HERE TO GO BACK NOW AND SAY, THE CONTROL DEVICE

13   CAN BE PART OF THE CONTAINER THAT YOU CAN MANIPULATE FROM THE

14   OUTSIDE BY PRESSURE, AND IT'S GOING TO DEFORM TO DO -- I MEAN,

15   THE PRESSURE IS GOING TO REQUIRE IT SAYS DEFORM TO DO

16   SOMETHING, AND THAT'S JUST -- NO, THAT'S WHAT FULLER DOES, AND

17   YOU'VE SAID THAT TO THE PATENT OFFICE AND YOU'VE SAID IT TO ME,

18   THAT'S NOT WHAT WE'RE CLAIMING.  SO WHERE ARE WE HERE?

19        MS. SZPONDOWSKI:  I DON'T BELIEVE THAT THE PATENT

20   EXPLICITLY STATES THE CONTROL DEVICE HAS TO A PHYSICALLY

21   SEPARATE PIECE FROM THE CONTAINER.  THAT'S OUR POSITION.

22        THE COURT:  OKAY.

23        MS. LAMKIN:  SO JUST BRIEFLY, AND AS THE COURT HAS

24   RIGHTLY POINTED OUT, PLAINTIFF WANTS TO READ THE CLAIMS TO SAY

25   THE CONTROL DEVICE CAN BE PHYSICALLY PART OF THE CONTAINER AND

1    YOU'RE GOING TO PUSH ON PART OF THE CONTAINER TO ACTIVATE THE

2    ELECTRONIC DEVICE.  NOT ONLY HAVE THEY DISCLAIMED THAT, AS THE

3    COURT RIGHTLY POINT OUT, BUT THE PATENT DOESN'T TEACH THAT, AND

4    THERE'S SOME REALLY IMPORTANT REASONS.  WE LOOKED AT, JUST

5    RETURNING QUICKLY, EVERY SINGLE EMBODIMENT IN THIS PATENT --

6    AND I WILL WALK THE COURT THROUGH 13, 17, 19.  EVERY SINGLE

7    EMBODIMENT IN THIS PATENT AND NOT JUST THE FIGURES IN THE TEXT

8    DESCRIBING EACH OF THE PATENTS, INCLUDING THE BUTTONS THAT WE

9    WERE TALKING ABOUT.  THERE'S A RIGID PISTON AND A O-RING

10   AROUND, AN O-RING IN BETWEEN THE CONTAINER AND THE CONTROL

11   DEVICE.

12        BUT, AGAIN, YOUR HONOR, I WANT TO COME BACK TO

13   *PHILLIPS*, AND I THINK WE'RE FACING THE HARD QUESTION THAT

14   *PHILLIPS* ACKNOWLEDGED.  IN *PHILLIPS*, THE FEDERAL CIRCUIT EN

15   BANC SAID, THERE CAN BE A FINE LINE BETWEEN IMPORTING

16   LIMITATIONS FROM THE SPECIFICATION INTO THE CLAIMS OR READING

17   THE CLAIMS IN A LIGHT OF THE SPECIFICATION, AND THE PATENTEE

18   SHOULD BE GRANTED NO MORE THAN THE TEACHING.

19        THIS IS AN INVENTION THAT COMPLETELY DESCRIBES THE

20   UNIVERSE OF THE CONTROL DEVICES, AND THEY ARE COMPONENTS,

21   SEPARATE PIECES, AS THE COURT HAS POINTED OUT.  THEY ARE

22   COMPONENTS ON THE OUTSIDE OF THE CONTAINER, THEY ARE COMPONENTS

23   ON THE INSIDE OF CONTAINER, OR THEY ARE COMPONENTS SENT THROUGH

24   THE CONTAINER.  THERE IS NO TEACHING IN THIS PATENT, NOT A

25   SINGLE TEACHING IN THIS PATENT THAT ALLOWS US TO EXTEND THE

1   MEANING OF THIS INVENTION TO A COLD MOLDED HOUSING AND CONTROL

2   DEVICE.

3          I JUST WANT TO BRIEFLY ADDRESS A COUPLE OF THINGS

4   ABOUT THE EMBODIMENT THE PARTY HAVE CLAIMED PRIORITY BACK TO

5   THE '722 PATENT, WHICH IS THE ONLY TEACHING IN THE '722 PATENT

6   AROUND THE CONTAINER AND THE CONTROL DEVICE.  AND THE FIGURES

7   ARE 1 THROUGH 3 AND 9.  AND YOU CAN SEE IN THESE FIGURES 1

8   THROUGH 3, YOUR HONOR, AGAIN THE CONTROL DEVICE IS PLACED

9   THROUGH THE LID.

10          WE WOULD LIKE TO HIGHLIGHT A COUPLE THINGS.  33 YELLOW

11   IS AN O-RING SHOWING PHYSICAL SEPARATENESS.  MORE IMPORTANTLY

12   THE LID IS CROSSHATCHED, AND THE CROSSHATCH STOPS AT WHERE WE

13   HIGHLIGHTED LIGHT BLUE.  THAT IS AIR IN BETWEEN THE CONTROL

14   DEVICE AND THE LID, LITERALLY AIR, SO YOU CAN TURN THE KNOB.

15          FIGURE 9 SAYS IT HAS THE EXACT SAME ACTIVATION METHODS

16   AS FIGURES 1 THROUGH 3.  NO PRIOR TEACHING THERE.  THOSE ARE

17   THE ONLY TEACHINGS TO PRIORITY DATE.  IF THEY LOSE THEIR

18   PRIORITY DATE, THEN WE HAVE 13, 17, 19.

19          NOW NOTICE, YOUR HONOR, 13 AND 17 USE THE EXACT SAME

20   NUMBERS FOR THE BUTTONS, OKAY, 1315 THROUGH 19, EXACT SAME

21   NUMBERS FOR THE BUTTONS.  WHEN WE GO TO THE TEACHINGS OF WHAT

22   THE BUTTONS ARE IN THE PATENT, ONCE AGAIN, WE'VE GOT TO

23   INCORPORATE 1910.  THIS IS THE ONLY BUTTON TEACHING IN FIGURES

24   13, 17 AND 19.  THERE AN O-RING BETWEEN THEM.

25          FINALLY THE ONLY OTHER CONTROL DEVICE TAUGHT IS THIS

1    LEVER 1360 AND 1362.  AND IF YOU LOOK, YOUR HONOR, THE LEVER IS

2    ATTACHED BY SCREWS.  THERE'S THE BOTTOM OF THE PHILLIPS SCREWS

3    UNDERNEATH.

4           EVERY EMBODIMENT IN THIS PATENT TEACHES PHYSICAL

5    SEPARATENESS.  BUT IT'S MORE THAN THAT.  REMEMBER, WE HAVE TO

6    GO BACK TO THE CLAIMS.  AND, AGAIN, IF THE CONTROL DEVICE, IF

7    THE COMPONENT CAN BE PHYSICALLY PART OF THE CONTAINER, IT'S

8    EXTENDING THROUGH ITSELF, WHICH *REGENTS* AND *BECTON* SAID WAS A

9    PHYSICAL IMPOSSIBILITY AND CONNECTED TO ITSELF, WHICH BOTH

10   *REGENTS* AND *BECTON* SAID WAS A PHYSICAL IMPOSSIBILITY.

11          QUICKLY, YOUR HONOR, ON *REGENTS*, THERE ARE TWO

12   OPERATING DISKS AND THERE WAS A SOFT MATERIAL IN BETWEEN THOSE

13   TWO DISKS, AND THE FEDERAL CIRCUIT SAID IN *REGENTS*, THE PATENT

14   TEACHES A MATERIAL BETWEEN THE TWO DISCS.  THEY CAN'T

15   PHYSICALLY BE PART OF THE SAME DEVICE.  AND WE HAVE THE SAME

16   TEACHING HERE AS IN *REGENTS*, SO YOU RENDER THE CLAIMS

17   PHYSICALLY NONSENSIBLE.

18          THE COURT:  WAIT.  THAT'S 49.

19          MS. LAMKIN:  UM-HMM.

20          THE COURT:  AND THAT EXTENDING LANGUAGE THROUGH IS

21   SPECIFIC TO 49 AND IS A SEPARATE CLAIM.

22          MS. LAMKIN:  49 AND 50.

23          THE COURT:  AND IF WE WENT BACK TO 23.

24          MS. LAMKIN:  UM-HMM.

25          THE COURT:  THE 23 ON CONTROL DEVICE ON EXTERIOR

1    DOESN'T TALK ABOUT IT EXTENDING THROUGH.  IT SAYS IT'S ON THE

2    EXTERIOR AND ADAPTED TO CONTROL THE DEVICE AND ADAPTED TO

3    WITHSTAND ACTIVATION CAUSED BY PRESSURE.  SO YOUR ANALYSIS FOR

4    49 THAT IT CAN'T BE PART OF THE HOUSING, THE CONTAINER WOULD

5    CERTAINLY MAKE SENSE BECAUSE HOW DOES IT EXTEND THROUGH WHAT IT

6    IS?  THAT SEEMS RIDICULOUS.  BUT THAT COULD BE A SEPARATE

7    EMBODIMENT WHERE IT IS A COMPONENT THAT'S A SEPARATE DEVICE.

8    DOES 23 EXCLUDE -- I THINK IT DOES, BUT I WANT TO HEAR IF FROM

9    YOU WHY WOULD THE LANGUAGE OF 23 EXCLUDE THE CONTROL DEVICE IN

10   THAT CONTEXT, IN THE CONTEXT OF THAT CLAIM FROM BEING PART OF

11   THE ACTUAL CONTAINER?

12        MS. LAMKIN:  FOR THREE REASONS, YOUR HONOR.  FIRST

13   REASON, EVERYONE IN THIS ROOM, PLAINTIFFS, DEFENDANTS, THE

14   COURT, AGREES THAT "ON THE EXTERIOR" MEANS IN CONTACT WITH, AND

15   THAT'S EXACTLY WHAT *BECTON* AND *REGENTS* SAID IT MEANS.  THEY

16   CAN'T BE THE SAME THING.

17        THE COURT:  OKAY.

18        MS. LAMKIN:  THE SECOND REASON IS THE PATENTEE, AGAIN,

19   HAS DEFINED WHAT THE INVENTION IS FOR US, AND "ON THE EXTERIOR"

20   MEANS OUTSIDE.  AND FOR THE THIRD REASON, THE PATENTEE USES

21   THIS PHRASE, THE PATENTEE USES THE EXACT PHRASE "ON THE

22   EXTERIOR" SEVERAL PLACES TO MEAN -- THREE PLACES TO MEAN

23   OUTSIDE THIS CONTROL DEVICE ON THE EXTERIOR IS PHYSICALLY

24   SEPARATE.  WE CANNOT GIVE THE PATENTEE A GRANT LARGER THAN

25   DISCLOSED.  AND NOTHING IN THIS PATENT DISCLOSES A COLD-MOLDED

1    HOUSING AND CONTAINER ARE PHYSICALLY CONNECTED.

2         AND WHEN PLAINTIFF SAID THAT THE CONTROL DEVICE IS

3    PART OF THE CONTAINER, WE'RE HAVING A SERIOUS SCOPE DEBATE HER,

4    AND WE THINK 02 MICRO, AT THE VERY LEAST, 02 MICRO AND *BECTON*

5    COMPEL MAKING SURE THAT ITS COMPONENT IS PHYSICALLY SEPARATE

6    FROM THE CONTAINER.

7         THE COURT:  OKAY.  AT SOME POINT, THE COURT ALWAYS HAS

8    TO MAKE A DECISION AND LET THE FEDERAL CIRCUIT TELL ME LATER

9    WHETHER I GOT THIS RIGHT OR WRONG.  BUT I THINK IN LIGHT OF THE

10   ISSUES WE'VE DISCUSSED AT LENGTH THIS MORNING ON THE RECORD

11   REGARDING THE DISCLAIMER OF DEVICES THAT HAD PREVIOUSLY EXISTED

12   WHERE YOU COULD MANIPULATE THROUGH THE CONTAINER, IT WOULD BE

13   INAPPROPRIATE TO ALLOW A CONSTRUCTION OF CONTROL DEVICE ON THE

14   EXTERIOR TO CAPTURE AN ABILITY TO USE THE CONTAINER SURFACE

15   ITSELF AS A WAY OF CONTROLLING THE AUDIO DEVICE.

16        THE PATENT MAKES REPEATED REFERENCES TO THESE BEING

17   COMPONENTS THAT ARE THEN IN CONTACT WITH THE CONTAINER, AND I

18   THINK THAT THE APPROPRIATE, AND I WOULD HAVE TO EXPAND A LITTLE

19   BIT HERE ON WHAT'S BEING CONSTRUED, BUT CONTROL DEVICE ON THE

20   EXTERIOR, THE COURT CONSTRUES AS A SEPARATE COMPONENT IN

21   CONTACT WITH THE OUTSIDE OF THE SUPPORTING SURFACE.  AND WE'RE

22   DONE WITH THAT.

23        NOW LET'S GO ON TO "EXTENDS FROM THE EXTERIOR TO THE

24   INTERIOR."  AND THE DEFENDANTS HAVE TAKEN A POSITION THERE

25   CAN'T BE SOMETHING IN BETWEEN THE CONTROLLING OUTSIDE AND THE

1   INTERIOR WHATEVER --

2          MR. LEACH:  YOUR HONOR --

3          THE COURT:  I THINK YOU LOST ME ON THIS.

4          MR. LEACH:  -- IN THE INTEREST OF LUNCH, CAN I SAY

5   WE'VE WITHDRAWN OUR CONSTRUCTION OF THIS AND JUST AGREED WITH

6   THE PLAIN AND ORDINARY MEANING.  I THINK THE OTHER

7   CONSTRUCTIONS WE'VE TALKED ABOUT TODAY COVERED WHAT WE NEED FOR

8   THIS.  AND WE PUT THIS IN OUR LAST BRIEF, BUT YOU MAY HAVE

9   MISSED THAT.

10          THE COURT:  OH, THEN WE'RE DONE.

11          MR. LEACH:  DOES THAT MAKE THINGS EASY?

12          THE COURT:  YES.  SO WE'RE DONE.  SO I'VE GIVEN YOU

13   THE CONSTRUCTIONS.  I'VE MODIFIED A LITTLE BIT ON THE "ADAPTED

14   TO," BUT HAVE USED THE FEDERAL CIRCUIT LANGUAGE.  AND ON

15   "CONTROL DEVICE ON THE EXTERIOR," THE WRITTEN ORDER WILL

16   REFLECT THAT IT IS A SEPARATE COMPONENT IN CONTACT WITH THE

17   OUTSIDE SUPPORTING SURFACE OF SAID RIGID CONTAINER, WHICH IS

18   THE REST OF THE CLAIM LANGUAGE.  GREAT.

19          WE DO HAVE SCHEDULED TO COME BACK AND ADDRESS THE

20   WATER PRESSURE AND SUBMERGED ISSUES.  IT CAUGHT MY EYE, AND I

21   SUPPOSE THAT MIGHT BE ONE OF THE THINGS WE'LL BE ADDRESSING

22   THEN, THAT IF YOU LOOK AT CLAIM -- LET'S TAKE 23, IT HAPPENS

23   AGAIN IN SOME OF THE OTHER CLAIMS, THE READING OF CLAIM 23,

24   LAST PHRASE OF CLAIM 23 ABOUT THIS CONTROL DEVICE HAS THE

25   LANGUAGE "AND SAID CONTROL DEVICE ADAPTED TO WITHSTAND

1    ACTIVATION CAUSED BY UNDERWATER PRESSURE."  OKAY.

2         DEPENDENT CLAIM 26 SAYS "A HOUSING OF CLAIM 23 WHEREIN

3    THE CONTROL DEVICE IS ADAPTED TO WITHSTAND ACTIVATION CAUSED BY

4    UNDERWATER PRESSURES," S.  THE ONLY DIFFERENCE BETWEEN THE

5    DEPENDENT CLAIM AND THE ACTUAL INDEPENDENT CLAIM IS THAT IT'S A

6    PLURAL, PRESSURES, THERE, AND A SINGULAR PRESSURE IN 23.

7         THE SAME THING HAPPENS IN CLAIM 36 IN CONJUNCTION WITH

8    DEPENDENT CLAIM 39 WHERE CLAIM 36 FINISHES WITH A CONTROL

9    DEVICE ADAPTED TO WITHSTAND ACTIVATION CAUSED BY UNDERWATER

10   PRESSURE, AND DEPENDENT CLAIM CONTROL DEVICE ADAPTED TO

11   WITHSTAND ACTIVATED PRESSURES.

12        SO IF THE ADDITION OF THE PLURAL IS SIGNIFICANT, AND I

13   GUESS THAT'S HOW WE'RE GOING TO DECIDE WHY CLAIMS 26 AND 39

14   GIVE ANY MEANING TO THIS PATENT AND NOT MERELY JUST REDUNDANT

15   AND SHOULD BE STRICKEN, I KIND OF WANT TO HEAR THAT BECAUSE

16   IT'S NOT THE FIRST TIME I SEE A PATENT WITH A DEPENDENT CLAIM

17   WHERE, HUH, IT'S ALREADY IN THE INDEPENDENT CLAIM.  IT'S NOT

18   ADDING ANYTHING.

19        SO I HAVE TO ASSUME FROM THAT THE SINGLE UNDERWATER

20   PRESSURE MEANS ONE THING AND UNDERWATER PRESSURES MEANS

21   SOMETHING ELSE, AND I HAVE NO IDEA WHAT THAT DISTINCTION WOULD

22   BE.  AND SO TO THE EXTENT THIS IS A PATENT FOR SOMEONE OF

23   ORDINARY SKILL IN THE ART WHO IS A MECHANICAL ENGINEER, IT

24   MIGHT ALSO REQUIRE PEOPLE WHO UNDERSTAND DIVING PRESSURES, I

25   DON'T KNOW, ENGINEERS WHO DO UNDERWATER SOMETHING OR OTHER.  I

1    WOULD NOT BE ADVERSE TO SEEING SOME DECLARATIONS THAT COME WITH

2    THE NEXT ROUND OF BRIEFING ON THIS INDEFINITENESS ISSUE FROM

3    PEOPLE OF SKILL IN THE ART AT THE TIME THIS PATENT WAS DRAFTED

4    WHETHER THEY WOULD UNDERSTAND THAT THERE'S A SIGNIFICANT

5    DIFFERENCE BETWEEN UNDERWATER PRESSURE AND UNDERWATER

6    PRESSURES, BECAUSE I DON'T KNOW WHAT THAT MEANS.  I DON'T KNOW

7    WHY THAT'S DISTINCT.  THE PATENT OFFICE GAVE YOU DEPENDENT

8    CLAIMS THAT PRESUMABLY ADD SOME OTHER DISTINCTION, BUT THE ONLY

9    DISTINCTION I SEE IS PRESSURES PLURAL THERE, AND IF, IN FACT,

10   IT'S NOT A DISTINCTION, THEN THE PLAINTIFFS MIGHT WANT TO SEEK

11   TO, FIRST OF ALL, WITHDRAW THE INFRINGEMENT ALLEGATION BECAUSE

12   THAT WOULD BE BAD FORM, OR JUST MAYBE DISCLAIM THOSE PATENTS,

13   THOSE CLAIMS PUBLICLY BECAUSE THEY'RE JUST REDUNDANT.  AND

14   THERE IS CASE THAT SAYS IT COULD AFFECT YOUR ABILITY TO RECOVER

15   THINGS LIKE COST AND STUFF, AND YOU DON'T WANT TO GO THERE.

16   WE'RE DONE FOR TODAY, LADIES AND GENTLEMEN.  THANK YOU.  THAT

17   WAS REALLY --

18          MS. SZPONDOWSKI:  YOUR HONOR, CAN I JUST SAY ONE MORE

19   THING?  YOU ASKED US IF THERE WERE ANY OBJECTIONS TO THE

20   CONSTRUCTIONS YOU PROVIDED.  AND WE DO OBJECT TO "RIGID

21   CONTAINER" AS WELL AS "WATERPROOF."

22          THE COURT:  AND I EXPECT YOU'RE GOING TO OBJECT TO

23   "CONTROL DEVICE TO THE EXTERIOR."

24          MS. SZPONDOWSKI:  YES.

25          THE COURT:  SO YOUR OBJECTIONS ARE ALL NOTED AND

1    RESERVED FOR ANY POTENTIAL APPELLATE ISSUES.  THANK YOU.

2              MS. SZPONDOWSKI:  THANK YOU.

3         (COURT IN RECESS AT 12:10 P.M.)

4         *** END OF REQUESTED TRANSCRIPT ***

5                   CERTIFICATE OF OFFICIAL REPORTER

6              I, MAURALEE RAMIREZ, FEDERAL OFFICIAL COURT REPORTER,
     IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL
7    DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO
     SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS
8    A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED
     PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE
9    TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS
     OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.

10

11             DATED THIS 14TH DAY OF JULY 2014.

12

13             /S/ MAURALEE RAMIREZ_____
               MAURALEE RAMIREZ, CSR NO. 11674, RPR
14             FEDERAL OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25